## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TEAMSTERS LOCAL UNION**
**NUMBER 96, affiliated with the**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS,**
**2120 Bladensburg Rd., N.E., # 106**
**Washington, D.C. 20018**


                             Plaintiff,


**v.**                                     Case No. _____


**WASHINGTON GAS LIGHT COMPANY,**
**6601 Industrial Rd.**
**Springfield, VA 22151**

                         Defendant.
_____

### NOTICE OF REMOVAL

Defendant Washington Gas Light Company ("Washington Gas"), in accordance with 28 U.S.C. §§ 1331, 1441(b) and (c), and 1446, petitions this Court for removal of this action currently pending in the Superior Court of the District of Columbia. In support thereof, Defendant states as follows:

1.    Plaintiff Teamsters Local Union Number 96 ("Local 96") filed its Complaint against Washington Gas on or about April 13, 2006 in the Superior Court of the District of Columbia, Civil Division. See Ex. A. Defendant was served with the Summons and Complaint on April 17, 2006. Accordingly, this Notice of Removal is filed within the thirty-day period required by 28 U.S.C. § 1446(b) and Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

2.     This action is removable because the Complaint falls within the original federal question jurisdiction of this Court under 28 U.S.C. § 1331 and 28 U.S.C. § 1441. As explained in detail below, Plaintiff's state law claim is founded upon and will require this Court to interpret a collective bargaining agreement ("CBA") between Plaintiff and Washington Gas.  Consequently, Plaintiff's District of Columbia claim is preempted by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) and properly removed to this Court.  See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 561 (1968) (case properly removed to federal court on basis of Section 301 preemption where heart of complaint alleged breach of CBA).

5.     It is well-settled that Section 301 "provides federal-court jurisdiction over controversies involving collective-bargaining agreements" and directs federal courts to "fashion a body of federal law for the enforcement of these collective bargaining agreements."  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403 (1988).  The dismissal of preempted claims is in accordance with 301's goal to "ensure uniform interpretation of collective bargaining agreements, and thus … promot[ing] the peaceable, consistent resolution of labor-management disputes."  Id. 486 U.S. at 413.

6.     Thus, if a state law claim depends upon the meaning or requires the interpretation of a collective bargaining agreement, the claim is preempted by Section 301.  See Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) (when the "heart of the [state law] complaint [is] a … clause in the collective bargaining agreement, that complaint arises under federal law"); Sokos v. Hilton Hotels Corp., 283 F. Supp 2d 42, 47-50 (D.D.C. 2003) (claims preempted because their resolution required interpretation of CBA); Hunter Douglas Inc. v. Sheet Metal Workers International Association, Local

159, 714 F.2d 342, 345 (4th Cir. 1983) (issue of whether polygraph testing was permitted under CBA made state court action removable under Section 301).

7.      Here, Plaintiff's state law claim is preempted under this standard. Pursuant to a June 2, 2004 Labor Contract between Washington Gas and Plaintiff (the "CBA"), on April 11, 2005, Plaintiff notified Washington Gas of its intent to arbitrate a grievance on behalf several of its members. See CBA, the relevant portions of which are attached as Ex. B.  In accordance with the CBA, Salvatore Arrigo was chosen from the panel as the arbitrator as he was next in line alphabetically.

8.      With respect to the removal of arbitrators, the CBA between the parties specifically states that "[d]uring the term of this Contract, either party may, for any reason, strike up to two (2) arbitrators from the panel of arbitrators." Ex. B.  On September 21, 2005, pursuant to that CBA provision, Washington Gas exercised its contractual right to remove Mr. Arrigo from the panel of arbitrators in the grievance.  See Ex. C.  On September 23, 2005, Plaintiff filed a Motion to Proceed with Arbitration Hearing which was granted by Mr. Arrigo himself two hours later.  See Ex. D.  On September 23, 2005, Washington Gas reminded Plaintiff and Mr. Arrigo by letter of the CBA provision allowing for unilateral removal of arbitrators by either party, and that Washington Gas had chosen to exercise that right.  See Ex. E.

9.      Notwithstanding the clear language of the CBA and Washington Gas' clear intent to remove Mr. Arrigo as arbitrator in the disputed matter, on September 29, 2005, Mr. Arrigo, held an *ex parte* hearing without Washington Gas.  On December 31, 2005, Mr. Arrigo issued an alleged opinion and award, finding for Plaintiff in the underlying dispute.   Since that time, Washington Gas has not complied with the

provisions of Mr. Arrigo's writing because Washington Gas takes the position that Mr. Arrigo was stricken as the arbitrator on September 21, 2005. Therefore, any decision he purportedly rendered in the underlying arbitration between the parties is necessarily invalid, *ab initio*.

10.    Plaintiff's state law Complaint seeks to enforce and confirm what Washington Gas believes is an invalid and unenforceable opinion and award. Therefore, whether Mr. Arrigo had been properly struck as the arbitrator, therefore rendering his writing unenforceable, is a question that can only be answered by interpreting the CBA between the parties. Because the claim is founded upon, and will require the interpretation of the CBA, Section 301 preempts Plaintiff's state law action.

11.    Defendant will provide written notice of the filing of this Notice of Removal to the Clerk of the Superior Court for the District of Columbia.

