Local Union 1202, Amalgamated Transit Union, AFL-CIO et al., Plaintiffs v. Amalgamated Transit Union AFL-CIO et al., Defendants.

No. 80-3305.

United States District Court for the District of Columbia.

1981 U.S. Dist. LEXIS 14228; 92 Lab. Cas. (CCH) P12,930

February 6, 1981.

**CORE TERMS:** membership, two-thirds, voting, present dispute, ballot, federal jurisdiction, prevail, unambiguous language, labor organization, geb, pertaining, referendum, authorize, counting, proper interpretation, right of appeal, peace, local union, simple majority, unincorporated, authorization, prerequisite, counted, specific provision, motion to dismiss, summary judgment, cause of action, plain language, industrial, predicated

**COUNSEL:** [*1]

Joseph A. Yablonski, Charles R. Both, Daniel B. Edelman, Washington, D.C., for Plaintiffs. Isaac N. Groner, Candace S. Kovacic, Judith E. Olingy, Washington, D.C., for Defendants.

**OPINIONBY:**

GASCH

**OPINION:**

GASCH, J.: This action is presently before the Court on plaintiffs' motion for summary judgment and defendants' motion to dismiss, or in the alternative, for summary judgment. Plaintiffs seek to have the Court declare the proper interpretation of defendant International Union's constitution and defendant Joint Council's By-Laws and further order that the proper interpretation be implemented. Plaintiffs base their action, and consequently predicate federal jurisdiction, upon § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and § § 101, 102 and 501 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § § 411, 412 and 501. Assuming the existence of federal jurisdiction, the plaintiffs also seek to invoke this Court's pendent jurisdiction to entertain a cause of action for common law breach of contract. On December 30, 1980, Judge Joyce Green entered a temporary restraining order maintaining the status quo until the matter could be heard on plaintiffs' [*2] motion for a preliminary injunction. Subsequently, the parties agreed by stipulation to abide by the terms of the TRO until a final decision on the merits. Dispositive motions were submitted by the parties and the Court heard oral argument on January 19, 1981. For the reasons that follow, the Court has determined that it has jurisdiction over this dispute and that plaintiffs are entitled to prevail on the merits.

I. Background

The basic facts underlying this controversy are not seriously disputed by either party. n1 Plaintiff Local Union 1202 (Local) is an unincorporated labor organization headquartered in New York City and representing employees of Greyhound Lines, Inc. in a geographic area encompassing New York City, Albany and Montreal Canada. Plaintiffs Axelrod and Lax are individual members of Local 1202. Defendant Amalgamated Transit Union (International) is an unincorporated labor organization with approximately 120,000 members in the United States and Canada. Defendant Maroney is the president of the International. Defendant Amalgamated Council of Greyhound Local Unions (Joint Council) is an unincorporated labor organization consisting of 30 local unions whose [*3] members are employed by Greyhound. Defendant Jones is president of the Joint Council.

> n1 While the parties' statements of material facts submitted pursuant to Local Rule 1-9(g) differ slightly, the parties apparently agree and the Court concurs that both contain certain embellishments not necessary to the Court's determination of these issues.

The International, the Joint Council and the Local are affiliated organizations. While each local represents members in a specific geographic area, the Joint Council exclusively represents the members of the thirty locals in collective bargaining with Greyhound. In September of 1980, the Joint Council began negotiating a collective bargaining agreement with Greyhound to replace the old

agreement upon its expiration on October 31, 1980. Greyhound's initial offer was submitted to the membership in October and was rejected by 98.2% of the members voting. The Council and Greyhound agreed to extend the old agreement beyond its expiration during further negotiations.On November 12, 1980, the Council submitted a second offer to the membership. This ballot also contained an authorization for strike action upon rejection of the offer.  [*4]

On December 2, 1980, the Council reconvened and found that 58 1/2% of the voting members had rejected the second offer.  A strike motion was made and carried to commence a strike of Greyhound employees at 12:01 A.M. on December 5, 1980.   The Council gave Greyhound 48 hours notice of the proposed action.  Present at the December 2 meeting was International Vice President, Ellis Franklin.  At that time, Franklin voiced no opposition to the strike motion but indicated his understanding that, because less than two-thirds of voting members had authorized the strike, no strike benefits would be paid.  He agreed, however, to see if he could arrange approval for the payment of benefits.

