IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEAMSTERS LOCAL UNION
NUMBER 96, affiliated with the
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
2120 Bladensburg Rd., N.E., # 106
Washington, D.C. 20018

                Plaintiff,

v.                          Case No. 1:06-cv-928 (ESH)

WASHINGTON GAS LIGHT COMPANY,
6601 Industrial Rd.
Springfield, VA 22151

                Defendant.

## WASHINGTON GAS LIGHT COMPANY'S RESPONSE TO ORDER TO SHOW CAUSE

Defendant Washington Gas Light Company ("Washington Gas" or the "Company"), by and through undersigned counsel, hereby gives answer to this Court's May 19, 2006 Order to Show Cause why this case should not be remanded to the District of Columbia Superior Court for want of a federal question, and respectfully requests that this Court find that this action is removable because the Application to Confirm and Enforce Arbitration Award falls within the original federal question jurisdiction of this Court under 28 U.S.C. § 1331 and 28 U.S.C. § 1441.

This action involves an attempt by Plaintiff Teamsters Local Union Number 96 ("Local 96") to confirm and enforce an alleged arbitration award rendered by an

individual who, prior to holding a contractually unauthorized, *ex parte* hearing and rendering a decision, had been struck from the panel of the arbitrators by Washington Gas pursuant to the terms of the parties' collective bargaining agreement. Because this case involves the interpretation of key provisions of a collective bargaining agreement, therefore, it is properly before a federal court pursuant to § 301 of the Labor Management Relations Act ("LMRA"). In further support of its request, Washington Gas states as follows.

## FACTUAL BACKGROUND

Washington Gas and Local 96 are parties to a June 2, 2004 Labor Contract (the "CBA"), which governs the terms and conditions of employment. Application for Confirmation and Enforcement of Arbitration Award ("Application"), ¶ 6 and Ex. B. Among other things, Article XVIII of the CBA establishes a procedure for adjusting controversies between the parties, including a procedure for binding arbitration. *See* relevant provisions of the CBA, attached hereto as Tab 1. In pertinent part, Article XVIII of the CBA provides that "[a] panel of nine (9) arbitrators shall be jointly compiled and agreed upon by the parties. . . . **During the term of this Contract**, either party may, ***for any reason***, strike up to two (2) arbitrators from the panel of arbitrators." *Id.* (emphasis added).

On or about April 11, 2005, Plaintiff notified Washington Gas pursuant to Article XVIII of its intent to arbitrate a grievance on behalf of several of its members. Application, ¶ 10. The grievance concerned Local 96's allegation that Washington Gas had violated the terms of the CBA by transferring and/or diverting bargaining unit work to individuals outside the bargaining unit by eliminating two job classifications. *Id.*, ¶ 7.

In response, Washington Gas contended that it had acted pursuant to the rights retained by it in Articles V, § 1, VI, § 13 of the CBA. *Id.*, Ex. E at 8-10.

Initially, Salvatore Arrigo was chosen by the parties from the panel as the arbitrator for Local 96's grievance. *Id.*, ¶ 10. A hearing in the matter was scheduled for September 29 and 30, 2005. *Id.* On September 21, 2005, however, Washington Gas exercised its contractual right to remove Mr. Arrigo from the panel of arbitrators in the grievance. *Id.*, ¶ 15. As a consequence, Washington Gas noted in the September 21 letter, the arbitration could not proceed as scheduled on September 29, 2005. *Id.*

Despite the fact that Mr. Arrigo had been duly removed as an arbitrator, on September 23, 2005, Local 96 filed a Motion to Proceed with Arbitration Hearing (the "Motion to Proceed") with Mr. Arrigo. *Id.*, ¶ 16. Just two hours later, Mr. Arrigo, himself, granted the Motion to Proceed and ruled that the hearing should proceed as scheduled on September 29, 2005. *Id.*, Exs. D, E at 5.

