ARBITRATION DECISION
IN THE MATTER OF

|  |  |
|---|---|
| ———————————————— ) | |
| ) | |
| TEAMSTERS LOCAL UNION NO. 96, ) | |
| Union ) | Grievance No. 2005-10 |
| ) | (Elimination of Inspector |
| and ) | Classifications) |
| ) | |
| ) | |
| WASHINGTON GAS LIGHT COMPANY, ) | |
| Employer ) | |
| ) | |
| ———————————————— ) | |

APPEARANCES:

      Mark J. Murphy, Esq.
          For the Union

      L. Patrice Latimer, Esq.
          For the Employer

BEFORE:

      Salvatore J. Arrigo
      Arbitrator

## STATEMENT OF THE CASE

This case concerns the Employer's elimination of two Inspector classifications effective February 9, 2005. The Union filed a grievance on the matter and the undersigned was selected to arbitrate the case and with the agreement of the parties a hearing was set to commence on September 29, 2005. While the matter was being processed, the Employer, by correspondence dated September 21, 2005, announced it was striking the undersigned from the parties' panel of arbitrators. The Employer concluded that such action resulted in removing the arbitration from its September 29, 2005, calendar and would necessitate selecting another arbitrator and

1

rescheduling the case.  The Union opposed the Employer's action and by rulings dated

September 23 and September 27, 2005, I held the arbitration hearing scheduled for September

29, 2005, would proceed as scheduled and the matter of removing the undersigned at this stage

of the proceedings would be addressed by the parties at that time.  By correspondence dated

September 28, 2005, to the Union with the copy to the undersigned, the Employer indicated,

among other things, that it would not attend the arbitration hearing scheduled for September 29,

2005.

The arbitration hearing was conducted on September 29, 2005, as scheduled.  The

Employer did not make an appearance at this hearing.  The Union proceeded to litigate the

issues, presenting testimonial and documentary evidence and making legal argument as well.

The undersigned directed that the Employer should receive a copy of the proceedings, which the

Employer did in fact receive.  On November 18, 2005, the Union filed its brief on the case.

Notwithstanding its failure to attend the September 29, 2005, arbitration hearing, the Employer,

by special appearance, filed a brief addressing the issues raised in the matter.  In reaching my

decision herein I have fully considered the entire record including the briefs of the Union and the

Employer.

FACTS

Background.

On February 9, 2005, the Employer informed the Union that it was implementing its

decision to eliminate the Inspector Contractor and the Inspector Pre-Installation classifications,

designating the action as "Excess in Classifications."  The Collective Bargaining Agreement

(CBA) under  Article VI, section 13, is titled "Excess in Classifications."  The Employer had

previously  discussed the matter with the Union and presented the Union with its bargaining

2

proposals on the "effects" of the decision to declare an excess in classifications on the two

Inspector classifications in which classifications there were 27 Inspector Contractors and one

Inspector Pre-Installation. The Union objected to the Employer's action challenging the

Employer's right to eliminate the classifications under the CBA and refused to participate in

bargaining with the Employer on this matter.

On March 1, 2005, the Union filed a grievance on the elimination essentially alleging

violation of the CBA by a unilateral change in a mandatory subject of collective bargaining and

having transferred and diverted the work to individuals outside the collective bargaining unit.

On that same day the Union filed with the National Labor Relations Board (NLRB) an unfair

labor practice charge against the Employer alleging the Employer's conduct which gave rise to

the grievance also violated Section 8(a)(1) and (5) of the National Labor Relations Act (NLRA).

The Employer, on March 8, 2005, requested the Union provide certain documents the

Employer contended were relevant to the Union's grievance. The Union refused to supply the

documents and on March 29, 2005, the Employer filed an unfair labor practice charge with the

NLRB over the refusal. The NLRB on August 18, 2005, filed a Complaint concerning the

Union's refusal to supply the requested documents and scheduled a hearing on the Complaint for

December 1, 2005.

On April 11, 2005, the Union notified the Employer that it intended to arbitrate the

Inspector grievance. By letter dated April 20, 2005, the NLRB notified the parties that it was

deferring proceeding on the Union's unfair labor practice charge until the matter was processed

through the parties' grievance/arbitration contractual provisions.

