**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**TEAMSTERS LOCAL UNION**
**NUMBER 96, affiliated with the**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS,**
**2120 Bladensburg Rd., N.E., # 106**
**Washington, D.C. 20018**

        Plaintiff,

v.                                                               Case No. 1:06-cv-928 (ESH)

**WASHINGTON GAS LIGHT COMPANY,**
**6601 Industrial Rd.**
**Springfield, VA 22151**

        Defendant.

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Washington Gas Light Company ("Washington Gas" or the "Company"), by and through undersigned counsel, hereby moves the Court for the entry of an Order dismissing Plaintiff Teamsters Local Union Number 96's ("Local 96") Application to Confirm And Enforce Arbitration Award for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted. In support of this Motion, Defendant submits herewith its Memorandum of Points and Authorities in Support of Motion to Dismiss. A Proposed Order is also provided.

Based on the foregoing, Washington Gas respectfully requests that its Motion to Dismiss be granted.

-2-

## REQUEST FOR A HEARING

Pursuant to Local Rule 7(f) Washington Gas hereby requests a hearing on its Motion to Dismiss.

Respectfully submitted,

_____/s/ Karen L. Vossler_____
Robert L. Clayton (D.C. Bar No. 961474)
Karen L. Vossler (D.C. Bar No. 476522)
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, LLC
701 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Tel: 202-434-7300
Fax: 202-434-7400

Counsel for Defendant Washington Gas

Date:   May 23, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**TEAMSTERS LOCAL UNION**
**NUMBER 96, affiliated with the**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS,**
**2120 Bladensburg Rd., N.E., # 106**
**Washington, D.C. 20018**

                        Plaintiff,

v.                                            **Case No. 1:06-cv-928 (ESH)**

**WASHINGTON GAS LIGHT COMPANY,**
**6601 Industrial Rd.**
**Springfield, VA 22151**

                        Defendant.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Washington Gas Light Company ("Washington Gas" or the "Company"), hereby submits its Memorandum of Points and Authorities in Support of its Motion to Dismiss.[1]

**I.    INTRODUCTION AND SUMMARY**

At the heart of this matter is the interpretation of a provision in the collective bargaining agreement between the parties that allows either party, *at any time and for any reason*, to strike an arbitrator from the panel of arbitrators. This action concerns an attempt by Plaintiff Teamsters Local Union Number 96 ("Local 96") to confirm and

---

[1] Washington Gas seeks dismissal of Plaintiff's Application based on the allegations therein and the documents attached thereto, which are not conceded in any respect except for purposes of this Motion. To the extent the Court is required to consider matters outside of the pleadings, then this Motion should be treated as one for summary judgment, pursuant to Rule 12(b).

enforce an alleged arbitration award rendered by an individual who, prior to holding an unofficial, *ex parte* hearing and rendering a decision, had been struck from the panel of the arbitrators by Washington Gas pursuant to this provision.

As set forth in greater detail below, Plaintiff's Application to Confirm and Enforce Arbitration Award ("Application") must be dismissed because, based on the facts alleged in the complaint, the so-called "Opinion and Award" that Plaintiff now seeks to confirm was void *ab initio*. Because Washington Gas properly exercised its right pursuant to the parties' collective bargaining agreement to strike Salvatore J. Arrigo as an arbitrator, Mr. Arrigo's authority to hear the case was removed before the matter went to an arbitration hearing. Plaintiff's Application, therefore must be dismissed for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted.

## II.    FACTUAL ALLEGATIONS

1.    Local 96 is a "labor organization" within the meaning of the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 141, *et seq. Application*, ¶ 3.

2.    Washington Gas is an "employer" within the meaning of the LMRA, 29 U.S.C. § 141, *et seq. Id.*, ¶ 4. Washington Gas, at all relevant times, employed workers represented by Local 96 as their exclusive bargaining representative. *Id.*

3.    Washington Gas and Local 96 are parties to a June 2, 2004 Labor Contract (the "CBA"), which governs the terms and conditions of employment. *Id.*, ¶ 6 and Ex. B. Among other things, Article XVIII of the CBA establishes a procedure for adjusting controversies between the parties, including a procedure for binding arbitration. *Id.*, Ex. B, Article XVIII.

