IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**TEAMSTERS LOCAL UNION**
**NUMBER 96, affiliated with the**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS,**
**2120 Bladensburg Rd., N.E., # 106**
**Washington, D.C. 20018**

          Plaintiff,

v.                                          Case No. 1:06-cv-928 (ESH)

**WASHINGTON GAS LIGHT COMPANY,**
**6601 Industrial Rd.**
**Springfield, VA 22151**

          Defendant.

## WASHINGTON GAS LIGHT COMPANY'S RESPONSE TO ORDER TO SHOW CAUSE

Defendant Washington Gas Light Company ("Washington Gas" or the "Company"), by and through undersigned counsel, hereby gives answer to this Court's July 21, 2006 Order to Show Cause why it should not be held in contempt for failing to comply with the Court's June 29, 2006 Order, and respectfully requests that this Court find that cause has been established to find that Washington Gas should *not* be held in contempt. As reasons for its request, the Company states as follows.

### FACTUAL AND PROCEDURAL BACKGROUND

This Court entered an Order on June 29, 2006, granting Plaintiff Teamsters Local Union No. 96's ("Plaintiff" or "Local No. 96") Motion for Summary Judgment and confirming and enforcing the award of Salvatore Arrigo, per Plaintiff's Application to Confirm and Enforce Arbitration Award.

Upon the Court's issuance of the June 29 Order, Washington Gas immediately began a careful analysis of the harm and that might result to Washington Gas from reinstating the employees in immediate compliance with the June 29 Order and whether the business needs supported the reinstatement of that work.  *See* Affidavit of Stephen Savage ("Savage Aff."), ¶ 3, attached hereto as Tab 1.  In connection with this review, the Company considered its options for appealing this Court's Order to the District of Columbia Circuit Court of Appeals and the possibility of filing a Motion to Stay the application of the June 29 Order pending that appeal.  *Id.*

This review necessitated the participation of various decision makers from throughout the organization, including legal counsel, human resources and the relevant business operations stakeholders.  *Id.*, ¶ 4.  In addition to legal ramifications, the decision required a detailed analysis of the organizational structure and the potential harm thereto of ***not*** seeking a stay of the June 29 Order.  *Id.*

The issues involved in implementing the June 29 Order are complex and, as a result, immediate implementation was not possible.  This is because, in order to implement the June 29 Order, the Company would have to reverse and adjust changes to the internal structure of the relevant business unit — including those changes impacting the employees ordered to be reinstated by the June 29 Order — that were implemented by the Company over a period of ***two years*** as part of an effort to streamline work processes and drive down costs.  *See* Affidavit of Tracy L. Townsend in Support of Motion to Stay ("Townsend Aff."), ¶¶ 3-5, attached hereto as Tab 2.

While the Company's review process was on-going, on or about July 17 and July 19, 2006, Stephen Savage, the Company's Manager of Labor Relations and Human

Resources Compliance, received approximately two voicemail messages from William B. Gibson, President and Principal Officer of Teamsters Local Union No. 96 ("Local 96"). Savage Aff., ¶ 6. In these messages, Mr. Gibson did nothing more than ask whether Mr. Savage had received a letter from him. *Id.* Because Mr. Savage was involved in labor contract negotiations in Frederick, Maryland, he did not immediately return Mr. Gibson's phone message. *Id.* Upon returning to his office on or about July 18, Mr. Savage read, for the first time, Mr. Gibson's letter and asked his staff to deliver a copy thereof to other stakeholders in the Human Resources department and the Office of General Counsel. *Id.*, ¶ 7.

Between July 19 and July 20, 2006, Mr. Savage returned Mr. Gibson's telephone calls and acknowledged receipt of his letter. *Id.*, ¶ 8. Because the letter was relevant to the ongoing review process described above, Mr. Savage informed Mr. Gibson truthfully that he had forwarded the letter to the Office of the General Counsel for further consideration. *Id.* At no time before, during or after that telephone conversation did Mr. Gibson initiate or request a substantive conversation with Mr. Savage concerning the Company's implementation of the June 29 Order. *Id.*, ¶ 9. Before the Company had an opportunity to respond substantively to Mr. Gibson's letter, *Id.*, 8, Local 96 filed a Motion for Show Cause Order.

