-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEAMSTERS LOCAL UNION
NUMBER 96, affiliated with the
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
2120 Bladensburg Rd., N.E., # 106
Washington, D.C. 20018

                Plaintiff,

v.                                         Case No. 1:06-cv-928 (ESH)

WASHINGTON GAS LIGHT COMPANY,
6801 Industrial Rd.
Springfield, VA 22151

                Defendant.

**AFFIDAVIT OF STEPHEN SAVAGE
IN SUPPORT OF DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

      I, Stephen Savage, being first duly sworn upon my oath, hereby state as follows:

      1.     I am over the age of 18, a citizen of the United States, and am competent to testify to the matters contained herein.

      2.     I am currently the Manager - Labor Relations and Human Resources Compliance for Washington Gas Light Company ("Washington Gas" or the "Company") and, as such, have been involved in the Company's response to the June 29, 2006 Order issued by Judge Ellen Segal Huevelle in the above-captioned case.

      3.     Upon issuance of the June 29 Order, Washington Gas began a careful analysis of the harm and that might result to Washington Gas from reinstating the employees in immediate compliance with the June 29 Order and whether the business needs supported the reinstatement of that work. In connection with this review, the

Company considered its options for appealing this Court's Order to the District of Columbia Circuit Court of Appeals and the possibility of filing a Motion to Stay application of the June 29 Order pending that appeal should such a stay be necessary to avoid irreparable harm to the Company.

4. In addition to me, various decision makers from throughout the organization — including legal counsel, Human Resources and the relevant business operations stakeholders — participated in this review. The Company's decision required a detailed analysis of the organizational structure and the potential harm posed to the Company as a result of being compelled to adhere to the June 29 Order during any appeal to the District of Columbia Circuit Court of Appeal.

5. The Company dealt with this issue as quickly and effectively as possible, given the number of stakeholders required to contribute to the decision and the scheduling pressures faced by those individuals. For example, during this same time, I, along with several key personnel in Human Resources, was simultaneously engaged in preparations for, and negotiations with, another union at the Company's Frederick, Maryland division. Those negotiations began formally on July 12, 2006 in Frederick, Maryland. As a result, a certain amount of delay in this process was unavoidable.

6. Between on or about July 17 and July 19, 2006, I received at least two voicemail messages from William B. Gibson, President and Principal Officer of Teamsters Local Union No. 96 ("Local 96"). In these messages, Mr. Gibson did nothing more than ask whether I had received a letter from him. I was involved in labor contract negotiations in Frederick, Maryland on both July 17 and July 19, 2006 and I did not immediately return Mr. Gibson's phone message.

7. However, upon returning to my office on or about July 18, I read, for the first time, Mr. Gibson's letter and asked my staff to deliver a copy thereof to other stakeholders in the Human Resources department and the Office of General Counsel.

8. Between on or about July 19 and July 20, 2006, I returned Mr. Gibson's telephone calls and acknowledged receipt of his letter. Because the letter was relevant to the ongoing process I have described above, I informed Mr. Gibson truthfully that I had forwarded the letter to the Office of the General Counsel for further consideration. Before the Company had an opportunity to respond, on information and belief, Local 96 filed a Motion for Show Cause Order.

9. At no time during my conversation with Mr. Gibson, or at any time prior to or following that conversation, has Mr. Gibson sought to have a substantive conversation with me concerning the June 29 Order issued in this matter.

10. With respect to the immediate implementation of the June 29 Order, on information and belief, a compelled reversal of the elimination of the Inspector classifications might actually *harm* some of the impacted individuals. For example, in order to comply with the June 29 Order, those who were promoted to Construction Supervisors (management-level positions) would be effectively demoted back to the previously eliminated positions (union-level work).

-5-

I certify, under the pains and penalties of perjury, that the above statements are true and correct to the best of my knowledge and information.

_____
Stephen Savage

Subscribed and sworn to this 28th day of July, 2006, before a Notary Public for the Commonwealth of Virginia

_____
Donna Lynne Adams
Notary Public

My Commission Expires:

August 31, 2009

WDC 388862v.1