## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TEAMSTERS LOCAL UNION**
**NUMBER 96, affiliated with the**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS,**
**2120 Bladensburg Rd., N.E., # 106**
**Washington, D.C. 20018**


                          Plaintiff,

**v.**                                          **Case No. 1:06-cv-928 (ESH)**

**WASHINGTON GAS LIGHT COMPANY,**
**6601 Industrial Rd.**
**Springfield, VA 22151**

                          Defendant.

_____

## DEFENDANT'S MOTION TO STAY
## EXECUTION OF ORDER PENDING APPEAL

Defendant Washington Gas Light Company ("Washington Gas" or the

"Company"), by and through undersigned counsel, hereby moves pursuant to Rule 62(d)

of the Federal Rules of Civil Procedure and Rule 8(a) of the Federal Rules of Appellate

Procedure for a Stay of Execution of its Order entered Thursday, June 29, 2006, to

Plaintiff Teamsters Local Union No. 96 ("Plaintiff" or "Local 96") pending appeal to the

District of Columbia Circuit Court of Appeals.  In support of this Motion, Defendant

submits herewith its Memorandum of Points and Authorities in Support of Motion to

Stay Execution of Order Pending Appeal.  A Proposed Order is also provided.  In

addition, Washington Gas is prepared to file any *supersedeas* bond that this Court may

require.

Based on the foregoing, Washington Gas respectfully requests that its Motion to Stay Execution of Order Pending Appeal be granted.

Respectfully submitted,

_____/s/ Karen L. Vossler_____
Robert L. Clayton (D.C. Bar No. 961474)
Karen L. Vossler (D.C. Bar No. 476522)
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, LLC
701 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Tel: 202-434-7300
Fax: 202-434-7400

Counsel for Defendant Washington Gas

Date:   July 28, 2006

WDC 388899v.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**TEAMSTERS LOCAL UNION**
**NUMBER 96, affiliated with the**
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS,**
**2120 Bladensburg Rd., N.E., # 106**
**Washington, D.C. 20018**


Plaintiff,

**v.**                                                    **Case No. 1:06-cv-928 (ESH)**

**WASHINGTON GAS LIGHT COMPANY,**
**6601 Industrial Rd.**
**Springfield, VA 22151**

Defendant.

_____

**WASHINGTON GAS LIGHT COMPANY'S MEMORANDUM IN SUPPORT OF**
**MOTION TO STAY EXECUTION OF ORDER PENDING APPEAL**


Defendant Washington Gas Light Company ("Washington Gas" or the

"Company"), by and through undersigned counsel, hereby moves pursuant to Rule 62(d)

of the Federal Rules of Civil Procedure and Rule 8(a) of the Federal Rules of Appellate

Procedure for a Stay of Execution of its Order entered Thursday, June 29, 2006, to

Plaintiff Teamsters Local Union No. 96 ("Plaintiff" or "Local 96") pending appeal to the

District of Columbia Circuit Court of Appeals.  Specifically, Washington Gas will

contend that the District Court erred in finding (1) that there were no disputed material

facts on the record and (2) that Plaintiff was entitled to judgment as a matter of law.  For

the reasons stated below, the execution of the June 29 Order should be stayed, including

this Court's Order granting Plaintiff fees and costs, to prevent irreparable harm to the

Company pending resolution of Washington Gas's Appeal of the Order.

## FACTUAL BACKGROUND

Washington Gas and Local 96 are parties to a June 2, 2004 Labor Contract (the "CBA"), which governs various terms and conditions of employment. Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 3 ("Def's Opp."). In pertinent part, Article XVIII of the CBA provides that "[a] panel of nine (9) arbitrators shall be jointly compiled and agreed upon by the parties. . . . *During the term of this Contract*, either party may, *for any reason*, strike up to two (2) arbitrators from the panel of arbitrators." *Id.* at 3-4 (emphasis added).

