IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEAMSTERS LOCAL UNION
NUMBER 96, affiliated with the
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
2120 Bladensburg Rd., N.E., # 106
Washington, D.C. 20018

                Plaintiff,

v.                            Case No. 1:06-cv-928 (ESH)

WASHINGTON GAS LIGHT COMPANY,
6801 Industrial Rd.
Springfield, VA 22151

                Defendant.

---

### AFFIDAVIT OF TRACY L. TOWNSEND
### IN SUPPORT OF DEFENDANT'S MOTION TO STAY

I, Tracy L. Townsend, being first duly sworn upon my oath, hereby state as follows:

1. I am over the age of 18, a citizen of the United States, and am competent to testify to the matters contained herein.

2. I am currently the Director of Construction for Washington Gas Light Company, located at 6801 Industrial Road, Springfield, VA 22151. As the Director of Construction, my responsibilities include the management and oversight of the New Business and Replacement Construction departments for Washington Gas, Frederick Gas and Shenandoah Gas as well as the Construction Support Services department for Washington Gas. These departments are responsible for the sales, construction planning and engineering/design, project management, construction oversight, contractor

management/administration and back-end reporting in conjunction or support of the New Business and Replacement Construction activities performed by Washington Gas.

3. Until October 2005, the Company's Gas Transportation Business Unit (the "Unit") was completely responsible for the maintenance, replacement and new business construction of the Company's distribution system. In October 2005, the Unit was restructured, splitting out Field Operations (responsible for the maintenance activities), and renaming the remaining departments as Engineering and Construction. During the winter of 2004/2005, Washington Gas continued to restructure the Unit (the restructuring had begun in 2003.) Overall, the restructuring of the Unit was driven by a business need to reduce "cost per hook-up" (or the cost associated each time a new service is installed) by refining construction processes and implementing other process improvement initiatives focused on reducing costs of the overall construction process.

4. One of these other process improvement initiatives was the implementation of a Work Management Solution to further refine and automate the construction paperwork/workflow. As part of the Work Management Solution initiative, Washington Gas implemented a software system called the Work Management Information System ("WMIS"). WMIS allows users of the system to manage various tasks in the construction process. In addition, WMIS "manages" the workflow of construction projects and helps ensure that the process continues in a timely manner from step-to-step until completion.

5. On information and belief, as part of this overall restructuring, twenty-eight positions were eliminated in the Inspector Contractor and Inspector Pre Installation classifications. After the positions were eliminated, on information and belief, all

affected employees either elected to take retirement benefits (six employees) or obtained other positions through promotion to management positions (seven employees) or transferred laterally to new positions with pay protection (fifteen employees). Four of those who were transferred laterally to other positions were later promoted within their new job classifications. (I was indirectly involved as Department Head New Business Construction in the promotions of six employees to Construction Section Leaders, now titled Construction Supervisors.)

6. If Washington Gas were compelled to reverse its decision eliminating the Inspector classifications, the Company would suffer substantial business harm. Washington Gas would be forced to entirely reorganize its workforce to continue to support WMIS, meanwhile reabsorbing twenty-eight employees into the Unit.

7. On information and belief, because Washington Gas is limited by the collective bargaining agreement, as well as by Internal Audit controls and the mandates of the Sarbanes Oxley Act, in the kind of work and the level of responsibility that can be given to union-eligible positions, the reinstated inspector classifications would have a greatly reduced role in the construction process. That role would be limited primarily to inspections and would be duplicative of work performed by other parts of the organization and/or contractors.

8. Instead of driving down the cost per hook-up, the reinstatement of twenty-eight full-time employees performing duplicative work would drive those costs up.

I certify, under the pains and penalties of perjury, that the above statements are true and correct to the best of my knowledge and information.

_____
Tracy L. Townsend

Subscribed and sworn to this 28th day of July, 2006, before a Notary Public for the Commonwealth of Virginia

_____
Notary Public

My Commission Expires:

August 31, 2009

WDC 388766v.4

-5-