**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
TEAMSTERS LOCAL UNION NO. 96,             )
affiliated with the INTERNATIONAL         )
BROTHERHOOD OF TEAMSTERS,                 )
2120 Bladensburg Road, N.E., #106         )
Washington, D.C.  20018                   )
                                          )
                    Plaintiff,            )
v.                                        )         Civil Action No. 06-0928 (ESH)
                                          )
WASHINGTON GAS LIGHT COMPANY,             )
6601 Industrial Road                      )
Springfield, VA 22151                     )
                                          )
                    Defendant.            )
_____)

**PLAINTIFF'S CONSOLIDATED RESPONSE TO ORDER TO SHOW CAUSE AND
OPPOSITION TO DEFENDANT'S MOTION TO STAY EXECUTION OF ORDER**

Plaintiff Teamsters Local Union No. 96 ("Local 96" or "Union"), hereby submits this

consolidated brief in response to the Court's Order to Show Cause issued July 21, 2006 and in

opposition to the motion to stay filed by Defendant Washington Gas.  For the reasons set forth

below, this Court should find Washington Gas in contempt of its June 29, 2006 Order.

Furthermore, the Court should deny Defendant's request to stay enforcement of that Order

pending appeal.

**INTRODUCTION**

On December 31, 2005, the Union received a favorable Arbitration Decision which

upheld a grievance the Union had filed challenging the propriety of a decision by Washington

Gas to eliminate two bargaining unit classifications.  In his decision, Arbitrator Salvatore Arrigo

determined, among other things, that the Company's decision to eliminate the two classifications

was improper because such an elimination resulted in the diversion of bargaining unit work to individuals outside the bargaining unit.

The Company refused to participate in the arbitration hearing. Instead, it sought to terminate the Arbitrator approximately two weeks before the scheduled arbitration hearing. After the Arbitration Decision was issued, the Company maintained a strategy of purposeful disengagement - it took absolutely no steps to comply with the Arbitration Decision. More importantly, the Company failed to communicate at all with the Union over what it now claims to be the complex issues that compliance with the underlying Arbitration Decision would create.

The Company continued to ignore the Arbitration Decision until the Union filed this enforcement action. After its unsuccessful attempt to avoid this Court's enforcement of the underlying Arbitration Decision, the Company resorted to its tactic of ignoring its obligations and did not contact the Union to discuss compliance with the Arbitration Decision. Indeed, the Company maintained its silence until the Union filed a motion for an order to show cause as to why the Court should not find Washington Gas in contempt for failing to comply with the June 29, 2006 Order.

In response to the Court's Order to Show Cause, the Company now suggests that all along it has been working diligently to comply with the June 29, 2006 Order but "due to the complexity of the Order's impact and the difficulties in arranging compliance" it could not comply. The Company presents this argument to the Court now as if it were a new revelation that provides justification for its failure to consider the impact of the Arbitration Decision after it was issued in December, 2005 or at any point thereafter in the course of the Union's enforcement action. The Company's failure to raise the complex compliance issues earlier with either the Union or this

2

Court belies the legitimacy of this argument as a defense to the current show cause order.

Moreover, the Company's suggestion that the Arbitration Decision would require it to "essentially restructure the Washington Gas workforce and operations system" is simply not true. Rather, such a suggestion is merely a *post-hoc* fabrication by the Company in its desperate attempt to portray to the Court how "difficult" it would be to comply with the Court's June 29, 2006. Again, the Union submits that if the impact on the Company's operations was a legitimate issue, common sense and sound business judgment would dictate that this issue be raised with the Union and the Court well before contempt proceedings were initiated. The Company's recalcitrant behavior from the onset of this matter supports a finding of contempt. Although the Company argues that it is unable to comply with the Court's Order, it is clear that Washington Gas is merely unwilling to do so.