WHEREFORE, Defendant hereby removes the pending state court action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

Robert L. Clayton (D.C. Bar No. 961474)
Karen L. Vossler (D.C. Bar No. 476522)
Mintz, Levin, Cohn, Ferris, Glovsky, and
Popeo, LLC
701 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Tel: 202-434-7300
Fax: 202-434-7400

Counsel for Defendant Washington Gas

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of May 2006, a true and accurate copy of the foregoing was mailed via first-class mail postage pre-paid and by facsimile to:

Mark J. Murphy
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
(202) 783-6088 (fax)

_____
Karen L .Vossler

WDC 385481v.1



SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION



TEAMSTERS LOCAL UNION NO. 96,
affiliated with the INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
2120 Bladensburg Road, N.E., #106
Washington, D.C. 20018

          Plaintiff,

v.

WASHINGTON GAS LIGHT COMPANY,
6601 Industrial Road
Springfield, VA 22151

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

0002905-06

Civil Action No. _____

RECEIVED
Civil Clerk's Office
APR [...]
Superior Court of the
District of Columbia
Washington, D.C.

## APPLICATION TO CONFIRM AND ENFORCE ARBITRATION AWARD

Teamsters Local Union No. 96 ("Local 96" or "Union"), affiliated with the International

Brotherhood of Teamsters, pursuant to D.C. Code §§ 16-4310 and 16-4315, brings the following

action against Washington Gas Light Company to confirm and enforce an arbitration award

rendered by Arbitrator Salvatore J. Arrigo on December 31, 2005. A true and correct copy the

Opinion and Award is attached hereto as Plaintiff's Exhibit A.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to D.C. Code § 11-921.

2.     Venue is proper as the acts complained of herein occurred in the District of

Columbia, and Plaintiff Local 96 is a labor organization located in the District of Columbia with

its office at 2120 Bladensburg Road, N.E., #106, Washington, D.C. 20018.

**THE PARTIES**

3.      Plaintiff Local 96 is a "labor organization" within the meaning of D.C. Code § 2-1401.02(15) and 29 U.S.C. § 141, *et seq.* of the Labor Management Relations Act ("LMRA"). Local 96 maintains its headquarters and principal place of business at 2120 Bladensburg Road, N.E., #106, Washington, D.C. 20018.

4.      Defendant Washington Gas Light Company ("Washington Gas" or the "Employer") provides natural gas to its customers throughout the Washington D.C. metropolitan area. Upon information and belief, the Employer maintains an office at 6601 Industrial Road, Springfield, VA 22151. Washington Gas, at all relevant times, employed workers who were and are represented by Local 96 as their exclusive collective bargaining representative. Washington Gas is an "employer" within the meaning of D.C. Code §§ 32-1002(3), 32-1101(6), and the LMRA, 29 U.S.C. § 141, *et seq.*

5.      At all relevant times, the Union has been the exclusive representative of the classified employees of the Employer for the purpose of collective bargaining.

6.      The Union and the Employer are parties to a collective bargaining agreement which governs the terms and conditions of employment. A true and correct copy of the collective bargaining agreement is attached hereto as Plaintiff's Exhibit B. The collective bargaining agreement requires contractual disputes to be resolved through a grievance procedure. Any grievance which cannot be resolved by the parties is resolved by final and binding arbitration.

**FACTUAL BACKGROUND**

7.      On or about March 1, 2005, the President of Local 96, William B. Gibson III, filed a grievance against Washington Gas. The Union filed its grievance to contest the Employer's

2

decision to eliminate two job classifications – Inspector Contractor and Inspector Pre-Installation. The Union maintained that the Employer violated the collective bargaining agreement ("CBA") between the parties by, among other things, improperly transferring and/or diverting bargaining unit work to individuals outside the bargaining unit.

8.    On or about March 21, 2005, Thomas F. Bonner, Vice President of Washington Gas, along with Les Goodman and Steve Savage of Washington Gas, met with the Union representatives William B. Gibson, Jack Gray and Donald Mitchell to discuss the grievance. By agreement of the parties, this was a one-step grievance.

9.    In a letter dated March 30, 2005, Mr. Bonner denied the Union's grievance.

10.    Thereafter, the Union notified the Employer of its intention to arbitrate the Inspector Contractor grievance. Subsequently, Arbitrator Salvatore J. Arrigo was selected by the parties. Mr. Arrigo was one of the individuals on a permanent panel of Arbitrators used by the Union and the Employer. The Union and Employer also agreed to September 29 and 30, 2005, as the dates to arbitrate the Union's grievance.

11.    Prior to the arbitration hearing, on or about August 10, 2005, the parties participated in a conference call with the Arbitrator to resolve a dispute over the appropriate scope of the grievance. Based upon this conference call, the Arbitrator ruled on the appropriate scope of the grievance - including what issues the Union could raise at the arbitration hearing.

12.    On August 19, 2005, the Employer filed a motion to continue the arbitration. The Union filed its opposition to the Employer's motion on August 29, 2005 and requested that the arbitration hearing proceed as scheduled on September 29, 2005.

13.    By Ruling dated September 1, 2005, Arbitrator Arrigo denied the Employer's motion to continue the arbitration hearing because he determined that the issue relied on by the Employer in requesting the continuance would not likely arise during the hearing based upon his previous ruling as to the scope of the arbitration. A true and correct copy of Arbitrator Arrigo's Ruling is attached hereto as Plaintiff's Exhibit C.