The Council reconvened on December 3.  At that time, Franklin advised the Council that he had been advised by International President Maroney that the proposed strike action was not in accordance with the International's Constitution which required authorization by two-thirds of voting members as a prerequisite to a strike.  n2 Maroney had also advised that, if after further negotiation, less than two-thirds voted to reject the offer, the Council should enter the agreement.  n3

> n2 This interpretation of the Consititution is the basis of the present dispute. In support of his position, Maroney cited § 20.2 of the International Constitution.
>
> n3 No particular provision was cited to support the proposition that the agreement must be accepted despite having been rejected by a majority of the voting membership. The defendants contend, as discussed more fully below, that this is the only practical alternative in this situation.

[*5]

At that time, the council apparently discussed what course should be taken.  A motion to appeal the Maroney interpretation to the General Executive Board (GEB) died for lack of a second.  The council finally agreed to withdraw the December 2 strike notice and return to the bargaining table.  A third offer was submitted to the membership on December 11.  This ballot was accompanied by literature describing the consequences of the vote in accordance with the interpretation set out above.  It also contained references to sections of the International Constitution pertaining to strike sanction, unsanctioned strikes and trusteeship although a follow-up letter from Maroney on December 15 instructed the members to ignore these references and vote only on the merits of the proposed offer.

Local 1202 president Dominic Sirignano who was present at the December 3 meetting, sent a mailgram to International president Maroney on December 17 indicating his disagreement with this interpretation and proposing a meeting.  Maroney informed Sirignano that he would adhere to his interpretation but that an appeal could be taken to the GEB and an adverse decision of the geb/ could be appealed to the  [*6]  International Convention. n4 The next scheduled meeting of the GEB is in April 1981 and the next scheduled meeting of the International Convention is in September 1981.

> n4 The appeal procedures, discussed more fully below, are set out in §  22.8 of the Constitution.

Plaintiffs commenced this action on December 30, 1980.  On that day, Judge Green granted a TRO enjoining, among other things, any counting of the votes of the December 11 referendum. By voluntary agreement of the parties, those votes remain uncounted and locked in a Post Office Box in Phoenix, Arizona.

II.Discussion.

The present dispute essentially revolves around an apparent conflict between two provisions of the International Constitution.  Section 20.2, set out in part in the margin, appears to indicate that two-thirds of the voting membership of a local union must vote to approve a strike.  n5 On the other hand, section 23, specifically pertaining to Joint Councils and also set out in the margin, appears to require only a simple majority of those voting to approve a strike.  n6 The language of § 23 also appears as the preamble to the Joint Council's By-Laws.

> n5 Section 20.2 captioned "strike sanction" provides in pertinent part:
>
> If... the committee has been unable to secure a settlement of the matters in dispute satisfactory to the L.U. [Local Union] and the L.U. believes that the matters in dispute are of such importance that a strike should be ordered, the L.U. shall give timely notice to the I.P. of intention to strike and advise with the I.P. before taking any such vote... If, after consultation with the I.P., it is determined

that a strike shall be taken, the question of a strike shall be submitted to a secret ballot vote of the membership of the L.U. If two-thirds of the membership voting upon the question decide in favor of suspending work , and if an International officer is not present at the time of the taking of the vote, the L.U. shall at once notify the I.P. [The section provides for an attempt at settling the dispute including] propositions of arbitration defining the points in dispute and the basis upon which they shall be arbitrated. If the company refuses to accept arbitration as tendered, the I.P. or his deputy shall then communicate with the G.E.B. in writing or by telegram and obtain the consent of a majority of the G.E.B. before endorsing the strike. [Emphasis added.]

n6 Section 23 captioned Joint Councils provides in pertinent part:

Where members of the A.T.U. belong to different L.U.s and are employed by the same company, such L.U.s shall form Joint Councils for bargaining purposes and for the purpose of taking strike action.

Such L.U.s must affiliate with and remain affiliated with such J.C.s. The Joint Council shall be the exclusive bargaining agent through which the L.U.s which form said Joint Council must bargain. The Council shall negotiate a single contract which shall cover the membership employed on the property of all the L.U.s which are members of the Joint Council. The J.C. shall take strike votes and votes on employer offers or on agreements among the membership employed on the property of all the L.U.s which are members of the Joint Council with the vote of a majority of the membership voting controlling . There shall be no separate counting of votes by L.U.s...