By letter dated September 23, 2005, Washington Gas reminded Local 96 and Mr. Arrigo of the CBA provision allowing for unilateral removal of arbitrators by either party, at any time and for any reason. *Id.*, ¶ 17 and Ex. E at Attachment 4. Washington Gas reiterated that it had chosen to exercise its contractual right, and made clear that it no longer recognized Mr. Arrigo as an arbitrator in the matter capable of making any ruling, including granting the motion to retain himself as an arbitrator, or issuing any binding and enforceable order. *Id.*, ¶ 17 and Ex. E at Attachment 4. Also in accordance with the CBA, Washington Gas urged Local 96 to participate in selecting another arbitrator to expeditiously hear the arbitration. *Id.*, Ex. E at Attachment 4.

Notwithstanding his removal and replacement by Mr. Murphy as arbitrator, Mr. Arrigo held an *ex parte* hearing on September 29, 2005, at which only Local 96 appeared. *Id.*, ¶¶ 17-18.  Following the hearing, Washington Gas submitted a brief by "Special Appearance," in which the Company restated its objection to Mr. Arrigo's action in holding himself out as an arbitrator of the dispute.  *Id.*, Ex. E at 2, 4-8.

On December 31, 2005, however, Mr. Arrigo issued a document in which he purported to find for Local 96 on the underlying grievance.  *See* Arbtiration Decision in the Matter of Teamsters Local Union No. 96 and Washington Gas Light Co., Grievance No. 20-05-10, attached hereto as Tab 2.  In Mr. Arrigo's invalid and unenforceable opinion, the erstwhile arbitrator considered and opined upon the parties' rights and duties pursuant to the CBA.  *Id.*

Since that time, Washington Gas has acted consistently with its position that Mr. Arrigo was stricken as the arbitrator on September 21, 2005, and that therefore, any decision he purportedly rendered in the underlying arbitration between the parties was necessarily invalid *ab initio*.  *Id.*, ¶ 24.  Nevertheless, on or about April 16, 2006, Local 96 filed the instant Application with the District of Columbia Superior Court to confirm and enforce Mr. Arrigo's findings.  Washington Gas removed the matter to this Court on May 16, 2006, on the basis of federal question jurisdiction pursuant to preemption of Local 96's state law claim by § 301 of the LMRA.  On May 23, 2006, the Company filed a Motion to Dismiss which is currently pending.

In the interim, on May 19, 2006, this Court, *sua sponte*, issued an Order to Show Cause why this case should not be remanded to Superior Court for want of a federal question, citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988).

**ARGUMENT**

I.  **REMOVAL WAS APPROPRIATE BECAUSE, BEFORE THE UNION'S APPLICATION CAN BE CONSIDERED, THE COURT MUST DETERMINE WHETHER, PURSUANT TO THE TERMS OF THE CBA, ANY ENFORCEABLE AWARD EXISTS TO BE CONFIRMED**

Removal is appropriate in this case because, before the Court can reach the determination of whether or not to confirm the so-called award, it must determine, at the threshold, whether Washington Gas' action in striking Mr. Arrigo from the panel rendered invalid any subsequent action by him with regards to the arbitration.

As noted in the Defendant's previously filed Motion to Dismiss, the LMRA specifically grants parties the right to set the terms of arbitration and to freely decide the arbiter of their disputes. 29 U.S.C. § 171. Moreover, § 16-4301 of the D.C. Code makes plain that, to the extent an agreement contains a provision to settle disputes by arbitration, that provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." D.C. Code § 16-4301. The state and federal arbitration statutes state further that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." D.C. Code § 16-4301. It follows, then, that if the agreement makes provision for the striking of an arbitrator, that method should be followed as well.