In a letter to the Union dated June 17, 2005, which indicated a copy was sent to the

undersigned, the Employer confirmed the cancellation and rescheduling of the arbitration hearing

3

in the instant case from June 22 to the "earliest date that all necessary participants are available" and listed various issues the parties discussed which should be addressed at the hearing, including "safety issues." The Employer expressed "the Company's position that the arbitrator does not have jurisdiction or authority under either the labor contract or the Act to address operational safety concerns." The Employer further stated it intended to contact Arbitrator Arrigo to request that he establish a procedure for the resolution of this issue well in advance of the hearing date and requested available dates for a conference call with me.

The parties later agreed to September 29 and 30, 2005, as the dates to arbitrate the grievance and by letter dated August 1, 2005, to the undersigned, the Union set forth its position on presenting evidence of its "safety concerns" at the scheduled arbitration hearing. The Union further requested "that a determination concerning this issue be rendered prior to the hearing date so that counsel for the parties can better anticipate and prepare for the hearing -- including securing any necessary witnesses and/or documents that may be relevant to the issue in question."

On August 10, 2005, a conference call was conducted between the parties and the undersigned primarily due to the parties' divergent views regarding the litigability of the issue of "safety concerns." During the telephone call I told the parties I was generally disposed to the view that safety concerns were arbitrable if focused on employee safety but, absent authorization by contract or the parties' agreement, safety concerns which focused on the safety of the public were not relevant to a determination of matters within the scope of my authority. On this same date the Union submitted and I signed for issuance a subpoena duces tecum which the Union delivered to the Employer, but service was challenged by the Employer's counsel.

On August 19, 2005, the Employer filed a Motion To Continue Arbitration Until Union Complies With the Proposed Settlement Agreement Or Alternatively An NLRB Or Court Order And Motion To Remand To Grievance Procedure.

The Union filed its Opposition Of The Union To Employer's Motion To Continue Arbitration Hearing on August 29, 2005. Both the Employer's Motion and the Union's Opposition addressed the question of whether "safety concerns" or issues were part of the grievance and should be part of the arbitration hearing scheduled for September 29, 2005. By Ruling dated September 1, 2005, I informed the parties that if such matters should be raised at the hearing, Article XVIII section 17(a) of the CBA can be raised and I would rule on the matter at that time.

By letter dated September 14, 2005, to the Union, with a copy to the undersigned, the Employer sought a stipulation of issues to be presented at the scheduled arbitration hearing, including a stipulation that the issue of the elimination of a job classifications , which in the opinion of the Union might result in an unsafe condition, not be a subject of the arbitration. The Union responded to the Employer on September 15, 2005. The Union disagreed with the Employer's suggested stipulation of issues, including the exclusion of the issue of safety, indicating its position that my Ruling of September 1, 2005, adequately covered the permissible scope of the proceedings. The Union suggested it meet with the Employer before the September 29 hearing date regarding framing the issues and to discuss providing the Union with the documents subpoenaed prior to the date of hearing to expedite the hearing.

On September 19, 2005, the Union by FAX to the Employer set forth its suggestion as to how the issues to be presented at the September 29, 2005, hearing should be framed.

On September 21, 2005, the Employer FAXed the Union, with a copy to the undersigned, a letter which stated, in relevant part:

> "This letter is to inform you that, in accordance with Article XVIII, Section 16(a) of the Labor Contract, Washington Gas is exercising its contractual right to strike Salvatore J. Arrigo from the panel of arbitrators. Accordingly, the Company is removing the arbitration hearing currently set for September 29 and 30 from its calendar. I will contact you to reschedule this matter for hearing as soon as a new arbitrator is selected."

The Union, on September 23, 2005, filed a Motion To Proceed With Arbitration Hearing Contesting The Employer's "purported attempt" to strike the Arbitrator from the parties' agreed upon panel and thus cancel the scheduled arbitration, citing various reasons and arguments to support the challenge to the Employer's September 21 action.

By Ruling and Order dated September 23, 2005, I held the hearing scheduled for September 29 would proceed as scheduled at which time further argument could be made regarding the issue of the arbitrator's authority and jurisdiction to hear the case and the parties should be prepared to present all evidence in support of their positions.