4. Article XVIII provides that "[a] panel of nine (9) arbitrators shall be jointly compiled and agreed upon by the parties. . . . ***During the term of this Contract***, either party may, ***for any reason***, strike up to two (2) arbitrators from the panel of arbitrators." *Id.*, Ex. B, Article XVIII., 16(a) (emphasis added).

5. Article XVIII further requires the parties to make "every reasonable effort to promptly replace any arbitrator removed from the panel under this section." *Id.*

6. In a separate provision, Article XVIII(17)(a), the CBA defines the scope of jurisdiction and authority for a properly selected arbitrator. *Id.*, Ex. B, Article XVIII, 17(a). Specifically, Article XVIII, § 17(a) provides that "[t]he arbitrator shall not have jurisdiction or authority to alter, extend, modify or in any way change the provisions of this Labor Contract. . . ." *Id.*

7. On or about April 11, 2005, Plaintiff notified Washington Gas pursuant to Article XVIII of its intent to arbitrate a grievance on behalf of several of its members. Application, ¶ 10.

8. Salvatore Arrigo was chosen from the panel as the arbitrator, because he was next in line alphabetically. *Id.,* ¶ 10. A hearing in the matter was scheduled for September 29 and 30, 2005. *Id.*

9. On September 21, 2005, Washington Gas exercised its contractual right to remove Mr. Arrigo from the panel of arbitrators in the grievance. *Id.,* ¶ 15, *see also* September 21, 2005 letter from L. Patrice Latimer to Mark J. Murphy ("September 21 letter"), attached hereto at Tab 1. As a consequence, Washington Gas noted in the September 21 letter, the arbitration could not proceed as scheduled on September 29, 2005, as originally scheduled. Application, ¶ 15; Tab 1.

10. Notwithstanding the fact that Mr. Arrigo had been duly removed as an arbitrator, on September 23, 2005, Local 96 filed a Motion to Proceed with Arbitration Hearing (the "Motion to Proceed") with Mr. Arrigo.  Application, ¶ 16.  In the Motion to Proceed, Local 96 argued, among other things, that Washington Gas' action in striking Mr. Arrigo as arbitrator was "improper."  Application, Ex. D.

11. Two hours later, Mr. Arrigo, himself, granted the Motion to Proceed and ruled that the hearing should proceed as scheduled on September 29, 2005.  Application, Exs. D, E at 5.

12. By letter dated September 23, 2005, Washington Gas reminded Local 96 and Mr. Arrigo of the CBA provision allowing for unilateral removal of arbitrators by either party, at any time and for any reason.  Application, ¶ 17 and Ex. E at Attachment 4.

13. Washington Gas reiterated that it had chosen to exercise its contractual right, and made clear that it no longer recognized Mr. Arrigo as an arbitrator in the matter capable of making any ruling, including granting the motion to retain himself as an arbitrator, or issuing any binding and enforceable order.  Application, ¶ 17 at Ex. E at Attachment 4.

14. Also in accordance with the CBA, Washington Gas urged Local 96 to participate in selecting another arbitrator to expeditiously hear the arbitration. Application, Ex. E at Attachment 4.

15. In keeping with this request, on September 28, 2005, Washington Gas faxed a letter to Local 96 (the "September 28 letter") in which it identified Michael Murphy as the arbitrator for the Local 96 arbitration, because he was the next arbitrator, alphabetically, on the panel of arbitrators.  Application, Ex. E at Attachment 5.