## ARGUMENT

Because of the number of stakeholders involved, the extensive analysis required and the complexity of the issues involved, and despite its best efforts, Washington Gas has been unable to immediately comply with the Order. Under well-established law, inability to comply with an order is a defense to a claim of civil contempt. See WMATA

v. Amalgamated Transit Union, Local 689, 531 F.2d 617, 621 (D.C. Cir. 1976) ("Either substantial compliance or inability to comply is as much a defense in coercive contempt proceedings arising out of a labor dispute as in any other civil contempt proceeding.") (citation omitted). In considering whether an entity is liable for contempt in the labor context, the District of Columbia Circuit Court of Appeals has indicated that it is appropriate to consider "the complexity of the outstanding order, possible ambiguities, the difficulties in arranging compliance and the extent of efforts to obey its terms." Id. at 622.

Here, the June 29 Order enforcing Salvatore Arrigo's decision requires Washington Gas to recreate positions, reinstate persons to the twenty-eight positions that had been eliminated, restore benefits to affected persons, and essentially restructure the Washington Gas workforce and operations system in the relevant business unit. *See* Plaintiff's Application to Confirm and Enforce Arbitration Award, Attachment A at 22 (December 31, 2005 Arbitration Award); *see also* Savage Aff., ¶¶ 2-4; Townsend Aff., ¶ 6. Furthermore, before fully complying with the Order, Washington Gas has had to examine the work and responsibilities that are union-eligible and can be lawfully transferred back to the persons under the pertinent collective bargaining agreement, Internal Audit Controls, and the Sarbanes Oxley Act. Townsend Aff., ¶ 7. As noted above, implementation of the June 29 Order impacts structural changes that have been undertaken by the Company over a period of two years, Townsend Aff., ¶¶ 3-5 and cannot be undone in a period of weeks. The difficulties in accomplishing these tasks and

coordinating with the relevant stakeholders made it impossible for the Company to immediately comply with the Court's June 29 Order.[1]

Furthermore, contrary to the assertions in the Union's Motion For Order to Show Cause, the Union has not contacted Washington Gas "several times" requesting that it comply with the Order.  *See* Affidavit of William B. Gibson, attached to Plaintiff's Motion for Order To Show Cause.  Rather, as noted above, the Union sent a letter demanding that Washington Gas comply with the June 29 Order dated July 17, 2006.  William B. Gibson, President and Principal Officer of the Union, subsequently left two voicemail messages with Mr. Savage, merely asking if Mr. Savage had received a letter from him.  Savage Aff., ¶ 6.  When Mr. Savage received the Union's letter, he timely contacted Mr. Gibson and advised him that the Union's letter had been received and submitted to Washington Gas' Office of the General Counsel for further consideration.  *Id.*, ¶¶ 7-8.  Before the Company had any meaningful opportunity to respond and engage in substantive discussions with the Union regarding compliance with the June 29 Order, the Union filed a Motion For an Order to Show Cause with the Court on July 20, 2006.  Hence, the Union cannot be heard to complain that its efforts to "chase down" the Company's compliance have been ignored.

Washington Gas has made substantial efforts to comply with the June 29 Order, but due to the complexity of the Order's impact and the difficulties in arranging compliance, has been unable to fully comply with the Order to date.  However, as the District of Columbia Circuit Court of Appeals has held in <u>WMATA v. Amalgamated Transit Union, Local 689</u>, present inability to comply with an order is a defense to civil

---

[1]   Significantly, upon completion of the Company's review, the Company has concluded that implementation will cause it to suffer irreparable harm, *see* Townsend Aff., ¶¶ 6-8, and, as of July 28, 2006, has filed a Motion to Stay Execution of Order Pending Appeal, along with a Notice of Appeal.

contempt. 531 F.2d 617, 621 (D.C. Cir. 1976). As a result, Washington Gas should not be held in contempt.

## CONCLUSION

Based on the foregoing, Washington Gas respectfully requests that it not be held in contempt of this Court's June 29 Order.

                            Respectfully submitted,

                            _____/s/ Karen L. Vossler_____
                            Robert L. Clayton (D.C. Bar No. 961474)
                            Karen L. Vossler (D.C. Bar No. 476522)
                            Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, LLC
                            701 Pennsylvania Ave, N.W.
                            Washington, D.C. 20004
                            Tel: 202-434-7300
                            Fax: 202-434-7400

                            Counsel for Defendant Washington Gas

Date:   July 28, 2006

WDC 388853v.1