On or about April 11, 2005, Plaintiff notified Washington Gas pursuant to Article XVIII of its intent to arbitrate a grievance on behalf of several of its members. Application for Confirmation and Enforcement of Arbitration Award ("Application"), ¶ 10. Initially, Salvatore Arrigo was chosen by the parties from the panel as the arbitrator for Local 96's grievance. *Id.,* ¶ 10. Before the hearing scheduled in the matter, by letter dated September 21, 2005, Washington Gas exercised its contractual right to terminate Mr. Arrigo from the panel of arbitrators in the grievance. *Id.,* ¶ 15. As a consequence, Washington Gas noted in its September 21 letter, the arbitration could not proceed as scheduled on September 29, 2005. *Id.*

Despite the fact that Mr. Arrigo had been duly removed as an arbitrator, on September 23, 2005, Local 96 filed a Motion to Proceed with Arbitration Hearing (the "Motion to Proceed") with Mr. Arrigo. *Id.*, ¶ 16. Just two hours later, Mr. Arrigo, himself, granted the Motion to Proceed and ruled that the hearing should proceed as scheduled on September 29, 2005. *Id.*, Def's Opp. at 4-5.

By letter dated September 23, 2005, Washington Gas reminded Local 96 and Mr. Arrigo of the CBA provision allowing for unilateral removal of arbitrators by either party, at any time and for any reason.   Application, ¶ 17 and Def's Opp. at 5. Washington Gas reiterated that it had chosen to exercise its contractual right, and made clear that it no longer recognized Mr. Arrigo as an arbitrator in the matter capable of making any ruling, including granting the motion to retain himself as an arbitrator, or issuing any binding and enforceable order.   *Id.*, ¶ 17 and Def's Opp. at 5.   Also in accordance with the CBA, Washington Gas urged Local 96 to participate in selecting another arbitrator to expeditiously hear the arbitration.   *Id.*

Notwithstanding his removal as arbitrator, Mr. Arrigo held an *ex parte* hearing on September 29, 2005, at which only Local 96 appeared.   *Id.*, ¶¶ 17-18.   Following the hearing, Washington Gas submitted a brief by "Special Appearance," in which the Company restated its objection to Mr. Arrigo's action in holding himself out as an arbitrator of the dispute.   *Id.*, Def's Opp. at 5.

On December 31, 2005, however, Mr. Arrigo issued a document in which he purported to find for Local 96 on the underlying grievance.   *See* Arbitration Decision in the Matter of Teamsters Local Union No. 96 and Washington Gas Light Co., Grievance No. 20-05-10, attached to Plaintiff's Memorandum in Support of Motion to Dismiss as Tab 2.   In that decision, Mr. Arrigo mandated in the form of an injunctive order that Washington Gas:

- Reverse its decision eliminating Inspector classifications and offer to all employees removed from the Inspector classifications the opportunity to accept reinstatement to their previous Inspector positions without loss of seniority or any other employee benefit and be made whole; and

- Cease diverting traditional Inspector work to supervisory positions and return the traditional Inspector work to Inspectors.

*Id.* Since that time, Washington Gas has continued to act consistently with its position that Mr. Arrigo was a stranger to the CBA, having been stricken as the arbitrator on September 21, 2005, and that therefore, any decision he purportedly rendered in the underlying arbitration between the parties was necessarily invalid *ab initio*. *Id.*, ¶ 24.

## PROCEDURAL HISTORY

On April 16, 2006, Plaintiff filed an application with the District of Columbia Superior Court to confirm and enforce Mr. Arrigo's arbitration award. Washington Gas subsequently removed the matter to the United States District Court for the District of Columbia on May 16, 2006 on the basis of federal subject matter jurisdiction pursuant to Section 301 of the Labor Management Relations Act. Washington Gas then moved to dismiss Plaintiff's Application. Plaintiff simultaneously moved for summary judgment.