The Company's motion to stay execution of the Court's June 29, 2006 Order is equally unavailing. Like its effort to avoid a finding of contempt, this motion is based upon the erroneous notion that compliance with the Order would force the Company to "entirely reorganize its workforce." Compliance with the Court's Order would not result in such an outcome. Thus, Washington Gas cannot demonstrate that it would suffer irreparable harm.

Moreover, as an initial matter, the Company's request for a stay must be denied because it cannot demonstrate a substantial likelihood that its appeal of the Court's June 29, 2006 Order will be successful. The Company's failure to seek to vacate the Arbitration Decision within the statutorily prescribed 90 day period is fatal to its appeal. On this point, the law is clear. That clarity is not diminished by the Company's insistence on repeating in its motion to stay the same failed arguments that were previously presented to this Court.

I.    **THE COMPANY SHOULD BE FOUND IN CONTEMPT FOR FAILURE TO COMPLY WITH THE JUNE 29, 2006 ORDER AND AN APPROPRIATE PENALTY SHOULD BE ASSESSED UNTIL COMPLIANCE IS OBTAINED**

In its response to the Court's Order to Show Cause, Washington Gas essentially argues that it should not be held in contempt because it would be exceedingly hard for the Company to comply with the underlying Arbitration Decision and that such compliance would significantly disrupt its workforce and overall business. Although the Arbitration Decision was issued on December 31, 2005, the Company suggests that it came to this realization with respect to the difficulty of compliance only after the Court issued its June 29, 2006 Order. As explained below, the Company's recent epiphany does not provide adequate justification for the Company to avoid a finding of contempt for its failure to comply with the June 29, 2006 Order.

In WMATA v. Transit Union Local Union No. 689, 531 F.2d 617, 621 (D.C. Cir. 1976) - the only case relied on by the Company in its effort to avoid a finding of contempt - the D.C. Circuit recognized that a legitimate defense to civil contempt is "either substantial compliance or inability to comply." Because Washington Gas has taken no steps to comply with the Court's June 29, 2006 Order, it understandably seeks to demonstrate that this case falls under the second prong of WMATA and that it is unable to comply with the Order. In WMATA, however, the Circuit Court recognized that if a party sought to establish that it was unable to comply with a judicial order, it must necessarily demonstrate that good faith efforts were made to comply.

In this case, the record is devoid of any evidence that Washington Gas undertook a good faith effort to comply with the Court's Order. If, in fact, compliance with the underlying Arbitration Decision would create the problems now envisioned by the Company, it is hard to imagine why Washington Gas did not immediately raise these issues with the Union or bring

them to the attention of the Court upon the issuance of its June 29, 2006 Order.  Indeed, it is

difficult to fathom why the Company did not review the impact of the arbitration decision

immediately after it was issued by Arbitrator Arrigo.[1]

 In WMATA, this Circuit explained that in order to determine the possibility of complying

with a court order there must be an "evaluation of good faith efforts to comply."  WMATA, 531

F.2d, at 621. When such an evaluation is conducted in this case, it becomes clear that

Washington Gas undertook no effort to comply with the Court's Order to any degree.  Indeed, the

fact that the Company waited until it was confronted with contempt proceedings to consider how

to comply with the Court's Order provides a perfect example of the ongoing bad faith exhibited

by Washington Gas from the beginning of this enforcement action and throughout the arbitration

process.

 The Company's bad faith is further demonstrated by the outrageous manner in which it

characterizes the requirements of Arbitrator Arrigo's decision, without taking any steps to

consult with the Union and determine whether the parties could agree on how the Arbitration

Decision was to be implemented.   For instance, contrary to the Affidavit of Steve Savage - the

Company's Manager of Labor Relations - the Arbitration Decision does not require the Company

to demote individuals who had previously worked as Inspectors but have since moved on to

different jobs.  Rather, the Arbitration Decision directed that the Company "reverse its decision

---

 [1]The Company argues at one point that implementation of the June 29th Order enforcing
the underlying Arbitration Decision "impacts structural changes that have been undertaken by the
Company over a period of two years, and cannot be undone over a period of weeks."  See
Response to Order to Show Cause, at 5.  Assuming this is a truthful statement, such a claim begs
the question of why the Company did not immediately seek to vacate or modify the Arbitration
Decision if its implementation would have such an adverse impact upon the Company as it now
suddenly claims.

eliminating Inspector classifications and **offer** to all employees removed from the Inspector classifications the opportunity to accept reinstatement to their previous Inspector positions **without loss of seniority or any other employee benefit**." See Arbitration Decision at 22, attached as Exhibit A to Union's Application to Confirm and Enforce Arbitration Award. (emphasis supplied).