14.    On September 14, 2005, the Employer sent a letter to the Union seeking a stipulation of the issues to be presented at the scheduled arbitration hearing. That stipulation request included a suggestion that the issue of the elimination of a job classification not encompass any discussion concerning safety issues. The Union responded to the Employer on September 15, 2005, and disagreed with the Employer's recommended stipulation of issues. As to the Employer's suggestion that the parties agree to preclude a discussion of safety issues at the hearing, the Union stated that Arbitrator Arrigo's Ruling on September 1, 2005, adequately covered the permissible scope of the proceedings, and recommended that the parties meet prior to the hearing date to agree upon the framing of the issues in order to expedite the hearing.

15.    On September 21, 2005, the Employer faxed a letter to the Union purporting to remove Arbitrator Arrigo from the parties' permanent panel of arbitrators and suggesting that such action would prevent the arbitration from proceeding as scheduled on September 29, 2005.

16.    In response, on September 23, 2005, the Union filed a motion to proceed with the scheduled arbitration. Arbitrator Arrigo issued a Ruling and Order holding that the hearing scheduled for September 29, 2005, would proceed as scheduled and further argument could be made at the hearing regarding the issue of the arbitrator's authority and jurisdiction to hear the case. A copy of Arbitrator Arrigo's Ruling and Order is attached hereto as Plaintiff's Exhibit D.

4

17.    Subsequently, the Employer acknowledged receipt of the Union's motion to proceed and the Arbitrator's Ruling and Order to continue, while appealing the validity of the Order. In response to the Employer's challenge, on September 27, 2005, Arbitrator Arrigo reaffirmed his earlier September 23, 2005, Ruling and instructed that the hearing be held on September 29, 2005 with additional argument at that time if the parties requested.

18.    The arbitration hearing was conducted before Arbitrator Arrigo on September 29, 2005. The Employer chose not to participate in the hearing.

19.    The Arbitrator directed that a copy of the transcript from the hearing, as well as a complete set of exhibits be provided to the Employer. A copy of the transcript and a complete set of hearing exhibits were subsequently provided to the Employer.

20.    Likewise, the Employer was advised of the briefing schedule for the submission of post hearing briefs. The parties each timely submitted a post hearing brief. In its post hearing brief, the Employer did not limit its argument to procedural issues but rather engaged in a substantive argument as to why the Union's grievance should be denied. A copy of the Employer's Post-Hearing Brief is attached hereto as Plaintiff's Exhibit E.

## ARBITRATOR ARRIGO'S AWARD

21.    On December 31, 2005, Arbitrator Arrigo issued his Opinion and Award. Therein, Arbitrator Arrigo found for the Union as follows:

A.    He retained jurisdiction and the authority to issue an opinion and award;

B.    The Employer violated the CBA by transferring the work of Inspectors to supervisory personnel on February 9, 2005, and at all times thereafter;

C.    The Employer was directed to reverse its decision eliminating Inspector

5

classifications and offer to all employees removed from the Inspector classifications the opportunity to accept reinstatement to their previous Inspector positions without loss of seniority or any other benefit and be made whole; and

D.   The Employer was directed to stop diverting traditional Inspector work to supervisory positions and return the traditional Inspector work to the Inspectors.

22.   In reaching his decision, Arbitrator Arrigo interpreted the parties' collective bargaining agreement. His Opinion and Award, therefore, draws its essence from the collective bargaining agreement.

23.   Under the parties' collective bargaining agreement, Arbitrator Arrigo's Opinion and Award is also within the scope of his authority as an arbitrator.

24.   After Arbitrator Arrigo issued his Opinion and Award, the Union approached the Employer and asked that the Employer comply with the provisions of the Award. Despite requests by the Union, the Employer has failed to comply with the provisions of the Arbitration Award.

## REQUEST FOR RELIEF

25.   This claim is pursuant to D.C. Code §§ 16-4310 and 16-4315.

26.   Under D.C. Code § 16-4310, upon application of a party, the Court shall confirm an arbitration award, unless a party requests that the Court vacate, modify or correct the Arbitration award within the statutorily allotted time frame.

6

27.    In accordance with D.C. Code § 16-4311(b), a party must seek to vacate an arbitration award within ninety (90) days after a copy of the award is delivered to the applicant. Similarly, under D.C. Code § 16-4309, a party must seek to modify or correct an award within twenty (20) days after a copy of the award is delivered to the applicant.

28.    Arbitrator Arrigo issued his Opinion and Award on December 31, 2005. The Employer has not sought to modify, correct or vacate the award within the statutorily prescribed time limits. Accordingly, as a matter of law, the decision must be confirmed.