[*7]

A. Subject Matter Jurisdiction .

At the outset, the defendants by their motion to dismiss have raised a question concerning this Court's jurisdiction to decide the merits of the present dispute. As previously indicated, plaintiffs invoke this Court's jurisdiction predicated on the following federal statutes: § 301 of the LMRA, 29 U.S.C. § 185; and § § 101, 102 and 501 of the LMRDA, 29 U.S.C. § § 411, 412 and 501. n7 Since, under any of these statutes, the plaintiffs' cause of action revolves around the proper interpretation of the International Constitution and Joint Council's By-Laws, the existence of federal jurisdiction to decide this question and grant relief under any one eliminates the necessity of further inquiry into its existence under the others.

n7 Section 301 of the LMRA, 29 U.S.C. § 185 both creates substantive rights and is jurisdictional in nature. Section 101 of the LMRDA, 29 U.S.C. § 411, creates substantive rights under federal law. Jurisdiction is conferred by its companion provision, § 102 of the LMRDA, 29 U.S.C. § 412. Section 501 of the LMRDA creates substantive rights, 29 U.S.C. § 501 (a) and confers jurisdiction, 29 U.S.C. § 501 (b).

[*8]

Section 301 of the LMRA .

Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides in pertinent part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as definded in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The question of whether that section encompasses suits based on violations of a union's constitution has engendered a substantial amount of litigation in the federal courts. The parties apparently agree that Local 1202, the Joint Council and the International are labor organizations within the meaning of that section. The remaining question is whether the A.T.U. Constitution and the Joint Council By-Laws constitute contracts between those organizations, the enforcement of which in federal court is contemplated by § 301.

This precise question has been before the court of appeals in this circuit on one prior occasion. See 1199 DC, National Union of Hospital and Health Care Employees [*9] v. National Union of Hospital and Health Care Employees , 533 F.2d 1205 (D.C. Cir. 1976). In 1199 DC , however, the Court did not decide the ultimate question determining that, in any event, a factual prerequisite to such jurisdiction, "concrete allegations of threats to industrial peace", was absent from that case. Id ., 533 F.2d at 1208. In the present case, plaintiffs have made such allegations. Whether these allegations are sufficient, however, must be determined in light of a more detailed examination of the background from which the court extracted that requirement.

There is relatively little dispute among the courts that a union constitution is contractual in nature. As the Supreme Court has acknowledged, the state courts have typically adopted this construction when the question has arisen. See International Association of Machinists v. Gonzales , 356 U.S. 617, 619-20 (1958). See also Comment, Applying the "Contracts Between Labor Organizations" Clause of Taft-Hartley Section 301: A plea for Restraint , 69 Yale L.J. 299, 302 (1959). The constitution embodies an agreement between the International and its constituent locals as to their rights and obligations in the conduct [*10] of union affairs. When the question has arisen in the context of § 301 jurisdiction, the federal courts have typically agreed that a union constitution is, at least roughly speaking, a contract. See. e.g., Local Union No. 657 v. Sidell , 552 F.2d 1250, 1253 (7th Cir.), cert. denied , 434 U.S. 862 (1977); Trail v. International Brotherhood of Teamsters , 542 F.2d 961, 968 (6th Cir. 1976); Local Union 1219 v. International Brotherhood of Carpenters and Joiners , 493 F. 2d 93, 95 (1st Cir. 1974); Abrams v. Carrier Corp ., 434 F.2d 1234, 1248 (2d Cir. 1970), cert. denied , 401 U.S. 1009 (1971); Parks v. IBEW , 314 F.2d 886, 914 (4th Cir. 1963); Abrams v. Intenational Brotherhood of Boilermakers , 262 F.2d 835, 838 (10th Cir. 1959). Thus, it is apparent that the difficulty in determining whether jurisdiction exists over this kind of dispute is not born of any conceptual hurdle to making a union constitution conform to the "contracts between labor organizations" clause of § 301. Rather, the reticence which some courts have expressed to exercising jurisdiction over this kind of dispute has been born of a concern that § 301 would become a vehicle for propelling the federal courts into [*11] the governance of purely internal union affairs. See, e.g., Alexander v. International Union of Operating Engineers , 624 F.2d 1235, 1238 (5th Cir. 1980); Trail v. International Brotherhood of Teamsters , 542 F.2d at 968; Local Union 1219 v. United Brotherhood of Carpenters and Joiners , 493 F.2d at 96; Smith v. UMW , 493 F.2d 1241, 1243 (10th Cir. 1974); Parks v. IBEW , 314 F.2d 866, 915 (4th Cir. 1963). See also Comment, supra .