As described above, the CBA clearly states that "either party may, ***for any reason***, strike up to two (2) arbitrators from the panel of arbitrators." *See* Tab 1 (emphasis added). By its plain and unambiguous language, Article XVIII, § 16(a) does not require any particular procedural posture at the time that a party chooses to exercise its right to strike an arbitrator. Rather, the CBA makes clear that a party's decision to strike an arbitrator is appropriate at any time "***[d]uring the term of this Contract***." *Id.*

(emphasis added). The only limit placed on the right to strike is that it may be only be exercised by each party *twice* during the CBA's term. *Id.*

It is axiomatic that "the plain and unambiguous language of an agreement should control its interpretation without reference to sources outside the agreement," *Local Union 1202, Amalgamated Transit Union, AFL-CIO v. Amalgamated Transit Union AFL-CIO*, 1981 U.S. Dist. LEXIS 14228 *18 (D. D.C. 1981) (citing *Appalachian Power Co. v. FPC*, 529 F.2d 342, 348 (D.C. Cir.) *cert. denied*, 429 U.S. 816, (1976)), attached hereto at Tab 3; *see also* RAY J. SCHOONHOVEN, ED., FAIRWEATHER'S PRACTICE AND PROCEDURE IN LABOR ARBITRATION, 4th ed., § 9.11.A. at 243 (1999) (and cases cited therein). Nor may an arbitrator "ignore the plain and unambiguous language of a collective bargaining agreement." *Safeway Stores, Inc. v. United Food and Commercial Workers Union, Local 400*, 621 F.Supp. 1233, 1238 (D. D.C. 1985); *see also Excel Corp. v. Food & Commercial Workers Local 431*, 102 F.3d 1464, 1468 (8th Cir. 1996).

Nevertheless, Mr. Arrigo and Local 96 did just that — they ignored the plain and unambiguous language of Article XVIII, § 16(a). In its September 21 letter, Washington Gas exercised its contractual right to remove Mr. Arrigo from the panel of arbitrators. Application, ¶ 15. Following its notification to Local 96 and Mr. Arrigo of its action, Washington Gas further took immediate steps in accordance with its obligation under the CBA to timely replace Mr. Arrigo with the next arbitrator on the panel, Michael Murphy, and to notify Local 96 that the parties needed to work together to identify additional panel members. Application, Ex. E at Attachment 5.

Notwithstanding these actions, Local 96 continued to insist that Mr. Arrigo remained the arbitrator, refused to cooperate with Washington Gas in naming a successor,

and proceeded with a sham, *ex parte* hearing.  Following his removal, Mr. Arrigo continued to preside over the dispute by issuing subpoenas, rendering so-called rulings and orders and conducting a hearing.  Significantly, Mr. Arrigo's consideration of the relevant provision of the CBA in his response to Local 96's Motion to Proceed was limited to a conclusory declaration that "the hearing scheduled to commence on September 29, 2005, should proceed as scheduled."  *Id.*, Ex. D.  Mr. Arrigo did not address his own removal at all, instead choosing to ignore the plain language of the contract.  In his December 31 2005 decision, he again held himself out as the arbitrator of the underlying grievance and rendered substantive opinions interpreting the parties' CBA.

Because a determination of Local 96's Application requires the Court to first determine the impact of the Company's September 21 letter under the terms of the CBA on Mr. Arrigo's power to continue presiding over the arbitration, removal was appropriate.  Jurisdiction should therefore be retained by this Court pursuant to § 301 of the LMRA.

## II.    REMOVAL WAS APPROPRIATE BASED ON THE "ARTFUL PLEADING DOCTRINE"

Removal in this case is appropriate and this Court should retain jurisdiction because Local 96's state-law claim — which seeks to enforce and confirm what Washington Gas submits is an invalid and unenforceable opinion and award purportedly issued pursuant to the parties' CBA — is merely a federal claim artfully pleaded as a state law claim.

Generally, the exercise of federal jurisdiction is based upon the application of the "well-pleaded complaint rule," which precludes the exercise of federal jurisdiction if no

federal claim exists on the face of the complaint.  *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997).  Under the "artful pleading doctrine," (or the "complete preemption corollary" as this Court has identified it), however, removal is appropriate where, as here, the plaintiff's state-law claims are completely preempted by federal law.  *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 471 (1998); *Bush v. Clark Constr. & Concrete Corp.*, 267 F.Supp.2d 43, 45-46 (D. D.C. 2003).  Under this doctrine, any claim purportedly based on a preempted state-law claim is considered, ***from its inception***, a federal claim arising under federal law.  *Rivet*, 522 U.S. at 471.  Exercise of the "artful pleading doctrine" is designed to empower a court to look beyond the four corners of the complaint to determine whether a plaintiff has "attempted to defeat removal by asserting a federal claim dressed up in the trappings of state law, and to assert jurisdiction over such a claim."  *Santiago Sanchez v. Gate Engineering, Corp.*, 193 F. Supp. 2d. 392, 395 (D.P.R. 2002) (*citing Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981).