On September 23, 2005, the Employer, by FAX and regular mail, acknowledged receipt of the Union's Motion To Proceed and my Ruling and Order contenting both the Union's motion and my ruling were "moot." The Employer based its claim on its belief that it was authorized under the CBA to strike the undersigned and discontinue further scheduled proceedings on the grievance.

On this same day the Union requested and I issued ten (10) subpoenas for various of the Employer's employees directed towards their appearance at the arbitration hearing in this matter scheduled to commence on September 29, 2005.

By ruling dated September 27, 2005, I reaffirmed my September 23 Ruling that because of the parties' divergent views regarding the interpretation and application of Article XVIII

6

section 16(a) of CBA I expected the parties to address the issue of my authority and jurisdiction

to continue to be the arbitrator in this case at the September 29 hearing.  In that  Ruling I

referenced Article XVIII, section 17 (a) of the CBA dealing with the arbitrator's jurisdiction and

authority to apply the provisions on the CBA.

   The record reveals that on September 27 2005, a Special Process Server attempted to

serve eight (8) of the subpoena's the Union requested and I issued on September 23, 2005, on the

employees at the Employer's facility at 6801 Industrial Road, Springfield, Virginia.  However,

the process server related in a statement made under the penalties of perjury that he was unable

to complete service on the designated individuals since the attorney for the Employer informed

him that she would not authorize anyone at Washington Gas Company to accept the subpoenas.

Subsequently counsel for the Employer filed a Motion to Quash six (6) of the subpoenas with the

D.C. Superior Court.

   On September 29, 2005, I conducted an arbitration hearing in this case.  The Employer

chose to absence itself from the hearing.  Notwithstanding the Employer's absence, as stated

previously the Union fully litigated its case, producing evidence, eliciting testimony and making

oral presentation of contentions.  The Employer received a record of the proceedings and by

special appearance filed a brief on the issues and presented its objection to the jurisdiction and

authority of the undersigned to take any action in this case after September 21, 2005.

Relevant Provisions of the CBA.

   The relevant contract provisions, or portions thereof, are as follows:

Article V Functions of Management
1. General. The parties agree that the Company must remain competitive while
pursuing opportunities for growth in this era of increasing competition in the
natural gas industry.  The parties, therefore, agree that the supervision and control
of all operations of the Company and the direction of all working forces,
including, but not limited to, the power and right to hire, promote, transfer,

demote, suspend, discipline, and lay off employees, set reasonable performance and production standards for all job classifications and set job proficiency standards in accordance with a position's job description shall be vested solely in the Company. The Company shall also have the exclusive and unrestricted right to: determine the number and qualifications, by testing, observation of demonstrable skills, and by other objective methods the company may determine, of employees to be employed and to be assigned to specific jobs;...

Article VI, section 13. Excess in Classifications

(a) In the event the Company declares an excess in classification, employees affected by such declaration may exercise bumping rights, provided they are qualified within the meaning of Section 1(a) of this Article. During this bumping process, the Department Head, Labor Relations and the President of the Local Union shall each designate one representative to meet and review such employee's relevant work experience (including experience gained inside and/or outside the Company.) Such meeting shall be considered to be labor/management meetings held at the request of management. The Company and Union representatives shall jointly determine whether or not an employee has sufficient relevant experience to substitute for qualifications specified in the job description. In the event that the parties are unable to agree on the level of such relevant experience, the employee must be qualified within the meaning of Section 1(a) of this Article to be able to bump to such job. Such bumping shall occur without loss of accumulated seniority or time in grade and step in the job from which they have been bumped. Affected employees who bump laterally will remain at their present wage grade, rate and step. Affected employees who bump to a lower grade will be paid at that lower wage grade at the step nearest, but not above, their prior wage grade, rate and step and will retain the hours accumulated at that prior step.

(b) If an affected employee is qualified for any classification and a vacancy does not exist in such classification, such affected employee may bump into such classification, thereby bumping out of such classification an employee who has less seniority within the bargaining unit...

Article XV Prohibition on Foreman Working

No direct supervisor, foreman, or acting foreman shall perform work regularly assigned to employees covered by this Agreement, except for the purpose of instructing employees or except in the event of an emergency. Such supervisor or foreman or acting foreman shall be permitted to work until such emergency ceases. The Company shall notify the Union as soon as practicable when an emergency exists and its general nature. The Company shall also notify the Union when the emergency ceases...