Washington Gas further stated that Mr. Murphy's selection was necessitated by the Company's exercise of its right to strike Mr. Arrigo. *Id.* Washington Gas notified Local 96 that it would seek available dates from the newly-named arbitrator for a 2-day arbitration of the underlying grievance. *Id.*

16. Notwithstanding his removal and replacement by Mr. Murphy as arbitrator, Mr. Arrigo held an *ex parte* hearing on September 29, 2005, at which only Local 96 appeared. Application, ¶¶ 17-18.

17. On October 3, 2005, ***after the purported hearing,*** Local 96 wrote a letter to Mr. Murphy, in which Local 96 insisted that the arbitration of the grievance "ha[d] been assigned to Arbitrator Salvatore Arrigo," and suggested that, since the matter was "set for post-hearing briefs . . . the Company's attempt to appoint you as the Arbitrator in this case [was] inappropriate." Application, Ex. E at Attachment 6.

18. Following the hearing, Washington Gas submitted a brief by "Special Appearance." In its brief, Washington Gas stated, in relevant part:

> Washington Gas continues to assert that the removal of the arbitrator was well within the Company's right to do and that the proceedings thereafter should not have occurred. Accordingly, Washington Gas makes this Special Appearance to preserve the Company's objections to the jurisdiction and authority of the former arbitrator to issue subpoenas, rulings, orders and decisions and to conduct a hearing at any time after September 21, 2005.

Application, Ex. E at 2, 4-8.

19. Without waiving its contention that the arbitration was suspended as of the moment that it exercised its right to remove the arbitrator from the panel, Washington Gas went on to state its substantive arguments in defense of the grievance filed by Local 96. Application, Ex. E.

20. On December 31, 2005, Mr. Arrigo issued a document titled "Opinion and Award," in which he purported to find for Local 96 on the underlying grievance.

21. Since that time, Washington Gas has acted consistently with its position that Mr. Arrigo was stricken as the arbitrator on September 21, 2005, and that therefore, any decision he purportedly rendered in the underlying arbitration between the parties was necessarily invalid *ab initio*. Application, ¶ 24.

22. On or about April 16, 2006, Local 96 filed the instant Application with the District of Columbia Superior Court to confirm and enforce Mr. Arrigo's findings. *See* Application.

23. Washington Gas removed the matter to this Court on May 16, 2006.

## III. ARGUMENT

### A. Relevant Legal Standards Governing Motion

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *See Rumber v. District of Columbia,* 2005 U.S. Dist. LEXIS 33360 *5 (D. D.C. Dec. 12, 2005) (citing Lujan *v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)), attached hereto at Tab 2. If "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the court may dismiss a complaint for lack of subject-matter jurisdiction. *Id.* (*quoting Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 354 U.S. App. D.C. 257, 315 F.3d 338, 343 (D.C. Cir. 2003)).

"Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for

failure to state a claim." *Id.* (*citing Macharia v. United States,* 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D. D.C. 2001)). Moreover, on a Rule 12(b)(6) motion, the court is not limited to the allegations contained in the complaint. *See Hohri v. United States,* 251 U.S. App. D.C. 145, (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, the court may consider materials outside the pleadings to determine whether it has jurisdiction over the claim. *Herbert v. Nat'l Acad. of Scis.*, 297 U.S. App. D.C. 406, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim where, construing the complaint in the light most favorable to the plaintiff and taking all of its allegations as true, it is apparent that no relief could be granted on those facts. *See MacIntosh v. Bldg Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 225-226 (D. D.C. 2005) (citations omitted). Thus, dismissal is warranted where, as here, the facts alleged by the plaintiff, if assumed to be true, would not entitle the plaintiff to any legal relief.

As explained in detail below, under either standard, Washington Gas prevails as a matter of law. As such, its Motion to Dismiss should be granted.

**B.    There Is No Order To Enforce Because Washington Gas Exercised Its Contractual Right To Remove The Arbitrator**

Washington Gas exercised its authority, based on the plain, unambiguous language of the CBA, to strike Mr. Arrigo as an arbitrator, and as such, Local 96's Application is not ripe for adjudication and/or can state no claim upon which relief can be granted. Quite simply, the "order" that Local 96 now seeks to confirm does not exist. As such, the Application must be dismissed.