Oral arguments were presented to the District Court on June 29, 2006. From the bench, this Court granted Plaintiff's Motion for Summary Judgment. In issuing its decision, the Court held that if Washington Gas had an objection to the arbitration award, the Company should have moved to vacate the award pursuant to the District of Columbia arbitration statute within ninety days of its issuance. *See* Summary Judgment Hearing Transcript ("Transcript") at 10, attached hereto as Tab 1. Moreover, the Court stated that the grounds on which such a motion could have been based was the lack of jurisdiction of Mr. Arrigo to issue the award he issued. *Id.*[1] Having failed to do so, the Court held, Washington Gas was bound to Mr. Arrigo's ruling under a D.C. Arbitration Statute. Transcript at 9-12.

---

[1] In fact, the D.C. arbitration statute includes as one of its grounds for vacating arbitration award a finding that "[t]he arbitrators exceeded their powers." D.C. Code § 16-4311(a)(3).

The Court granted Local 96's and Application to Confirm and Enforce the Arbitration Award and further ordered Local 96 to file an affidavit documenting attorney's fees and costs within two weeks of the Order (the "June 29 Order").[2]

The June 29 Order is a final order of this Court for which jurisdiction on appeal will lie in the District of Columbia Circuit Court of Appeals pursuant to 28 U.S.C. § 1291. Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Washington Gas has filed on July 28, 2006 a Notice of Appeal, appealing the June 29 District Court Order enforcing Arbitrator Arrigo's award. In accordance with FRAP 4, the Company's deadline for filing its Notice of Appeal is July 31, 2006.

## ARGUMENT

Federal Rule of Civil Procedure 62(c) provides in relevant part that,

> [w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving or denying an injunction, the court in its discretion may suspend… an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

In determining whether to grant a stay pending appeal under Rule 62, courts consider the following factors: 1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and 4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Chamber of Commerce v. Reich*, 897 F. Supp. 570, 584 (D. D.C. 1995).

As explained below, Washington Gas is entitled to a stay pending its appeal of the June 29 Order because the above-mentioned factors weigh heavily in favor of a stay.

---

[2]     Plaintiff's counsel filed its Application for Costs and supporting affidavit on July 13, 2006.

### A.    Washington Gas's Appeal Is Likely To Succeed On The Merits

Washington Gas submits that the District Court erred in concluding both that (1) there were no genuine disputed material facts on the record and (2) that Washington Gas' argument that the case was unripe for adjudication was actually an argument that the arbitrator exceeded his authority under the CBA and, as such, was in fact a time-barred motion to vacate pursuant to § 16-4311 of the District of Columbia arbitration statute.  As such, Washington Gas is likely to succeed on the merits of its appeal.

### 1.    The District Court Erred In Concluding That There Were No Disputed Facts

Washington Gas will likely prevail on appeal because the District Court erred in granting summary judgment to Plaintiff.  As a preliminary matter, the record clearly reflects that there were genuine issues of material fact in dispute in the case.  Specifically, there was a genuine dispute as to whether Mr. Arrigo was an "arbitrator" under the parties' CBA capable of convening an arbitration proceeding, issuing subpoenas, taking evidence and rendering a binding and enforceable decision.

Under well-established jurisprudence, a court must consider all inferences from the record in the light most favorable to the party opposing a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("All that is required [of the non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The "evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in [its] favor." *Anderson*, 477 U.S. at 248; *see also Bayer v. United States Dep't of Treasury*, 294 U.S. App. D.C. 44, 956 F.2d 330, 333 (D.C. Cir. 1992).