After the Company provides the displaced workers with the opportunity to return to their former positions, the Company is directed to "cease diverting traditional Inspector work to supervisory positions and return the traditional Inspector work to Inspectors." Id. Thus, if certain individuals decide not to return to their former positions, the Company is still obligated to keep the Inspector work within the bargaining unit. Therefore, if an individual did not wish to go back to his Inspector position, the Company could not continue to fill that position with someone outside the bargaining unit but must ensure that this work is being performed by bargaining unit personnel.

If Mr. Savage had taken the time to read the Arbitration Decision and consult with the Union, perhaps he would have had a more accurate understanding of the Arbitration Decision than the self serving interpretation that he provides in his Affidavit. Moreover, assuming Mr. Savage did review the Arbitration Decision at the time it was issued and reached his conclusion as to how it was to be implemented, he should have immediately raised those issues with the Union.[2] Instead, like the rest of Washington Gas management, he apparently took no action with

_____

[2]At the very least, based upon Mr. Savage's interpretation of the Arbitration Decision, it would be reasonable for him to raise these issues with Washington Gas officials immediately after the decision was rendered so that the Company could seek to vacate the decision. Of course, no such action was taken by the Company.

respect to the Arbitration Decision until prodded to by the Union and this Court.  Given the fact

that Mr. Savage failed to raise any of the compliance concerns until Washington Gas was

confronted with contempt proceedings, little, if any, weight should be given to the statements

contained in his affidavit.

The statements contained in the Affidavit provided by Tracy L. Townsend - the Director

of Construction for Washington Gas - are even more troubling and certainly cannot provide any

justification for the Company's failure to abide by the Court's June 29, 2006 Order.  In her

affidavit, Ms. Townsend claims that it is difficult for the Company to comply with the Order and,

in turn, the Arbitration Decision because the Company has made structural changes in its

operations over the last  two years (see Townsend Affidavit, at ¶¶ 3-5) and much of the

Inspectors' work is now "duplicative of work performed by other parts of the organization and/or

contractors."  Id. at ¶ 7.

Of course, it is precisely because of this restructuring that the Union initially brought its

grievance which eventually led to the Arbitration Decision that directs the Company to cease

diverting Inspector work to non-bargaining unit individuals.   Essentially, Ms. Townsend is

saying the Company cannot comply with the Arbitration Decision because to do so would upset

the Company's current operations - despite the fact that the current operations have been found to

be a violation of the collective bargaining agreement with the Union.  The Union cannot imagine

a more circular or Orwellian rationale to justify the Company's noncompliance.

In short, from the time the underlying Arbitration Decision was issued on December 31,

2005, the Company has made no good faith effort to either comply with that Decision or

demonstrate why it could not comply.  The Company's failure to act in good faith has carried on

throughout the litigation of this case and is evidenced by its complete failure to take any affirmative steps towards compliance with this Court's June 29, 2006 Order.  The self serving arguments and statements contained in the Company affidavits fall well short of the "good faith efforts to comply" discussed in WMATA.  Accordingly, the Union requests that the Company be found in contempt for its failure to comply with the Court's June 29, 2006 Order.  The Union further requests that a daily fine be assessed against the Company in an amount equal to the amount of daily wages that the 28 Inspector positions would generate.[3]  Such an amount would satisfy the dual remedial purpose of a civil contempt penalty.  See International Union, UMWA v. Bagwell, 512 U.S. 821, 829 (1994) (A civil contempt penalty is properly considered remedial and not punitive if it either "coerces the defendant into compliance with the court's order, [or] . . . compensates the complainant for losses sustained."