WHEREFORE, the Plaintiff demands the following relief:

A.    An Order confirming and enforcing the Opinion and Award of Arbitrator Arrigo;

B.    An Order retaining jurisdiction of this case pending the Employer's compliance with the Opinion and Award;

C.    An award of attorneys' fees expended by the Union to enforce the Opinion and Award;

D.    An award for costs in this action; and

E.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Mark J. Murphy, Bar No. 453060
Marc L. Wilhite
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, DC 20036
(202) 783-0010
(202) 783-6088 - fax

Date:   April 13, 2006

8

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

TEAMSTERS LOCAL UNION NO. 96, )
affiliated with the INTERNATIONAL )
BROTHERHOOD OF TEAMSTERS, )
2120 Bladensburg Road, N.E., #106 )
Washington, D.C. 20018 )
)
              Plaintiff, )     Civil Action No. _____
)
    v. )
)
WASHINGTON GAS LIGHT COMPANY )
6601 Industrial Road )
Springfield, VA 22151 )
)
           Defendant. )

## ORDER

Having considered Plaintiff's Application to Confirm and Enforce the Arbitration Award and

any opposition thereto and response in support thereof, it is this ___ day of April, 2006 hereby

**ORDERED** as follows:

    1.    The Application is **GRANTED**; and

    2.    Washington Gas Light Company is ordered to offer to all employees removed from

the Inspector classifications the opportunity to accept reinstatement to their previous Inspector

positions without loss of seniority or any other benefit and be made whole; and

    3.    Washington Gas Light Company is further ordered to stop diverting traditional

Inspector work to supervisory positions and return the traditional Inspector work to the Inspectors;

and

    4.    Washington Gas Light Company shall pay all attorneys' fees related to enforcing the

Arbitration Award and all costs in this action after a proper accounting is submitted to the Court; and

5.    The Court shall retain jurisdiction of this case pending Washington Gas Light Company's compliance with this Order.

_____
Judge _____
Superior Court of the District of Columbia

Date:   April ____, 2006

Copies to:

Mark J. Murphy
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036

Patrice Latimer
Washington Gas Light Company
101 Constitution Avenue, N.W.
Washington, D.C. 20080

B

# 2004-2007
# LABOR CONTRACT

between

## Washington Gas Light Company

  and  

## Teamsters Local 96

Effective June 2, 2004

# LABOR CONTRACT
## Washington Gas Light Company
## and
## Teamsters Local 96

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| Recitals | | |
| Article I | Union Recognition | 1 |
| Article II | Union Membership, Checkof | 2 |
| Article III | Union Activity | 5 |
| Article IV | Strikes, Lockouts, etc | 12 |
| Article V | Functions of Management | 14 |
| Article VI | Seniority | 20 |
| Article VII | Hours of Work and Overtime | 34 |
| Article VIII | Work Force Flexibility | 40 |
| Article IX | Wages/Job Evaluation | 41 |
| Article X | Vacations | 49 |
| Article XI | Holidays and Personal Days | 53 |
| Article XII | Long and Faithful Service | 57 |
| Article XIII | Family Medical Leave | 58 |
| Article XIV | Dress Code and Uniforms | 59 |
| Article XV | Prohibition on Foreman Working | 60 |
| Article XVI | Notice of Changes in Classification | 61 |
| Article XVII | Supervisory Chart | 61 |
| Article XVIII | Procedure for Adjusting Controversies | 61 |
| Article XIX | Matters/Issues Not Subject to Grievance or Arbitration | 73 |
| Article XX | Amendments, Waivers and Government Regulations | 73 |

| Article XXI | Safety | 74 |
| Article XXII | Employee Benefits | 76 |
| Article XXIII | Outside Contract Work | 77 |
| Article XXIV | Special Allowances | 78 |
| Article XXV | Funeral Leave | 80 |
| Article XXVI | Duration, Reopening and Renewal | 81 |
| Article XXVII | Identity of Parties and Complete Agreement (Zipper Clause) | 81 |
| Annex AG | Attendance Guidelines | 84 |
| Annex B | Union Checkoff Authorization | 85 |
| Annex D1 | WG/DOT Drug and Alcohol Testing Policy (effective 6/1/04 through 12/31/05 only) | 87 |
| Annex D2 | WG/DOT "Zero Tolerance" Drug and Alcohol Testing Policy (effective 1/1/06) | 92 |
| Annex DA | Disciplinary Action Guidelines | 96 |
| Annex DH | Meter Reading "Dispatch from Home" Pilot Program | 99 |
| Annex EF | Emergency Flexibility | 101 |
| Annex FT | 4 Day — 10 Hour Work Schedule | 104 |
| Annex LA | Layoff Allowance | 105 |
| Annex PR | Personal Responsibility Policy | 106 |
| Annex ROE | ROE Eligibility Criteria | 107 |
| Annex STBY | Standby Program | 108 |
| Annex THV | Take Home Vehicles Program (THVP) | 113 |
| Annex WSB | Employee Request for Modification of Start Time/Shift and Waiver of Shift Bonus | 121 |

Annex W          Wage Rates effective upon
                 ratification                        123
Annex W-1        Wage Rates as of June 1, 2005       124
Annex W-2        Wage Rates as of June 1, 2006       125
Annex ZC         Zipper Clause                       126
Job Classifications                                  129
Index                                                137

# ARTICLE XVI
## Notice of Changes in Classification

The Company will notify the Secretary-Treasurer of the Union and the Head Shop Steward of any changes in the classification or pay of any member of the Union at the time such change is made.

# ARTICLE XVII
## Supervisory Chart

The Company will post on each business unit bulletin board and on the Washington Gas Intranet the supervisory chart applicable to that business unit. Such chart will show the names of the complete supervisory force.