Given this background, several factors compel the conclusion that § 301 confers jurisdiction over the present case. First, as noted in Bunz v. Moving Picture Machine Operators Protective Union Local 224 , 567 F.2d 1117 (D.C. Cir. 1977), the concerns which animated this reticence to interfere in internal union affairs have dissipated somewhat in recent years. 567 F.2d. at 1124 (construing § 101 of the LMRDA). Second, this case does not present an occasion for the Court to dictate the course of internal union affairs without the guidance of a written agreement or statutory provision, a factor which has led to some reservations about the exercise of § 301 jurisdiction in particular cases. See Local Union No. 657 v. Sidell , 552 F. 2d at 1253 n. 6 [*12] citing Abrams v. Carrier Corp ., 434 F. 2d at 1248; Local 33, International Hod Carriers Building and Common Laborers' Union of America v. Mason Tenders District Council of Greater New York , 291 F. 2d 496, 507 (2d Cir. 1961) (Friendly, J. concurring). To the contrary, the provisions which the parties cite to support their respective positions are those of the International Constitution and this Court's determination will merely compel the parties to adhere to the terms to which they have voluntarily committed themselves. Bunz v. Moving Picture Machine Operations Protective Union Local 224 , 567 F.2d at 1124.

Finally and most important, the present dispute is not one which has repercussions confined within the parameters of the union. Resolution of this question has a direct impact on the collective bargaining relationship between Greyhound and the Joint Council. If the plaintiffs prevail in their interpretation of the provisions, rejection of the offer by a majority of voting members will mean a strike. If defendants prevail, rejection by less than two-thirds will mean a new contract. Therefore, this dispute is not confined to the Union.

Plaintiffs allege that if the present [*13] interpretation prevails there is a risk of "wildcat" strikes by locals represented by the Joint Council causing a severe disruption of in dustrial peace. Defendants challenge both the legal and factual sufficiency of this allegation. While the Court finds these allegations credible, they do not appear necessary to support jurisdiction in this case. Rather, they appear to be calculated to satisfy a standard based on an overly literal reading of the 1199 DC case, supra . Viewed against the background of cases on which the court relied in 1199 DC , as well as cases from other circuits, it does not appear that § 301 jurisdiction must be predicated on threats of violent disruption of industrial peace. Rather, it appears, and the Courts hold, that § 301 jurisdiction exists to enforce the terms of a union constitution where, as here, the dispute is one which has a direct effect on the relationship between union and employer and so goes well beyond the realm of internal union affairs. Local Union 1219 v. United Brotherhood of Carpenters and Joiners , 493 F.2d at 96. Having concluded that jurisdiction is proper under § 301, there is no need to inquire into the other bases of federal [*14] jurisdiction urged by plaintiffs.

B. Exhaustion of Internal Union Remedies

Section 22.8 of the A.T.U. constitution provides in part:

Any member or members feeling that they have been unfairly dealt with by the L.U. have the right of appeal to the I.P., the G.E.B. and from the G.E.B. to the

regular Convention of the I.U...  Any L.U. which feels that it is aggrieved by any action of a Joint Council has a right of appeal in the same manner as any member of a L.U. as set forth in the first sentence of the Section.  A Joint Council shall have a right of appeal from the adverse decision of the I.P. to the G.E.B. and from the G.E.B. to the regular Convention of the Union...  They must state in the appeal whether it is to the I.P., the G.E.B. or the Convention and they must not take legal action or go into court until they have exhausted all their rights within the Union and have finally appealed to the Convention on the same...

In general, where a union provides a mechanism for internal dispute resolution, a party will not be permitted to seek judicial intervention prior to exhausting the avenues so provided.  Winter v. Local Union No. 639 , 569 F.2d 146, 149 (D.C. Cir. 1977); [*15]  Imel v. Zohn Mf'g Co ., 481 F.2d 181 (10th Cir. 1973), cert. denied , 415 U.S. 915 (1974). Such resort to internal union remedies, however, is excused where it would be futile either because the internal procedures are incapable of granting full and adequate relief of the party seeking relief would be unable to receive full and impartial consideration.  Winter v. Local Union No. 639 , 569 F.2d at 14950; Chambers v. Local Union No. 639 , 578 F.2d 375, 385-86 (D.C. Cir. 1978). See also NLRB v. Marine Workers , 391 U.S. 418, 426-28 (1968). The Court has concluded that intra-union appeal in the present case would not afford plaintiffs adequate relief and therefore is excused.