Section 301 of the LMRA completely preempts state law claims over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…." 29 U.S.C.A. § 185(a).  Actions arising under § 301 "may be brought in any district court of the United States having jurisdiction, without respect to the amount of controversy or without regard to the citizenship of the parties," 29 U.S.C.A. § 185(a), and are controlled by federal substantive law, even where the action is brought in state court.  As this court has noted, "Section 301 of the LMRA not only preempts state law, but authorizes the removal of claims that purport to seek

relief only under state law." *Bush*, 267 F.Supp.2d at 46 (citations omitted); *see also, Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 560 (1968).

Hence, "[the question which controls preemption disputes under section 301 [of the LMRA] is simply, ***whether a state law action is based, in its essence, on a claim of rights or duties under a collective bargaining agreement***." *Fant v. New England Power Service Co.*, 239 F.3d 8, 12 (1st Cir. 2001) (*citing* THE DEVELOPING LABOR LAW, 1699 (Patrick Hardin et al., eds. 3d ed. 1992) (1971)) (emphasis added). "A state law claim depends upon the meaning of the CBA if the conduct at issue constitutes a breach of duty under the CBA or resolution of the controversy hinges on a construction of the CBA." *Santiago Sanchez*, 193 F.Supp.2d at 395. Significantly, the Supreme Court has specifically held that actions to enforce or annul labor arbitration awards are preempted by § 301. *See General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963); *see also Kallen v. District 1199, Nation Union of Hospital and Health Care Employees,* 574 F.2d 723, 725 (2nd Cir. 1978). Therefore, ***if an arbitrator decides a dispute involving interpretation of a CBA, then a defendant's right to remove the action to federal court is absolute***. *See Santiago Sanchez*, 193 F. Supp. 2d. at 395 (holding that action seeking to enforce arbitration award was preempted by § 301 because arbitrator interpreted CBA).

In the present case, the writing that Local 96 now seeks to confirm and enforce, ***invalid and unenforceable though it may be***, specifically purports to address the parties' respective rights and duties pursuant to the CBA. In rendering the so-called opinion, Mr. Arrigo was required to interpret the CBA between Local 96 and Washington Gas. As discussed more fully below, the Company submits that central to this determination is the

issue of whether Washington Gas properly struck Mr. Arrigo from the panel of arbitrators in accordance with the CBA, therefore depriving Mr. Arrigo of the status of arbitrator and any power and authority associated therewith.

The Supreme Court's opinion in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988) is therefore inapposite to the present case. In *Lingle*, the Supreme Court declined to find that § 301 of the LMRA preempted an employee's state law tort action for retaliatory discharge for filing a worker's compensation statute. By contrast to Local 96 in the present case, the plaintiff in *Lingle* was not a union seeking to confirm and enforce an arbitration award, but an individual seeking rights afforded her by state law that were not inextricably intertwined with the CBA. *Cf. General Drivers*, 372 U.S. at 519 (holding that the district court has jurisdiction over an action to enforce a final and binding award issued pursuant to the terms of a collective bargaining agreement). As a result, Local 96's Application is subject to preemption by § 301, and therefore this Court has jurisdiction.

## **CONCLUSION**

Based on the foregoing, Washington Gas respectfully requests that the Court retain jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441.

        Respectfully submitted,

        _____/s/ Karen L. Vossler_____
        Robert L. Clayton (D.C. Bar No. 961474)
        Karen L. Vossler (D.C. Bar No. 476522)
        Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, LLC
        701 Pennsylvania Ave, N.W.
        Washington, D.C. 20004
        Tel: 202-434-7300
        Fax: 202-434-7400

        Counsel for Defendant Washington Gas

Date:   May 30, 2006

WDC 386555v.2