Article XVII Procedure for Adjusting Controversies

16. (a) . . . A panel of nine (9) arbitrators shall be jointly compiled and agreed upon by the parties and shall be updated from time to time by mutual agreement. During the term of this Contract, either party may, for any reason, strike up to two (2) arbitrators from the panel of arbitrators. However, the parties shall make every reasonable effort to promptly replace any arbitrator removed from the panel under this Section.

(b) A representative of each party shall confer within three (3) workdays after the written notice of intent to arbitrate is received by the non-aggrieved party, to identify the impartial arbitrator to be selected by alphabetical order.    The arbitration shall then be scheduled for a date and time as soon thereafter as convenient to the schedules of the parties and the impartial arbitrator.

17. (a) The arbitrator shall have jurisdiction and authority to interpret and apply the provisions of this Labor Contract only to the extent necessary to determine and decide the grievance. The arbitrator shall not have jurisdiction or authority to alter, extend, modify or in any way change the provisions of this Labor Contract or to consider any claim not raised during the grievance procedure or to impose or fashion any remedy inconsistent with or specifically prohibited by this Contract or any remedy not sought by the grievant/aggrieved party or Union during the griev-ance procedure. Further, the arbitrator may apply (not interpret) federal and state laws, and regulations and requirements that may be imposed by regulatory agencies having jurisdiction over the Company.
The parties shall not be precluded from raising at arbitration any claim or seeking any remedy not previously discussed during the grievance procedure. However, in such cases, the arbitrator shall remand the matter to the final step of the grievance procedure for consideration and determination of such claim/remedy in accordance with this Article before the grievance may proceed to arbitration on such claim/remedy...

Article XXVII (Zipper Clause)

It is agreed that in the negotiations leading to the execution of this Contract, each party had full opportunity to propose, present, and discuss all matters concerning relationships between the Company, its employees in the agreed classifications and jobs covered by this Contract, and the Union. Neither party is obligated to bargain collectively on behalf of such employees, with respect to any matter not covered by this Contract, for the life thereof, except as may be specifically permitted by any reopening clause. It is agreed and understood that all side agreements ever reached by and between the parties hereto regarding wages, hours, working conditions or other mandatory subjects of bargaining and all past practices or past shop practices that have evolved over time between the parties are, unless included herein or incorporated by reference herein in Annex ZC, jointly repudiated and are hereby rendered null and void.

## ISSUES PRESENTED

The Employer sets forth the issues to be resolved as follows:

"1)Whether Washington Gas's Exercise of the Contract Right to Strike an Arbitrator Deprived the Previously Appointed Arbitrator of the Jurisdiction and Authority to Issue a Binding Opinion and Award.

2) Whether Washington Gas had the Collectively Bargained Right to Declare "Excess" in the Inspector Job Classifications.

3) Whether Washington Gas had the Right to Manage Performance of Construction Projects Without the Work of Union Inspectors."

The Union also addresses the preliminary issue of the Employer's attempt to remove the undersigned as arbitrator for this case and frames the remaining issues as follows:

"1.   Did Washington Gas violate the collective bargaining agreement when it unilaterally eliminated the Inspector Contractor and Inspector Pre-Installation bargaining unit classifications.  If so, what shall be the remedy?

2.  As part of its elimination of the Inspector Contractor and Inspector Pre-Installation bargaining unit classifications, has the Company improperly diverted and/or transferred bargaining unit work in violation of the collective bargaining agreement? If so, what shall be the remedy?"

## POSITIONS OF THE PARTIES

With regard to the preliminary issue of whether the undersigned has authority to hear and decide this case the Employer takes the position that the language of the CBA unambiguously and without limitation gives it the right to remove this arbitrator at any time by striking the arbitrator from the panel pursuant to its power under Article XVIII, section 16(a) of the CBA.

The Union challenges the Employer's reliance on Article XVIII to remove the arbitrator from an active case based upon its reading of the CBA and the past practice of applying this article to the removal of an arbitrator from the panel as well as arguing that the Employer's

interpretation of Article XVIII, section 16(a) would have the effect of essentially destroying the reasonable application of the grievance/arbitration process.