      1.      Washington Gas Was Within Its Contractual Rights To Strike Mr. Arrigo From The Panel Of Arbitrators

The LMRA specifically grants parties the right to set the terms of arbitration and to freely decide the arbiter of their disputes. 29 U.S.C. § 171. Moreover, § 16-4301 of the D.C. Code and the Federal Arbitration Act (the "FAA") make plain that, to the extent an agreement contains a provision to settle disputes by arbitration, that provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." D.C. Code § 16-4301; 9 U.S.C. § 2 (2003). The state and federal arbitration statutes state further that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." D.C. Code § 16-4301; 9 U.S.C. § 5 (2003). It follows, then, that if the agreement makes provision for the striking of an arbitrator, that method should be followed as well.

As described above, the CBA clearly states that "either party may, ***for any reason***, strike up to two (2) arbitrators from the panel of arbitrators." Application, Ex. B, Article XVIII, § 16(a) (emphasis added). By its plain language, Article XVIII, § 16(a) does not require any particular procedural posture at the time that a party chooses to exercise its right to strike an arbitrator. Rather, the CBA makes clear that a party's decision to strike an arbitrator is appropriate at any time "***[d]uring the term of this Contract***." *Id.* (emphasis added). The only limit placed on the right to strike is that it may be only be exercised by each party *twice* during the CBA's term.

It is axiomatic that "the plain and unambiguous language of an agreement should control its interpretation without reference to sources outside the agreement," *Local Union 1202, Amalgamated Transit Union, AFL-CIO v. Amalgamated Transit Union*

*AFL-CIO*, 1981 U.S. Dist. LEXIS 14228 *18 (D. D.C. 1981) (citing *Appalachian Power Co. v. FPC*, 529 F.2d 342, 348 (D.C. Cir.) *cert. denied*, 429 U.S. 816, (1976)), attached hereto at Tab 3; *see also* RAY J. SCHOONHOVEN, ED., FAIRWEATHER'S PRACTICE AND PROCEDURE IN LABOR ARBITRATION, 4th ed., § 9.11.A. at 243 (1999) (and cases cited therein); *Ralphs Grocery Co.,* 109 LA 33, 35-36 (Kaufman, 1997); *National Linen Serv.*, 95 LA 829, 834 (Abrams, 1990) (provisions in written agreement were binding even though union contended that written contract included terms on which the parties had not agreed); *Michigan Dep't of Soc. Servs.*, 82 LA 114, 116 ( Fieger, 1983). Nor may an arbitrator "ignore the plain and unambiguous language of a collective bargaining agreement." *Safeway Stores, Inc. v. United Food and Commercial Workers Union, Local 400*, 621 F.Supp. 1233, 1238 (D. D.C. 1985); *see also Excel Corp. v. Food & Commercial Workers Local 431*, 102 F.3d 1464, 1468 (8th Cir. 1996).

Nevertheless, Mr. Arrigo and Local 96 did just that — they ignored the plain language of Article XVIII, § 16(a). In its September 21 letter, Washington Gas exercised its contractual right to remove Mr. Arrigo from the panel of arbitrators. Application, ¶ 15, *see also* September 21 letter, Tab 1. Following its notification to Local 96 and Mr. Arrigo of its action, Washington Gas further took immediate steps in accordance with its obligation under the CBA to timely replace Mr. Arrigo with the next arbitrator on the panel, Michael Murphy, and to notify Local 96 that the parties needed to work together to identify additional panel members. Application, Ex. E at Attachment 5.

Notwithstanding these actions, Local 96 continued to insist that Mr. Arrigo remained the arbitrator, refused to cooperate with Washington Gas in naming a successor, and proceeded with a sham, *ex parte* hearing. Following his removal, Mr. Arrigo

continued to preside over the dispute by issuing subpoenas, rendering so-called rulings and orders and conducting a hearing. *See* Application. Significantly, Mr. Arrigo's consideration of the relevant provision of the CBA was limited to a conclusory declaration that "the hearing scheduled to commence on September 29, 2005, should proceed as scheduled." *Id.*, Ex. D. Mr. Arrigo did not address his own removal at all, instead choosing to ignore the plain language of the contract.