Summary judgment is only appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 310 U.S. App. D.C. 113, 43 F.3d 1538, 1540 (D.C. Cir. 1995)). Material facts are in dispute if they are capable of affecting the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

The genuine disputes contained in the instant matter created more than a mere "metaphysical doubt" as to the material facts. *Cf. Matsushita*, 475 U.S. at 586. Washington Gas submitted to the Court that, because of its valid September 21, 2005 removal of Mr. Arrigo as arbitrator, there was no arbitration award capable of confirmation, enforcement or, by extension, vacation. The processing of Local 96's grievance effectively was suspended as of the date of that action and would remain so until the parties select a new arbitrator and proceed to a hearing in this matter. Plaintiff disagreed as to whether that removal was effective. The factual dispute regarding the removal of the arbitrator went to the very heart of the case: whether a valid arbitration award even existed that could be enforced by the Court. It was erroneous for the District Court to grant summary judgment where such a dispute of material fact existed.

2.    Plaintiff Was Not Entitled To Judgment In Its Favor As A Matter Of Law

Moreover, the District Court erroneously ruled that Washington Gas failed to timely move to vacate the arbitrator's decision within ninety (90) days after it was issued, and thus Plaintiff was entitled to judgment as a matter of law. Simply put, Washington

Gas' defenses to Plaintiff's Motion for Summary judgment were not time barred.  The

D.C. Arbitration Statute referenced by the Court and by Plaintiff, D.C. Code § 16-4311,

does not apply to the present matter because the matter was never submitted pursuant to

the terms of the CBA to a valid hearing before a proper arbitrator.

Contrary to the conclusions reached by the District Court on June 29, the District

of Columbia's arbitration statute simply has no bearing on the argument that Mr. Arrigo

was not, after September 21, 2005, an arbitrator capable of ruling on motions, conducting

a hearing and issuing a binding order on the parties pursuant to their CBA.  As such, the

June 29 Order will likely be reversed on appeal.

In ruling in the Plaintiff's favor, the Court mistakenly recast Washington Gas'

argument as one that the arbitrator had "exceeded his authority" — a ground for vacating

an arbitration award pursuant to D.C. Code § 4311(a).  In reaching this decision, the

Court relied on *CWS Electric* and *Washington Hospital Center*, and held that Washington

Gas was barred from raising its argument more than ninety days following the issuance of

the arbitration award.  Transcript at 9-12.

The cases relied upon by this Court in reaching its decision, however, are

distinguishable from the present case, because both *CWS Electric* and *Washington Hosp.*

*Center* concerned employers raising defenses in response to motions to enforce

arbitration awards that expressly arise under the D.C. arbitration statue.  *See Local Union*

*26, International Brotherhood of Electrical Workers v. CWS Electric*, 669 F. Supp. 495

(D. D.C. 1986); *Service Employees Int'l Union, Local  722 v. Washington Hosp. Center*,

1983 U.S. DIST. LEXIS 16895 (D. D.C. 1983), attached hereto as Tab 2.  Thus, in both

of those cases, the employer's arguments were subject to the 90-day limitations period provided in that statute.

*CWS Electric* involved an employer who, as an unincorporated proprietorship, authorized another entity to enter into a collective bargaining agreement on its behalf. *Id.* at 495. When a dispute arose between the union and CWS Electric, the matter was submitted to arbitration before the Labor Management Committee. *Id.* The employer made a special appearance, by its attorney, to argue that the Labor Management Committee lacked jurisdiction because the authorization to enter into an agreement was given by CWS Electric before it incorporated, and so the newly-formed corporation was not bound by the agreement. *Id.* The employer made no further arguments regarding jurisdiction. *Id.* Finding that the newly incorporated entity was the "alter ego" of the proprietorship that had authorized entry into the collective bargaining agreement, however, the Labor Management Committee ruled against the employer in the arbitration. *Id.* In defense of the union's motion for summary judgment in a subsequent action to enforce the award, CWS Electric raised ***for the first time*** that the original authorization regarding entry into a collective bargaining agreement was the product of mistake or fraud. *Id.* at 497-498. The *CWS Electric* court ruled that because, the employer's defense could have been raised in a motion to vacate brought pursuant to D.C. Code § 16-4311(a), [3] the employer's failure to move during the 90-day limitations period precluded CWS Electric from raising the fraud argument as an affirmative