## II.    THE COMPANY'S REQUEST FOR A STAY SHOULD BE DENIED

The Company's motion to stay execution of the Court's June 29, 2006 Order pending appeal should be denied because Washington Gas can neither demonstrate a substantial likelihood of success on the merits nor can the Company establish that it will suffer irreparable harm absent a stay.  Moreover, any public interest consideration must weigh in favor of immediate enforcement of the Court's Order given the fact that prior to their positions being eliminated, the Inspectors were responsible for ensuring that outside contractors hired by the Company were safely performing their work.  By the Company's own admission, the work of outside contractors is presently being inspected by other outside contractors.  See Townsend

---

[3]Each inspector position would pay at a rate of $26.44 per hour.  Thus, for an eight hour day, the Inspector position would generate wages of $211.52.  That amount generated for 28 positions would equal a daily wage amount of $5922.56.

Affidavit at ¶ 7.  Not only is such an arrangement an ongoing and blatant violation of the Arbitration Decision which directed the Company to cease diverting Inspector work, but such a policy of ceding contractor oversight to other outside contractors raises serious questions concerning public safety.

The Union submits that the controlling legal issue involved in the Company's appeal is well settled and not subject to significant dispute.  The question presented on appeal involves whether the Company can raise an affirmative defense to the Union's enforcement action despite the fact that the Company failed to challenge the arbitration decision within the statutorily allowed 90 day period.  As this Court recognized during the June 29, 2006 hearing "the case law is utterly clear" and prohibits such an action.  In Local Union 26, International Brotherhood of Electrical Workers v. CWS Electric, et al, 669 F. Supp. 495, 498 (1986), the Employer sought to engage in the same procedural tactic as Washington Gas.  There, Judge Oberdorfer concluded that the Company's attempt to challenge an enforcement action after it had failed to timely move to vacate the underlining arbitration decision was "a clear departure from the weight of authority which holds that no defenses may be raised in enforcement suits which are brought after the limitations period for motions to vacate has past."  Id.  See Service Employees International Union, Local 36 v. Office Center Services, Inc., 670 F.2d 404, 410-412 (3d Cir. 1982); Chauffeurs Teamsters, Warehousemen and Helpers, Local 135 v. Jefferson Trucking, Co., 628 F.2d 1023, 1027 (7th Cir. 1980); Sheet Metals Workers National Pension Fund v. Metals and Machining Fabricators, Inc., 622 F. Supp. 116, 118 (D.D.C. 1985).

Given that the weight of authority is heavily balanced against Washington Gas and its position on appeal, the Company simply cannot demonstrate a substantial likelihood of success.

9

In <u>Washington Metropolitan Transit Commission v. Holiday Tours, Inc.</u>, 559 F.2d 841, 844-45

(1977), the D.C. Circuit explained that when a request for a stay pending appeal is made to the

district court "[w]hat is fairly contemplated is that tribunals may properly stay their own orders

when they have ruled on an admittedly difficult legal question and when the equities of the case

suggest that the status quo should be maintained." As previously stated, this Court has already

determined that the legal question at issue here is "utterly clear" and, moreover, that when the

Company failed to challenge the arbitration decision within the 90 day period provided by statute

"they proceeded at their own risk." <u>See</u> Transcript of June 29, 2006 Hearing, at 10. This Court

went on to explain that such a strategy was "ill advised and very risky." <u>Id</u>. at 11. Finally, the

Court noted that based upon the case law relied on by the Union in support of its position "the

defendant had the obligation under the law to move to vacate [the arbitration] award within 90

days." <u>Id</u>. As such, the Company's request for a stay should be denied because when the Court

issued its June 29, 2006 Order confirming and enforcing the underlying Arbitration Decision it

was not confronted with a "difficult legal question." Rather, the June 29, 2006 Order stands as

the most recent example in a long line of case law that prohibits Employer's, like Washington