# ARTICLE XVIII
## Procedure for Adjusting Controversies

1. (a) It is considered by the parties that all grievances should be presented promptly, discussed without delay and answered within a reasonable time. A grievance is defined as a violation of a specific term(s) or provision(s) of this Contract or a past practice as recognized and enumerated in Annex ZC to this contract. It is also considered that grievances should be settled amicably whenever possible at the levels where the greatest familiarity with the subject matter exists. Subject to the terms set forth below, any individual employee, group of employees or either party shall have the right to present grievances and to have them considered for adjustment, provided any adjustments are not inconsistent with the terms of this Contract and a Union representative has been given an opportunity to at-

-tend as provided in this procedure. Therefore, it is agreed that all grievances, except safety-related grievances and job evaluation grievances, shall be subject to the following grievance procedure. The procedure for safety-related grievances is set forth in Article XXI of this Contract and the procedure for job evaluation grievances is set forth in Article IX.

(b) Each party agrees to honor the request of the other party for discovery of information and data that is relevant to the proceeding and which may facilitate a mutually satisfactory resolution of the grievance. All data requests shall be in writing. The party receiving such request shall respond to such request as soon as reasonably possible. All time limits in this Article shall be suspended for not more than 10 days upon receipt of such a written request. Provided, however, that when a party makes a request for data which is voluminous or otherwise not readily retrievable (e.g., archived documents or records) the time limits hereunder shall be suspended for not more than thirty (30) days. All data requests made by the Union shall be delivered to the Department Head, Labor Relations. Requests made by the Company shall be delivered to the President of the Union. The time limits of this Article may be further suspended for a party making a data request, at the written election of that party, for up to ten (10) additional days following receipt of that data to review such data sent by the party responding to such request. The parties recognize that this provision shall not be applied in a manner inconsistent with the Union's legal duty of fair representation. Nothing in this Section precludes either party from pursuing an issue regarding an information request at the Na-

tional Labor Relations Board. All deadlines in this Article shall be suspended pending the Board's determination of any charge.

(c) The grievance may be freely amended in writing between steps. However, no claim may be presented or argued and no remedy may be sought in arbitration without such claim/remedy having been first discussed at step 2 in this procedure.

(d) Each grievance must be numbered by the Union noting the calendar year in which the grievance is filed and the number of each grievance as follows: e.g., 00-1, 00-2, etc. The grievance must also be dated and signed by the aggrieved employee or an authorized Union representative.

(e) For purposes of this Article, the term "work days" shall be defined as Monday through Friday.

2. Any employee who believes that he/she has a grievance shall, within thirty (30) calendar days (within five (5) work days in discharge cases) after the cause of the grievance is alleged or known to have taken place, discuss it informally with his/her immediate supervisor. The employee may have a Shop Steward present during the discussion. (In discharge cases, a Head Shop Steward or Union officer shall be present.) The supervisor shall, within three (3) workdays after the discussion, notify the employee and steward in writing that the grievance is denied or granted. The supervisor may resolve the grievance in a manner consistent with the terms of this contract. In such cases, the Union shall be given the opportunity to be present at the meeting when the grievance is resolved.

63

When the Union reasonably believes that the grievance cannot be effectively presented at the informal step, it may bypass the informal step and, in such cases, the Union shall file a written grievance as a "step 1" grievance within the time limits set forth in Section 2 of this Article. Grievances initiated by the Union itself may be presented by any designated Union representative.

3. The written grievance shall explain, in plain language, (1) the specific claim(s) the Union is making, including the relevant facts surrounding the grievance; (2) the specific Labor Contract provisions that the Union or the aggrieved employee feels were violated; and (3) the specific remedy or remedies the Union is seeking with respect to the grievance.

4. **Step 1** — If the supervisor's answer does not resolve the grievance, then, within five work days after having received the supervisor's answer, the Union, on the employee's behalf, shall file a written grievance on forms available from the Company or the Union. and one (1) copy shall be delivered to the appropriate department head and area head, and one (1) copy to the Department Head, Labor Relations. If the written grievance is not delivered to the appropriate area head or department head and to the Department Head, Labor Relations within the five work day period above, it shall be considered to have been withdrawn and shall not be further pursued by the grievant or the Union on the grievant's behalf.

5. Within five (5) work days of delivery of the written grievance as required by Section 4 above, the appropriate area head or department head, the grievant and the Presi-

dent of the Union or his designated representative shall meet to resolve the grievance. Within one (1) week after that meeting, the appropriate department head / area head shall deliver a written answer explaining his/her decision to the President of the Union, with a copy to the appropriate shop steward / union representative.

6. **Step 2** —— If the grievance is not resolved in Step 1, the Union shall, within five (5) work days after receipt of the written answer in Step 1, request in writing a meeting with the Vice President of the appropriate Business Unit to resolve the grievance. The Vice President shall meet with the grievant, the Union President and up to two union representatives designated by the Union President to resolve the grievance as soon as possible, but not later than seven work days after receiving the written request. Within seven (7) workdays after the meeting, the Vice-President shall give a written answer explaining his/her decision to the Union President. If the grievance is not resolved in Step 2, it may be taken to arbitration as provided in Sections 16 and 17 of this Article. The Department Head, Labor Relations shall continue to hear job evaluation grievances as "step 2" grievances.