The parties are in agreement that the next regularly scheduled meeting of the General Executive Board (G.E.B.) is in April 1981.  The votes which are at the center of the present dispute were to be counted on January 5, 1981.  Presumably, shortly after the counting of those votes, the Joint Council would either authorize a strike or enter into a new agreement with Greyhound.  In any event, it is clear that the April meeting of the G.E.B. comes too late to afford any relief in the present dispute.

The defendants [*16]  to not seriously dispute the proposition that resort to the April G.E.B. meeting would be inadequate to protect plaintiffs' rights.  Defendants rely, however, on §  12.9 of the A.T.U. Constitution which provides:

In case any important question requiring immediate action comes up in connection with the work of the Union, the I.P. shall have authority to submit the same by wire or written communication to the members of the G.E.B. and a vote of the majority of the members shall determine and decide the question.

What is apparent from that section is that the authority to seek interim relief in that manner is not a right of the aggrieved party but is solely within the authority of the International President.  President Maroney neither initiated nor offered to initiate that process and the Court cannot fault plaintiffs for not having initiated a process which was not in fact available to them.

C.  The Merits .

As previously noted, this dispute arises out of an apparent conflict between two provisions of the A.T.U. Constitution, §  20.2 pertaining to strike sanction and §  23 pertaining to Joint Councils. n8 The parties are in agreement that §  23 is of relatively recent vintage [*17]  having been added at the 1961 International Convention. The parties also apparently agree that the primary purpose of this section was to clarify that, where local unions are consolidated into joint councils for purposes of bargaining with a single employer, the voting should be councilwide and "[t]here shall be no separate counting of votes by L.U.s." Plaintiffs contend, however, that the section by its express terms goes beyond that, providing that on questions of employer offers and strike action "the vote of a majority of the membership voting [controls]." This construction based on the plain and unambiguous language of §  23 is convincing.

n8 These sections of the A.T.U. Constitution are reprinted in pertinent part at notes 5 & 6 supra .

The defendants do not appear to deny that the language of §  23 standing alone conveys the meaning urged by plaintiffs.  Rather, they argue that this language construed in the context of the entire instrument and with reference to the general experience of labor leaders in a strike situation is such that at least the Maroney interpretation is reasonable and therefore warrants this Court's acceptance.  See English v. Cunningham , [*18]  282 F.2d 848, 850 (D.C. Cir. 1960). The Court does not agree.

Generally, the plain and unambiguous language of an agreement should control its interpretation without reference to sources outside the agreement.  See Appalachian Power Co. v. FPC , 529 F.2d 342, 348 (D.C. Cir.), cert. denied , 429 U.S. 816 (1976). The agreement must, however, be construed as a whole and therefore, where the plain language of its provisions conflicts, it may be necessary to reach beyond the express terms to discover its proper meaning.

The Court does not, however, find any conflict between § §  20.2 and 23.  The relevant portion of §  23 reads:

The J.C. shall take strike votes and votes on employer offers or on agreements... with a vote of a majority of the membership voting controlling.

While § 20.2 does refer to a two-thirds vote for strike sanction, that section makes numerous references to local unions but none whatsoever to joint councils. n9 A construction which renders these sections harmonious by applying § 23 to joint councils and § 20.2 to local unions is to be preferred to a construction which fosters conflict.

> n9 Where sections of the A.T.U. Constitution are intended to apply equally to joint councils and local unions, it expressly so provides. For example, section 22 governing trials, appeals and grievances expressly refers throughout to "L.U. or J.C."

[*19]

Assuming, however, that the sections do conflict, it is a well settled rule of interpretation that specific provisions govern over more general provisions of an agreement. [John W. Johnson, Inc. v. Basic Construction Co., 429 F.2d 764, 772 n.18 (D.C. Cir. 1970)](and cases cited therein). Thus, the specific provision of § 23 referring as it does to strike votes taken by a joint council would govern the more general provision of § 20.2 referring to strike votes generally.