Turning to the substantive issue in this case of the elimination of the Inspector classifications the Union takes a position that Article VI, section 13, Excess in Classifications is inapplicable to the Employer's action taken herein and contends that this provision is designed to address situations of reducing the number of employees in a classification, not eliminating the classification as was done in this case.  Since the limitation of a classification is not covered by the CBA, the Union argues, the Employer may not at this time eliminate the classification under the terms of the Zipper Clause as the Union does not agree to reopen the CBA to address the elimination.  The Union further takes the position that, in any event, the record fully supports its contention that the Employer's action's regarding the Inspectiors violated Article XV of the CBA in that  Inspectors' work was given to supervisors to perform.

The Employer essentially takes the position that it had the right under the management rights cause (Article V of the CBA) and the Excess in Classification clause to remove the Inspectors from their classifications and reassign them to other duties and, relying on the Zipper Clause, suggests it need not negotiate with the Union on the decision to eliminate the Inspector positions.  The Employer also contends there is no reliable evidence to support the Union's contention that Inspector work was impermissibly transferred to employees outside the bargaining unit, i.e., supervisors.

ADDITONAL FACTS, DISCUSSION AND CONCLUSIONS

The Authority of the Arbitrator.

The preliminary matter to consider is whether after the Employer notified the Union on September 21, 2005, that it was striking the undersigned from the parties' agreed upon panel of arbitrators, the undersigned had authority to proceed as arbitrator in this matter.

To begin, the Union challenged the Employer's right to remove the arbitrator from this case at that particular stage of the proceedings. Thus a dispute regarding the interpretation and application of Article XVII, section 16 arose and I find the undersigned was authorized under the provisions of section 17(a) to decide this issue. And I shall do so.

Clearly the Employer's action of September 21, 2005, removed the arbitrator from the panel of arbitrators for future cases between the parties. The Employer apparently takes the position that it can unilaterally remove an arbitrator from an active case already in the arbitration process at any time. Thus, as the Union points out in its brief, if taken to its logical conclusion the Employer's position would allow either party to remove an arbitrator from an active case even after the matter has been litigated and briefs have been filed. Testimony reveals that when Article XVIII, section 16 was considered back to the 1997 collective bargaining negotiations there was no discussion on when an arbitrator could be stricken from the panel of arbitrators and there had never been an occasion to strike an arbitrator from an active case after the arbitrator had been appointed to hear the case.

The language of Article XVIII, section 16, while stating "either party may, for any reason, strike..." an arbitrator from the panel, does not address the question of "when" may the party strike an arbitrator from the panel. From the authority the Employer is given in the CBA to

12

strike an arbitrator any reason," the Employer apparently concludes it may still strike at any time. Neither the language of the CBA nor the past practice supports such a conclusion.

In the case herein the arbitrator was selected by the parties in the spring of 2005 to preside over the arbitration to resolve the grievance. The parties and the arbitrator agreed to a date for the arbitration hearing. The parties, at the urging of the Employer, sought the arbitrator to resolve an issue the parties were in conflict over concerning safety. At a conference call between the parties and the arbitrator, the undersigned issued an oral ruling regarding the contested safety issue. During the pre-hearing period, the arbitrator, upon request, issued subpoenas regarding the case. The arbitrator then responded by Ruling to a motion filed by the Employer and an opposition filed by the Union, all before the Employer's September 21, 2005, striking the undersigned from the parties' panel of arbitrators and indicating it was removing the undersigned from this case.

Arbitration is not merely a hearing, it is a process. It is obvious from the above that the undersigned was actively involved in the processing of this matter to hearing, which was imminent. To validate the Employer's interpretation that the contractual right to strike an arbitrator from the panel without reason carries with it the implication that such action can be taken at any time regardless of the stage of the arbitration proceeding would lead to destroying the faith and belief of employees and the parties that the arbitration process is a means of timely resolving their disputes. Rather the Employer's interpretation would thwart the salutary objectives of the arbitration process and prolonging the dispute and create additional disputes.