Local 96's conduct and that of Mr. Arrigo in this matter is entirely improper under the terms of the valid CBA between Washington Gas and Local 96. Significantly, to the extent that Local 96 asserts that the timing of Washington Gas' decision was somehow "inappropriate" or otherwise breached the CBA, the appropriate remedy would have been for Local 96 to file a separate grievance based upon that action or to apply to a federal court for an interpretation of the relevant term, not to continue on with a sham proceeding and later attempt to enforce an order that was void when it was rendered. Because, as of Washington Gas' September 21 letter, Mr. Arrigo was no longer the arbitrator of this case, he had no power to preside over a hearing between these parties or to issue subpoenas, rulings, orders or directives of any kind.

> 2. The Application Should Be Dismissed Because There Is No Existing Order To Enforce And, As Such, The Application Is Unripe

While the LMRA, the state and federal arbitration statutes and the CBA allow for the issuance of subpoenas and other procedural actions necessary to the administrative of an arbitration hearing, they reserve those rights for the properly named arbitrators of those disputes. As of Washington Gas' September 21 letter, Mr. Arrigo was ***no longer*** an arbitrator, and as such, he no longer had any authority in the continued arbitration of

-10-

Local 96's grievance. His so-called order, therefore, is nothing more than a null and void, and therefore unenforceable, opinion.[2]

Pursuant to Article III of the Constitution, the jurisdiction of federal courts is limited to actual "cases or controversies." *See Rumber*, 2005 U.S. Dist. LEXIS 33360, **7-9. The ripeness doctrine "asks whether the case has been brought at a point so early that it is not yet clear whether a real dispute to be resolved exists between the parties." *Id.* at *7. A case that is unripe should be dismissed for lack of subject matter jurisdiction. *Id.* at **7-12. In analyzing whether a case ripe, a court first considers whether the claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Atl. States Legal Found. v. Envtl. Prot. Agency*, 325 F.3d 281, 284 (D.C. Cir. 2003). If so, the claim is considered not ripe for adjudication. *Id.* Next, the court must consider whether withholding consideration of the matter would cause hardship to the plaintiff. *Id.* With respect to the hardship inquiry, courts consider whether the party can show that it will suffer injury in the interim. *Id.*

Here, because no valid, enforceable arbitration award has yet been issued, Local 96's action to confirm and enforce an award is not ripe for adjudication. Indeed, should the underlying grievance proceed to arbitration under the guidance of a properly appointed arbitrator, and with the full participation of both parties, a different ruling might issue. A ruling now, therefore, would be premature. Moreover, Local 96 would suffer no injury by requiring it to arbitrate its grievance pursuant to the terms of the CBA, and before a properly named arbitrator with authority to hear its case.

---

[2]   Washington Gas submits that Local 96's action in trying to enforce Mr. Arrigo's invalid decision is most closely analogous to an attempt by a party to enforce a contract that is void, and should meet with a similar fate: dismissal.

Because there is no valid arbitration order to confirm or enforce and no harm will result from requiring Local 96 to adhere to the terms of its freely bargained-for CBA, therefore, Local 96's Application should be dismissed for lack of subject matter jurisdiction and/or for failure to state a claim.

## IV.     CONCLUSION

For the foregoing reasons, Washington Gas respectfully requests that its Motion to Dismiss be granted.

Respectfully submitted,

_____/s/ Karen L. Vossler_____
Robert L. Clayton (D.C. Bar No. 961474)
Karen L. Vossler (D.C. Bar No. 476522)
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, LLC
701 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Tel: 202-434-7300
Fax: 202-434-7400

Counsel for Defendant Washington Gas

Date:   May 23, 2006

WDC 386328v.2