---

[3] The D.C. statute expressly contemplates motions to vacate based upon an assertion that "[t]he award was procured by corruption, fraud or other undue means" and that "[t]here was no arbitration agreement and the issue was not adversely determined in proceedings under section 16-4312." D.C. Code § 16-4311(a)(1) and (5).

defense. *Id.* at 498. In so ruling, the Court specifically noted that the employer had not raised the fraud issue before the arbitrators "or at any time thereafter." *Id.* at 499.

Similarly, as a counterclaim in an action to enforce an arbitration award brought more than 90-days after the award issued, the employer in *Washington Hospital Center* moved to vacate on the ground, *inter alia*, that the arbitrator had exceeded his authority. *Washington Hosp. Center*, 183 U.S. DIST. LEXIS 16895 at *1; *cf.* D.C. Code § 16-4311(a)(3). In that case, this Court held that — although the counterclaim was untimely — the plaintiff had waived the statute of limitations defense to it by failing to raise the 90-day limitations period. *Id.*, *4 n.2. The court went on to analyze and reject the employer's counterclaim on its merits. *Id.*

Contrary to the Court's June 29 Order, the present matter is factually and legally distinguishable from both *CWS Electric* and *Washington Hosp. Center*. In this case, unlike *CWS Electric* and *Wash. Hosp. Center*, the basis for denial of Local 96's Motion is *not* based upon a ground contemplated by the D.C. arbitration statute. *See* D.C. Code § 16-4311(a). Specifically contrary to the Court's finding, the Company is *not* asserting that Mr. Arrigo exceeded his authority as an arbitrator. Rather, the Company asserts that Mr. Arrigo's appointment as an arbitrator was terminated by its action on September 21, 2005, and that his termination both suspended the processing of Local 96's grievance and rendered invalid any action taken by Mr. Arrigo subsequent to that date.

The provision of the CBA concerning an arbitrator's contractual authority, contained in Article XVIII, Section 17(a), is not implicated by Washington Gas' argument at all. *See* Tab 3. Indeed, for Section 17(a) to apply to a controversy at all requires first peradventure  that there is an ***arbitrator*** properly named and recognized by

the CBA. Because of Washington Gas' exercise of its right pursuant to Article XVIII,

Section 16(a), however, there was, as of September 21, 2005, no arbitrator. Hence, Mr.

Arrigo was a stranger to the CBA and could not have "exceeded powers" that had been

stripped from him *in toto* by the Company's September 21 act. Unlike the facts presented

in *CWS Electric and Washington Hosp. Center*, the D.C. arbitration statute does not

apply where, as here, ***no arbitration award*** under the CBA ***exists***.

Because no arbitration award exists, as noted above, there is not as yet an actual

case or controversy between these parties capable of resolution and, therefore, the District

Court lacked subject matter jurisdiction to hear Local 96's unripe application for

enforcement. Further, because subject matter jurisdiction and the ripeness doctrine are

Constitutional limitations not subject to any statutory limitations period, including that of

D.C. Code § 16-4311, Washington Gas's defenses against Plaintiff's Application for

Confirmation and Enforcement Of the Arbitration Award are timely and should have

been considered by the Court during its summary judgment deliberations.

It is well settled that lack of subject matter jurisdiction cannot be waived by the

passage of time, by estoppel, or by consent of the parties. 5C WRIGHT AND MILLER,

FEDERAL PRACTICE AND PROCEDURE (hereinafter "Wright and Miller") § 1393, 532-535

(2004). "Indeed, the Supreme Court has indicated on several occasions that it is the

obligation of the federal courts to assure themselves that they have subject matter

jurisdiction." Wright and Miller, at 549. Moreover, "[a] question of subject matter

jurisdiction may be presented by any interested party at any time," Wright and Miller, at

536 (citing *Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567, 576 (2004); *Capron v.