Gas, from contesting an arbitration enforcement proceeding after failing to timely move to vacate

or modify the underlying Arbitration Decision.[4]

------------------------------------------------------------

[4]<u>See</u> <u>Int'l Brotherhood of Elec. Workers, Local Union No. 969 v. Babcock & Wilcock</u>,
826 F.2d 962, 966 (10th Cir. 1987) ("the courts have uniformly held that a defendant's failure to
move to vacate the arbitration award within the prescribed time period precludes it from seeking
affirmative relief in a subsequent action to enforce the award"); <u>Local 802, Associated Musicians
of Greater N.Y. v. Parker Meridien Hotel</u>, 145 F.3d 85,89 (2d Cir. 1998) (same); <u>Int'l.
Longshoremen's Ass'n. v. Cataneo Inc.</u>, 990 F.2d 794, 800 (4th Cir. 1993)(a party may not "sit
back with impunity until faced with a motion in federal court and assert a defense it could have
raised . . . in a [timely] motion to vacate"); <u>Occidental Chem. Corp. v Int'l. Chem. Workers
Union</u>, 853 F.2d 1310, 1317 (6th Cir. 1988)(recognizing settled rule that "objections that might

Finally, if the Court were to engage in a balancing of the equities test, the outcome of such a test would squarely fall in favor of the Union's position seeking immediate compliance with the June 29, 2006 Order. First, the Company's failure to proceed in good faith from the onset of the underlying arbitration proceeding weighs heavily against its present request for a stay. Moreover, despite its conclusory statement that the public interest would be served by granting a stay, the Company provides no evidentiary support for this position. The Union submits that the public interest would be better served if the Company were required to comply with a valid court order. This is particularly true given the fact that the June 29, 2006 Order would ensure that the work performed by outside contractors hired by Washington Gas would be subject to review by qualified and experienced Inspectors rather than other outside contractors or supervisory personnel. See Townsend Affidavit at ¶ 7. [5]

---

have formed the basis for a timely action to vacate an award may not be raised as defenses in an action to confirm the award after the limitations period for an action to vacate has expired"); Plumbers' Pension Fund, Local 130, U.A. v. Domas Mech. Contractors, Inc., 778 F.2d 1266, 1268 (7th Cir. 1985)("since the company's defense to the award's enforcement involves an attack on the award's validity, an attack the company could have made in an action to vacate the award," the company was precluded "from seeking affirmative relief in a subsequent action to enforce the award").

[5]The Company's suggestion that it would suffer irreparable harm if the June 29, 2006 Order were immediately enforced is based upon its irrational claim that compliance would force it to abandon changes in its operation that took two years to implement even if those changes have resulted in a diversion of bargaining unit work which was the subject of the underlying Arbitration Decision. If either party is subject to irreparable harm, it is the Union and its members through the damage inflicted upon the bargaining unit by the Company's continued failure to honor its obligations under the Arbitration Decision.

## CONCLUSION

For the reasons set forth above, the Company's request for a stay of the Court's June 29,

2006 Order should be denied.  In addition, the Court should find the Company in contempt for

failing to comply with its June 29, 2006 Order.[6]


Respectfully submitted,


_____/s/ Mark J. Murphy_____
Mark J. Murphy, Bar No. 453060
Marc L. Wilhite
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, DC 20036
(202) 783-0010
(202) 783-6088 - fax

Counsel for Teamsters Local Union Number 96


Date:   August 7, 2006

---

[6]The Company has not taken substantive issue with respect to the Union's Application for Attorneys' Fees and Costs, other than to ask that this Application also be stayed pending appeal. Because the Company's request to stay the June 29, 2006 Order is without merit, the Union requests that the Court grant its Application for Attorneys' Fees and Costs and allow it to submit an additional Application to cover the fees and costs associated with the pending matter.