7. **Grievance Meetings.** The Company will compensate, at the appropriate rate of pay, the aggrieved employee and one person designated by the Union for time spent handling grievances during regular working hours at step 1. The Company will compensate the aggrieved employee and up to two (2) representatives designated by the Union for time spent handling grievances during regular working hours at step 2. Whenever the Union alleges that a group (or more) of employees are aggrieved and the basis for

65

the grievance is substantially the same for all employees in the group, a committee of not more than three persons, (which may be modified by agreement of the Union and the Department Head, Labor Relations on a case-by-case basis) which shall include designated Union representative(s) and at least one of the employees from the aggrieved "group" of employees, shall be substituted for the words "employee," "grievant" or "aggrieved employee" wherever such words appear in the Procedure for Adjusting Controversies in this contract.

8. **Fees, Costs and Expenses Associated with Arbitration.** (a) Each party to an arbitration shall pay one half of the arbitrator's fee, the reporter's (including transcript preparation, if any) fee and any fee for the use of hotel (or other arbitration site) space and services. If only one party requests expedited preparation of the transcript, that party shall bear the entire portion of the cost for such expedited service. If the arbitration is held on the premises of the Company or the Union, the other party shall not incur any cost for the use of such premises. The parties agree that it is desirable to resolve grievances before arbitration where possible. To that end, the parties agree to meet at least thirty (30) days before the scheduled arbitration to discuss specifically a full and final settlement of the grievance.

(b) Any other cost, fee or expense of any kind incurred by either party in connection with any grievance or arbitration including, but not limited to, the cost/expense of any research or the calculation of alleged damages or back pay shall be paid solely by the party incurring such fee, cost or expense.

66

(c) The Company will not under any circumstances compensate the Union, any Union official, Union-eligible employee, agent for the Union or attorney representing the Union for time spent in preparation for any arbitration, the actual arbitration or any activities related to arbitration of grievances, including, but not limited to, post-arbitration activities related to any award or remedy ordered by the arbitrator except as provided under Section 17 (d) of this Article.

(d) If the arbitrator determines that either party acted in bad faith and engaged in egregious conduct which directly caused the grievance or that either party acted in bad faith and engaged in egregious conduct in advancing its position during the grievance procedure, the arbitrator may order that party to pay the full fee for the services of the arbitrator and the reporter and the costs for hotel space and services. If the arbitrator finds that both parties engaged in such conduct, then the provisions of Section 8(a) of this Article shall apply.

9. Discussion regarding grievances shall be conducted as far as practicable during the employee's working hours. The office of the Department Head, Labor Relations shall arrange, upon request by the designated Union representative, for employees to be excused to attend grievance meetings. All employees shall report to their supervisors upon returning to work. An employee representing himself or herself shall arrange to meet directly with his/her supervisor.

10. Grievances brought by the Union or grievances relating to matters which extend beyond a single Depart-

ment, Division, or Group may originate in the step of the grievance procedure where management authority to settle the matter exists, but no grievance may be taken to arbitration until it has been presented in Step 2.

11. It is agreed that the grievance procedure time limits may be modified at any time by written agreement of the President of the Union and the Department Head, Labor Relations when such action appears to be for good cause. Consent by either party to modify such time limits shall not be unreasonably withheld.

12. The Department Head, Labor Relations and the Union may designate others to perform the tasks described in this Article. In such cases, the Union and/or the Company shall inform each other of such designees.

13. Grievances brought by the Company shall be in writing and shall be mailed or delivered by the Company to the Union President within 15 (fifteen) days after the cause of the grievance is alleged or known to have taken place. The Department Head, Labor Relations and the President of the Union shall meet in person or by telephone within 10 days after the Company's written grievance is received at the office of the President of the Union. Within one (1) week after the meeting or telephone call, the President of the Union shall give the Department Head, Labor Relations a written determination explaining his/her decision of the Company's grievance. If the grievance is not resolved to the Company's satisfaction, the Department Head, Labor Relations shall, within fifteen (15) calendar days of receiving the written determination, give the President of the Union a written notice of intent to arbi-

trate and a request to select an arbitrator. Thereafter, the procedures stated in Sections 16 and 17 of this Article shall be followed with respect to the arbitration of the Company's grievance.

14. The grievance procedure is applicable to all Union-eligible employees in the bargaining unit, provided, however, that terminations of any probationary employee during the first 10 months of continuous service shall not be the subject of a grievance.

15. (a) Failure to comply with the time limit provisions of this Article by any grievant or Union representative shall bar the grievant and the Union from further pursuing the grievance in question. Failure to comply with the time limit provisions of this Article by Management representatives shall permit the grievance to be advanced to the next Step of the grievance procedure.

(b) Failure by the Company to comply with the time limits in Section 13 with respect to a Company grievance shall bar the Company from further pursuing such grievance. Failure by the Union to comply with Section 13 time limits shall permit the Company's grievance to go directly to arbitration.

16. (a) If a Company or Union grievance is not settled within the time limits stated in this Article or otherwise as prescribed herein, the aggrieved party shall give the other party, within fifteen (15) days of the receipt of the written determination of the grievance after step two, a written notice of intent to arbitrate and a request to select an impartial arbitrator. Such selections shall be made from the panel of arbitrators by alphabetical order. However, no ar-

69

bitrator may hear two cases in a row. For a grievance that it is permitted to proceed to arbitration because of one party's failure to comply with a time limit, a written notice of intent to arbitrate and a request to select an impartial arbitrator shall be given by the other party within fifteen (15) calendar days of the deadline that was not met.