Plaintiffs have essentially accepted the propriety of the latter interpretation. Plaintiffs have agreed that, where § 23 makes no specific provision, a question would be controlled by one of the general provisions of § 20. Thus plaintiffs concede here, as they apparently conceded at the December 2 meeting, International Vice President Franklin's interpretation that § 19.3 strike benefits would not be paid unless a two-thirds majority had rejected the offer as provided by 20.3. Defendants have construed this as a concession that the Joint Council is bound generally by the two-thirds provision. Apparently defendants argue that there are two kinds of strikes, sanctioned strikes during which strike benefits [*20] are paid and unsanctioned strikes which are unauthorized. On this point, however, the Constitution is ambiguous. In any event, it is undisputed that this was not the understanding of Vice President Franklin or the Council members at the December 2 meeting. Furthermore, it was not the understanding of President Maroney (then a delegate) at the 1963 International Convention. At that time, the view was expressed by then President Elliott, and apparently concurred in by all present, that an offer to arbitrate was a necessary prerequisite to payment of strike benefits but not necessary prior to taking strike action. n10

> n10 See Declaration of Dominic Sirignano, Exhibit 9, Proceedings of 37th Convention (1963) p. 146.

The defendants also argue that an article by President Maroney in the union publication, In Transit in January 1980 made clear that joint councils were bound by a two-thirds vote requirement before taking strike action. A copy of that article has been filed with the Court. It is unclear, however, whether the article is referring to the payment of strike benefits or the authorization of strike action. The assertion of Joint Council President Jones that it was his [*21] understanding that the article clearly and unambiguously meant that a two-thirds vote was required prior to strike action n11 is belied by the undisputed fact that neither he nor anyone else, including International Vice President Franklin, expressed that understanding at the December 2 meeting.

> n11 See Supplementary Declaration of Owen G. Jones, at P6.

Finally, the defendants argue that experience has taught that a strike supported by a bare majority has little chance of success when compared to a strike supported by two-thirds. From this defendants ask the Court to conclude that there was clearly no intention to eliminate the two-thirds requirements when referring to joint councils and that inclusion of the clear and unambiguous language of § 23 was merely inadvertent. The Court has no quarrel with the proposition that a strike's chance of success is directly proportional to the percentage of the membership committed to supporting it. The short answer to defendants' argument is that it is not this Court's role to enforce the agreement that should have been made rather than the one that was actually made even when the former is more reasonable than the latter. On closer [*22] examination, however, the more reasonable interpretation does not emerge as clearly as defendants urge. The final step in defendants' analysis would require the Joint Council to accept the employer's offer even if rejected by more than one-half of the membership but not by the requisite two-thirds necessary to authorize a strike. n12 The Court cannot agree that an interpretation which would bind the membership to a contract that was rejected by the majority is necessarily more reasonable than an interpretation which would permit a strike in the same circumstances.

> n12 Defendants urge that once this stage has been reached there is no practical alternative to accepting the agreement. Defendants' position appears to be that once the union is handcuffed as it were by a vote which falls short of the two-thirds mark, the employer no longer has any incentive to bargain in good faith and the situation is only likely to deteriorate.

For the foregoing reasons, the Court holds that the plain language of the A.T.U. Constitution compels the conclusion that the vote of a simple majority is all that is required to authorize strike action by the Joint Council.

D. Relief.

Given this [*23] resolution of the current dispute, it is obvious that the ballots from the December 12 referendum are invalid prefaced as they were by what the Court has determined is an erroneous interpretation of the International Constitution. Thus, those ballots should be disregarded. It does not appear, however, that the votes which were counted at the December 2 meeting are any longer a valid indication of the feelings of the membership and should also be disregarded. Another referendum should be conducted either on the last offer or, if appropriate, a more recent offer. This ballot should be accompanied by an explanation of the consequences of that vote in accordance with this opinion. After these votes are counted, the Council may proceed to take whatever action is warranted by the outcome.

III. Conclusion.

For the foregoing reasons, the Court concludes that jurisdiction over the present dispute exists under § 301 (a) of the LMRA, 29 U.S.C. § 185 (a). Furthermore, the Court concludes that the plain and unambiguous language of § 23 of the A.T.U. Constitution requires only a simple majority of the members voting to authorize strike action by the Joint Council. Because, however, [*24] the existing votes do not adequately reflect the situation as it now stands, a new referendum should be undertaken in accordance with the views set forth in this memorandum.