In my view the Employer's interpretation of Article XVIII ,section 16 leads to an absurd result and should be avoided. I find that in the circumstances of this case the Employer is not at liberty to unilaterally dismiss the arbitrator from this case and the arbitrator is authorized and has

the jurisdiction under the CBA to continue to preside as the duly designated arbitrator in this arbitration proceeding. See, Elkouri and Elkouri, How Arbitration Works, 6th ed. (BNA Books, 2003), 470-472.

The Excess in Classification Determination.

Essentially the Employer relies upon the management rights provisions of the CBA and the language of the CBA relative to its authority to declare an excess in the Inspector classifications and then make provision for retention of Inspectors to the extent the contractual procedure for "bumping" did not adequately provide for the removed Inspectors. Thus the Employer points to its rights under the CBA to direct the workforce and determine the number and qualifications of employees assigned to a specific task.

The Union would limit the application of the Excess in Classification article of the CBA to a reduction in number of employees, not to an elimination of the classification, arguing the section was never intended to apply to an elimination , noting that if the Employer meant to have this section apply to an elimination it could have so stated as it did in Article V, section 14 which addresses rights involved when a "business unit" is discontinued. The Union also relies on the lack of discussion during negotiations on the use of section 13 for the elimination of a classification and the past practice of applying section 13 to support the reduction of only a "handful" of employees, not a complete classification of employees.

The Employer contends that the Zipper Clause specifically indicates that past practices are repudiated and rendered null and void unless specifically included in Annex ZC of the CBA.

I find the Employer could rely upon its management rights authority to declare an excess in the classification and its authority under Article VI, section 13, Excess in Classification to eliminate the Inspector classifications. True section 13 does not speak in terms of elimination,

14

but I do not read any words in section 13 which would limit the use of this section to reduce a classification but not permit the Employer to eliminate a classification. It would appear section 13 would clearly be applicable if one-half of the classification was declared excess. Indeed reduction in the classification might include a majority of the classification. Would the Employer be privileged to reduce the classification to all but one employee, but be precluded from completely eliminating the classification? I do not believe the language of Article VI, section 13 poses any such restraint on management's decision to eliminate the Inspector classifications. Nor do I find the fact that such an application of the Excess in Classification section was not mentioned during contract negotiations to constitute support for the position that this section of the CBA may not be used to eliminate Inspector classifications. I further note that there is no reference to the application of Article VI, section 13 in Annex ZC of the CBA.

<u>The Alleged Transfer of Inspector Work to Supervisory Employees.</u>

According to the Job Description of the Inspector Contractor his role is to "Perform pre-release inspection and inspect work of Company contractors engaged in the construction, replacement and maintenance of natural gas mains, services, extended meters supply lines and appurtenances, including inspection of paving and final restoration." The Job Description lists approximately two and one-half pages of specific tasks under such captions as Pre-Release and Release, Pre-installation, Installation, Post Construction, Paving/Restoration, Other Duties, Authorization, and Documentation. One ex-Inspector Contractor testified to specific functions on the job, stating, "... we are basically the eyes and ears of the Company. We are the first line of inspection for anything that a contractor does during the day." The Inspector classifications have been in effect at least since 1973.

On December 3, 2004, the Employer responded to the Union's request for certain

information and stated their were "six layers of contract oversight" enumerating as follows:

Inspector Contractor - Inspects work of Company contractors engaged in the construction, replacement and maintenance of gas mains and services and paving and final restoration.

Compliance Auditor - Responsible for enforcing Federal, State, local and company requirements as it applies to operations of Company facilities and the installation of the piping infrastructure.

Construction Section Leader - Responsible for overseeing the daily work activities of a construction section including pipeline and service construction. Oversees contractor compliance with regulations, policies and procedures and performance.

Contractor Supervision - Directs and inspects onsite work, enforces safety procedures, coordinates field paperwork from the field to the office and resolves all operating issues in the field.

PSC Inspector - Inspects for compliance with Title 49 CFP Parts 192 and 199 and local jurisdictional requirements (COMAR Title 20. DCMR Title 16, SCC Pipeline Safety Section).

State/Local Public Works Inspector - Inspects excavations, backfilling, compaction, site restoration and traffic management activities within the public right of way.

The Employer went on to state:

"The contractor oversight currently performed by the Inspector Contractor will be eliminated. The remaining layers of oversight will continue as described above."