Van Noorden* 6 U.S. 126 (1804) (2 Cranch)). Even the party who invokes the jurisdiction

of a federal court is not estopped from raising lack of subject matter jurisdiction.  *Thomas v. District of Columbia*, 82 F.R.D. 93 (D. D.C. 1979).

Here, because no valid, enforceable arbitration award has yet been issued, Local 96's action to confirm and enforce an award was not ripe for adjudication.  Indeed, should the underlying grievance proceed to arbitration under the guidance of a properly appointed arbitrator, and with the full participation of both parties, a different ruling might issue.  As a result, the matter brought by Local 96 "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Atl. States Legal Found. v. Envtl. Prot. Agency*, 325 F.3d 281, 284 (D.C. Cir. 2003).  Thus, the District Court's summary judgment ruling was premature.

Based on the foregoing, Washington Gas is likely to succeed on the merits of its appeal, and a stay pending appeal is warranted.

### B.    Washington Gas Will Be Irreparably Harmed In The Absence Of A Stay

Under well-established law, courts will grant a motion to stay where an appellant can demonstrate that a denial of a stay would destroy the status quo and irreparably harm the appellant.  *See Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (granting a motion to stay where denial of a stay would "utterly destroy the status quo"). In the case at bar, by enforcing Arbitrator Arrigo's award, the Court has mandated that Washington Gas reorganize its workforce, modify job classifications, redistribute duties and responsibilities and make offers of reinstatement to former employees who have since retired, or moved on to other positions when their previous positions were eliminated.  Application at ¶21, Ex. A at 22.  As discussed below, this will cause the Company irreparable harm.

In 2005, Washington Gas restructured its Gas Transportation Business Unit (the "Unit"). In connection with this restructuring, the Company eliminated the positions involved in the underlying grievance — the "Inspector Contractor" and the "Inspector Pre-Installation" classifications. *See* Affidavit of Tracy L. Townsend in Support of Motion to Stay ("Townsend Aff."), at ¶ 5, attached hereto as Tab 4. In all, 28 positions were eliminated and all affected employees either elected to retire with benefits or obtained other positions through promotion or transfer with pay protection. *Id.* At the same time, the Company created the Work Management Information System ("WMIS") a software system called the Work Management Information System ("WMIS"), which allows users of the system to manage various tasks in the construction process. *Id.*, ¶ 4. In addition, WMIS "manages" the workflow of construction projects and helps ensure that the process continues in a timely manner from step-to-step until completion. *Id.*

If required to implement the June 29 Order pending its appeal to the District of Columbia Circuit Court of Appeals, it would be forced to entirely reorganize its workforce to support the workflows and processes of the WMIS, meanwhile reabsorbing twenty-eight employees into the Unit. *Id.*, ¶ 6. Because Washington Gas is limited by the collective bargaining agreement, as well as by Internal Audit controls and the mandates of the Sarbanes Oxley Act, in the kind of work and the level of responsibility that can be given to union-eligible positions, the reinstated inspector classifications would have a greatly reduced role in the construction process. *Id.*, ¶ 7. That role would be limited primarily to inspections and would be duplicative of work performed by other parts of the organization and/or contractors. *Id.* Instead of driving down the cost per hook-up, the reinstatement of twenty-eight full-time employees performing duplicative

work would drive those costs up. *Id.*, ¶ 8.

As described above, if the June 29 Order is not stayed, the Company will be forced to recreate jobs, displace current employees and restructure its organization. The impact of the immediate execution of the June 29 Order will completely destroy the status quo, and as a result, Washington Gas will suffer substantial irreparable injury. Thus, a stay pending appeal is warranted to avoid irrevocable and substantial harm to Washington Gas.