The Company shall not be liable for any damages, including, but not limited to, back pay for any period of delay in scheduling an arbitration, selecting an arbitrator or other delay, caused directly or indirectly by the grievant or by the Union.

In discharge cases, any arbitrator selected must be available to hear the case within 45 days, if possible, of his/her selection. If an arbitrator's schedule does not so permit, the next arbitrator whose schedule does so permit, in alphabetical order, shall be selected. If no arbitrator can hear a discharge case within 45 days, then the earliest available arbitrator shall hear the case.

A panel of nine (9) arbitrators shall be jointly compiled and agreed upon by the parties and shall be updated from time to time by mutual agreement. During the term of this Contract, either party may, for any reason, strike up to two (2) arbitrators from the panel of arbitrators. However, the parties shall make every reasonable effort to promptly replace any arbitrator removed from the panel under this Section.

(b) A representative of each party shall confer within three (3) workdays after the written notice of intent to arbitrate is received by the non-aggrieved party, to identify the

impartial arbitrator to be selected by alphabetical order. The arbitration shall then be scheduled for a date and time as soon thereafter as convenient to the schedules of the parties and the impartial arbitrator.

17. (a) The arbitrator shall have jurisdiction and authority to interpret and apply the provisions of this Labor Contract only to the extent necessary to determine and decide the grievance. The arbitrator shall not have jurisdiction or authority to alter, extend, modify or in any way change the provisions of this Labor Contract or to consider any claim not raised during the grievance procedure or to impose or fashion any remedy inconsistent with or specifically prohibited by this Contract or any remedy not sought by the grievant/aggrieved party or Union during the grievance procedure. Further, the arbitrator may apply (not interpret) federal and state laws, and regulations and requirements that may be imposed by regulatory agencies having jurisdiction over the Company.

The parties shall not be precluded from raising at arbitration any claim or seeking any remedy not previously discussed during the grievance procedure. However, in such cases, the arbitrator shall remand the matter to the final step of the grievance procedure for consideration and determination of such claim/remedy in accordance with this Article before the grievance may proceed to arbitration on such claim/remedy. In such cases, the party raising the new claim/remedy shall pay the arbitrator's fee for that day and, unless the grievance is resolved on remand, the arbitration shall resume at a time mutually convenient to the parties but in no case sooner than 1 week following the remand.

(b) In a job evaluation case, the arbitrator shall apply the "total compensation" standard in the local market (DC, MD, VA) as established in Article IX of this Contract (wages + value of benefits = total compensation). Further, the arbitrator shall judge whether the Company reasonably assigned a wage rate under the "total compensation" standard that comports with market standards for a job with comparable skills. The arbitrator may award only a wage grade and rate step as set forth in the wage rate schedule which appears in Annex W to this Contract. The arbitrator may not consider any market wage or benefit data at arbitration that was not presented to the Company by the Union or by the Company to the Union at the grievance meeting (see Article IX, Section 4).

(c) **Performance Appraisal Grievances.** Employees shall have the right to redress any grievances regarding their annual performance appraisals. Within 5 days after the employee receives an appraisal, the employee may grieve the appraisal by giving a written explanation of his/her grievance or disagreement with the appraisal on the appraisal form, stating in plain language the specific basis for such grievance. The employee shall then return the appraisal form to his/her supervisor and a copy of the appraisal will be sent by the Company to the Union office. Within 15 days after the employee grieves the appraisal, the employee shall meet with the appropriate department head to discuss and, if possible, resolve the grievance. If the grievance is not resolved at this meeting (or within one week of that meeting), the employee may, within 30 days after receiving the department head's answer, meet with the appropriate Business Unit Head to discuss and, if possible, resolve the grievance.

If the grievance is not resolved at this meeting (or within one week of that meeting) the matter shall be considered closed. There shall be no further recourse to the procedures for adjusting controversies and there shall be no arbitration of such grievance, unless the union contends that the overall rating for the appraisal has no basis in fact.

(d) The decision of the arbitrator shall be final and binding upon both parties and the employees involved. The parties acknowledge that either or both parties may seek review of the arbitrator's decision in court and may pursue all available remedies in such forum, including attorneys' fees and court costs.

<h1 style="text-align:center">ARTICLE XIX</h1>

## Matters/Issues Not Subject to Grievance or Arbitration

During the life of this Agreement, or at the time of renewal or extension of this Agreement, basic wage rates, the normal workday and the normal workweek are not matters to be dealt with as grievances or complaints under Article XVIII, Procedure for Adjusting Controversies, and are not subject to arbitration.