With regard to the above job titles, testimony at the arbitration hearing of an ex-Inspector

Contractor indicated the Compliance Auditor was only seen once or twice every four months on

average; a Construction Section Leader, a supervisory position, would be seen on his work site

perhaps twice every six months; the Contractor Supervisor was an employee of the contractor;

and the PSC Inspector was a public service inspector, not an employee of Washington Gas nor

were State and Local Public Work Inspectors employees of Washington Gas.

Testimony of the ex-Inspector Contractor revealed that in conversations with two

Construction Supervisors, members of the Employer's management staff who were previously

Inspector Contractors, the witness was told by both that they were currently performing the same

duties they performed as Inspector Contractors, only twice as much. The conversations above took place approximately 2 ½ to 3 months prior to the hearing on September 29, 2005.

Testimony by another ex-Inspector Contractor supports the testimony above and reveals a Section Leader, not an ex-Inspector Contractor, told him that Section Leaders, supervisors, were now "doing the same thing" the Inspectors had done and their work had just increased.

The Union President, William Gibson, also testified to a recent conversation he had with another ex-Inspector Contractor who had been promoted to Section Leader. Mr. Gibson testified he was told by the Section Leader that he was doing the same type of work he performed as an Inspector Contractor.

In support of the above testimony, the Union supplied copies of written communications which gave some indication that after the elimination of the Inspector classifications, the functions of Inspectors were being performed by supervisory personnel. Thus a letter by the Employer dated March 9, 2005, to a state Senator stated in relevant part:

"Recently, I received a copy of a letter submitted to you by a representative of one of our labor unions. The letter suggested that the elimination of the union job classifications of Inspector Contractor and Pre-Installation Inspector would place the general public in jeopardy. I assure you that Washington Gas's actions have in no way compromised the integrity of our natural gas distribution system.

"As Washington Gas continues to improve operations, we have implemented a strategy to enhance construction performance. This phase of our strategy actually will increase the level of construction supervisory field staff from 10 to 20. This group of supervisors will be responsible and held accountable for the entire

17

construction process. This supervisory oversight and empowerment greatly exceeds the limited responsibilities and duties of the current bargaining unit personnel."

Another letter by the Employer, this one to a federal Senator dated April 12, 2005, stated in relevant part:

"...regarding the elimination of two union job classifications. The two eliminated classifications are Inspector Contractor and Pre-Installation Inspector. The change was effective April 4, 2005. Under this restructuring, construction supervisory staff has doubled, the work performed by our contractors continues to be closely monitored and periodic inspection of their work continue to be conducted."

The Employer challenges as hearsay the above testimony concerning the transfer of work previously performed by Inspectors to supervisory employees. However, the witnesses related statements made to them by supervisory employees, agents of the Employer. Accordingly, the statements attributed to the supervisory employees constitute admissions by a party opponent and are not hearsay. See Fed. R. Evid. 801(d)(2). In any event I find the testimony to be reliable and probative.

I further note that the Union had served on the Employer's Custodian of Records a subpoena for various of the Employer's records relating to the inspection of work performed by contractors for Washington Gas for the period previous to and after February 9, 2005, to August 10, 2005, returnable at the February 29, 2005, arbitrary proceedings. The Union urges that the documents would have supported its contention that an improper transfer of work occurred when the Inspector classifications were eliminated. However this subpoena was not complied with nor has there been a Motion to Quash. The Union also attempted service of subpoenas on eight (8)

representatives of the Employer at the Employer's office for their attendance at the September 29, 2005, arbitration proceedings. The Employer filed a Motion to Quash with the Superior Court of the District of Columbia as to Six (6) of the employees on the grounds that the subpoenas were improper, alleging the undersigned who issued the subpoenas was not an arbitrator in this proceeding and that five (5) of the employees were not properly served. The record also reveals that on September 27, 2005, the Employer at its place of business refused to accept service of a subpoena for the attendance of two other supervisory employees.

I find the record herein clearly establishes that the Employer violated Article XV Prohibition on Forman Working. Article XV specifically forbids the performance by foremen of work regularly assigned to employees covered by the CBA. The evidence establishes that the work performed by Inspector classifications, after the Inspector classifications were eliminated, continue to be performed. Only now, the work was performed by supervisors. Testimonial evidence establishes this conclusion and the implication from the Employer's letters of March 9 and April 12 2005, supports this conclusion. Thus the Employer acknowledged the doubling of the construction supervisory field staff from 10 to 20 and, as the testimony revealed, supervisors were performing the work previously performed by inspectors.