**C.     The Issuance Of A Stay Will Not Substantially Injure Plaintiff**

Furthermore, the issuance of stay in the instant matter will not harm Plaintiff. Any bargaining unit members who were affected by the Company's prior reorganization are either retired or in other positions. *See* Townsend Aff. at ¶ 5. As noted above, the twenty-eight employees impacted by the Company's reorganization in 2005 fall into three categories: retired with retirement benefits package (six), promoted to management positions as either Construction Supervisor positions (six) or Paving Specialist (one), or transferred to other positions at the same level and salary, mainly in Field Operations positions (fifteen). *Id.* Four of the fifteen transferred to other Field Operations positions have since been promoted. *Id.* Because each of these employees opted to retire, were promoted to higher paying positions with greater compensation, or were maintained at the same level and compensation, none would be harmed by a stay to maintain the current status quo. Moreover, a reorganization forced by immediate compliance with the June 29 Order might actually ***harm*** some of the impacted individuals. *See* Affidavit of Steven Savage In Support of Defendant's Response to Order to Show Cause and Defendant's Motion to Stay, ¶ 9, attached hereto as Tab 5. For example, in order to comply with the

June 29 Order, those who were promoted to Construction Supervisors would be effectively demoted back to the previously eliminated positions. *Id.*.   Thus, a stay would benefit rather than harm the plaintiffs.  Thus, the individual union members impacted by the June 29 Order would not suffer any economic injury in the event the June 29 Order is stayed pending appeal.

Moreover, if Plaintiff ultimately prevails, any interested person will be entitled to be made whole, which includes reinstatement and back pay, if necessary.  Therefore, a stay is appropriate because Plaintiff and/or any interested persons will not suffer a substantial injury for a delay pending appeal.  *See WMATA v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977) (granting stay where appellees would not suffer substantial injury); *Exxon Corp. v. Esso Worker's Union, Inc.*, 963 F. Supp. 58, 60 (D. Mass. 1997) (order to reinstate employee was stayed pending appeal where employee would not suffer serious injury from a delay in reinstatement), *rev'd on merits*, 118 F.3d 841 (1st Cir. 1997).

Finally, Local 96 will not suffer harm if the Motion to Stay is granted.  To the extent that Local 96 asserts that it has been damaged by delay in enforcing Mr. Arrigo's decision, it cannot complain of harm as a result of a delay of its own making.  Instead of immediately working with the Company to name a successor arbitrator as it was contractually bound to do, Local 96 denied that the Company had validly terminated Mr. Arrigo's appointment as an arbitrator and insisted upon proceeding before him.

Because Plaintiff and its members will not be harmed by a stay, therefore, the balance of harms in this matter favors the Company and the Motion to Stay should be granted.

**D.    Public Interest Concerns Support A Stay In This Case**

Finally, the public interest will not be compromised by the issuance of a stay in enforcing the June 29 Order.  *See AARP v. EEOC*, 390 F. Supp. 2d 437, 462-63 (E.D. Pa. 2005) (employer entitled to stay of injunction pending appeal in part because public would not suffer "irreparable harm" from a delay in enforcing an injunction).  Hence, here, where Local 96 has ignored the plain, unambiguous language of its own CBA with Washington Gas, public interest weighs in favor of a stay to allow the Court of Appeals to consider the matter.  In fact, the public will benefit from a full and fair adjudication of the case.

## CONCLUSION

Based on the foregoing, Washington Gas respectfully requests that the Court stay the execution of its June 29 Order, including the award of attorney's fees and costs, pending resolution of the Company's Appeal.

Respectfully submitted,


_____/s/ Karen L. Vossler_____
Robert L. Clayton (D.C. Bar No. 961474)
Karen L. Vossler (D.C. Bar No. 476522)
Mintz, Levin, Cohn, Ferris, Glovsky, and
Popeo, LLC
701 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Tel: 202-434-7300
Fax: 202-434-7400

Counsel for Defendant Washington Gas

Date:   July 28, 2006


WDC 387996v.3