<h1 style="text-align:center">ARTICLE XX</h1>

## Amendments, Waivers and Government Regulations

1. **Amendments.** This Contract may be amended at any time. Any amendment (or other mid-term side agreement) hereto shall be in writing and shall be signed and dated by the Chief Executive Officer of the Company or his designee and by the President of the Union. Such amend-



**Washington Gas**

101 Constitution Avenue, NW
Washington, DC 20080
www.washingtongas.com
Facsimile (202) 624-6012
platimer@washgas.com
Direct Dial (202) 624-6686

September 21, 2005

**Via Fax and Regular Mail**
Mark J. Murphy, Esquire
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, NW, Suite 400
Washington, DC 20036

Dear Mr. Murphy:

This letter is to inform you that, in accordance with Article XVIII, Section 16 (a) of the Labor Contract, Washington Gas is exercising its contractual right to strike Salvatore J. Arrigo from the panel of arbitrators. Accordingly, the Company is removing the arbitration hearing currently set for September 29 and 30 from its calendar. I will contact you to reschedule this matter for hearing as soon as a new arbitrator is selected.

This action reduces the number of arbitrators on the panel to four (4). As noted in the Labor Contract, the parties need to select replacements for Mr. Arrigo and other arbitrators that have either resigned or been previously removed by the parties in order to restore the panel size to nine (9). Mr. Stephen J. Savage, Department Head – Labor Relations, is available to discuss with a representative of Local No. 96, the selection of arbitrators to restore the panel to the number of arbitrators contemplated in the Labor Contract.

Sincerely,

L. Patrice Latimer

pc:  Arbitrator S. J. Arrigo
     S. J. Savage



IN THE MATTER OF
THE ARBITRATION BETWEEN

---

TEAMSTERS LOCAL UNION NO. 96,   )
                        )
        Union           )        Grievance No. 2005-10
                        )        (Elimination of Inspector
        and            )        Classifications)
                        )
WASHINGTON GAS LIGHT COMPANY, )
                        )
        Employer       )

---

## RULING AND ORDER

By letter dated September 21, 2005, to the Union, a copy of which I received on September 22, the Employer stated that "in accordance with Article XVIII, Section 16(a) of the Labor Contract, Washington Gas is exercising its contractual right to strike Salvatore J. Arrigo from the panel of arbitrators." The Employer went on, *inter alia*, to state it was therefore "removing the arbitration hearing currently set for September 29 and 30 from its calendar" and indicated it would contact the Union to reschedule the matter for hearing as soon as a new arbitrator was selected.

On September 23, 2005, I received by FAX the Union's Motion to Proceed With Arbitration Hearing wherein the Union requested an order from the undersigned directing that the hearing in this matter proceed as scheduled. The Union gives various reasons and arguments for its request, contending the Employer's attempt to strike the Arbitrator at this time is improper and should not be allowed and the matter should proceed as scheduled regardless of the Employer's willingness to attend and participate.

I have read the applicable contract provision relative to the issue herein and considered the matter and, in my view, the hearing scheduled to commence on September 29, 2005, should

proceed as scheduled. If the Employer wishes to make further argument at that time relating to this issue I will received and consider the parties' positions and rule upon such presentation at that time.

Accordingly, it is hereby ORDERED that:

The arbitration hearing in this matter scheduled to commerce on September 29, 2005, shall proceed at the agreed upon time and place and the parties should be prepared to present all evidence in support of their positions.

September 23, 2005
Dated

Salvatore J. Arrigo
Arbitrator




**Washington Gas**

101 Constitution Avenue, NW
Washington, DC 20080
www.washingtongas.com
Facsimile (202) 624-6012
platimer@washgas.com
Direct Dial (202) 624-6686

September 23, 2005

<u>**Via Fax and Regular Mail**</u>
Mark J. Murphy, Esquire
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, NW, Suite 400
Washington, DC 20036

Dear Mr. Murphy:

This letter is to acknowledge receipt of the Union's Motion to Proceed with Arbitration Hearing and a Ruling and Order signed by Salvatore Arrigo. Based upon the Company's decision to exercise its contractual right under Article XVIII, Section 16 (a) of the Labor Contract, the Motion to Proceed with Arbitration and the Ruling and Order are both moot. The relevant contact language is clear and unambiguous, "During the term of this Contract, either party may, for any reason, strike up to two (2) arbitrators from the panel of arbitrators." It is noteworthy that the Ruling and Order does not conclude that the Company is without the ability to exercise this clear contract right nor does it set forth any legal authority that supports the former arbitrator's view and order that "the arbitration hearing ... scheduled to commence on September 29, 2005, shall proceed at the agreed upon time and place and the parties should be prepared to present all evidence in support of their positions."

Salvatore Arrigo has been removed from the panel of arbitrators, by the attached letter notification dated September 21, 2005, in accordance with the referenced provision of the Labor Contract and therefore, has no authority to conduct an arbitration hearing in Grievance No. 05-10. Moreover, Mr. Arrigo no longer has authority or jurisdiction under the Labor Contract to hear any arbitration matter between Washington Gas and Local No. 96. As a result of the Company's action striking Mr. Arrigo from the panel of arbitrators, Washington Gas will not pay any costs, attributable to his services, incurred on or after September 22, 2005.

Mark J. Murphy, Esq.
September 23, 2005
Page 2

Washington Gas looks forward to an expeditious hearing before an arbitrator that has the authority to issue a binding and enforceable order. To facilitate this objective, I suggest that the parties act promptly to select another arbitrator. Mr. Stephen J. Savage, Department Head – Labor Relations, is available to meet with a representative of Local No. 96, to select an arbitrator using the procedure prescribed in the Labor Contract.

Sincerely,

L. Patrice Latimer

pc: S. J. Arrigo