The Employer voluntarily did not make an appearance at the September 29, 2005, arbitration hearings. Nor did the Employer provide witnesses or documents to challenge the evidence supplied by the Union in support of its case. Accordingly I find the evidence of record to be reliable and probative and inescapably leads to the conclusion that on February 9, 2005, with the elimination of the Inspectors, foreman thereafter regularly performed the work that had been regularly assigned to Inspectors, employees covered by the Agreement. By such conduct the Employer violated Article XV of the CBA.

The action of the Employer herein unilaterally transferred duties from bargaining unit employees to supervisors. The NLRB has found such conduct to be violative of Section 8(a)(5) and (1) of the NLRA, See Gansat, Cincinnati Inquirer Div. 279 NLRB 1023 (1986), and I would so find.

Remedy.

The Union requests as remedial action that the Employer be directed to reverse its decision to eliminate the two bargaining unit classifications and they be immediately restored to the bargaining unit and employees removed from the Inspector positions should be offered an opportunity to accept reinstatement to their previous Inspector positions. In addition the Union requests the Employer be directed to immediately cease diverting traditional Inspector work to supervisory positions and return that work to employees in the restored Inspector classifications. The Union further requests it be provided with monetary damages to compensate for injuries suffered to the entire bargaining unit as a group.

In its initial grievance of March 1, 2005, the Union requested essentially a return to the conditions of employment which existed prior to the Employer's February 9, 2005, elimination of the Inspector classifications and "to be made whole in every way." The CBA in Article XVIII, section 17(a) states that while a party to the CBA can raise any claim or remedy in the arbitration not discussed during the grievance procedure, the arbitrator must remand the matter to the final step of the grievance procedure for consideration and determination before the matter can proceed to arbitration on the claim or remedy.

The Union argues that it sufficiently raised the remedy of monetary damages when it indicated in the grievance that it was seeking "to be made whole in every way." The Union did

not raise the matter of the specifics of its request for monetary damages at the arbitration hearing and, understandably, the Employer did not address this request in its brief.

I do not find the Employer was adequately put on notice that the request for monetary damages had been raised within the meaning of Article XVIII, section 17(a) of the CBA. The CBA requires that in these circumstances before I decide this issue the matter should be sent back to the parties for discussion. The Union suggests that a remand of this issue for discussion would be futile since there is no indication that the Employer would do anything other than flatly reject a request for monetary damages. While the Union's assessment of the situation is probably accurate, the contractual provision is clear and I am required to follow the terms of the CBA.

Notwithstanding the procedural issues presented, and assuming the Employer would contest the Union's request for monetary damages, I conclude the Union's request for monetary damages must be rejected. While some precedent exists for such a remedy, it is nevertheless an unusual remedy in arbitration cases such as herein. My research and review of the cases cited by the Union to support its request generally reveals this remedy has at times been granted in circumstances which presented a peculiar or compelling situation such as the permanent loss of jobs for union members, union dues were lost, repeat violations of the collective bargaining agreement occurred, employees suffered economic loss or loss of seniority, or the contract provided for granting damages as part of the remedy. In my view in the circumstances of this case the imposition of money damages is not appropriate and will not be granted.

Accordingly, in all the circumstances herein I issue the following:

AWARD

1.    The Employer did not violate Article VI, section 13 of the CBA by its elimination of Inspector classifications.

2.    The Employer violated Article XV of the CBA by transferring the work of Inspectors to supervisory personnel on February 9, 2005, and at all times thereafter.

3.    The Employer shall reverse its decision eliminating Inspector classifications and offer to all employees removed from the Inspector classifications the opportunity to accept reinstatement to their previous Inspector positions without loss of seniority or any other employee benefit and be made whole.

4.    The Employer shall cease diverting traditional Inspector work to supervisory positions and return the traditional Inspector work to Inspectors.

5.    The Union's request for monetary damages is denied.

_12/31/05_
Dated

Salvatore J. Arrigo
Arbitrator