IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEAMSTERS LOCAL UNION
NUMBER 96, affiliated with the
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
2120 Bladensburg Rd., N.E., # 106
Washington, D.C. 20018

                               Plaintiff,

v.                                          Case No. 1:06-cv-928 (ESH)

WASHINGTON GAS LIGHT COMPANY,
6801 Industrial Rd.
Springfield, VA 22151

                               Defendant.

## SUPPLEMENTAL AFFIDAVIT OF STEPHEN SAVAGE

I, Stephen Savage, being first duly sworn upon my oath, hereby state as follows:

1.     I am over the age of 18, a citizen of the United States, and am competent to testify to the matters contained herein.

2.     I am currently the Manager of Labor Relations and Human Resources Compliance for Washington Gas Light Company ("Washington Gas" or the "Company") and, as such, have been involved in the Company's response to the June 29, 2006 Order issued by U.S. District Court Judge Ellen Segal Huvelle in U.S. District Court for the District of Columbia Civil Action No. 1:06-cv-928 (ESH), granting Teamsters Local Union No. 96's ("Teamsters Local 96) application to confirm and enforce the December 31, 2005 Arbitration Award issued by Arbitrator Salvatore Arrigo.

3.     After the June 29 Order was rendered, Washington Gas responded by

1

convening a series of meetings to discuss the impact of the Court's Order and the challenges the Company would face in implementing the Arbitrator's decision. Representatives from the Company's legal, labor relations and operations departments met and began a careful analysis of Arbitrator Arrigo's Award. The Arbitrator recognized the Company's right to eliminate the Inspector classifications, but concluded that Washington Gas violated the contract by, "transferring the work of Inspectors to supervisory personnel on February 9, 2005, and at all times thereafter." The Arbitrator also directed the Company to "reverse its decision eliminating Inspector classifications and offer to all employees removed from the Inspector classifications the opportunity to accept reinstatement to their previous Inspector positions without loss of seniority or any other employee benefit and be made whole." Finally, the Arbitrator directed the company to "cease diverting traditional Inspector work to supervisory positions and return the traditional Inspector work to Inspectors."

4. In analyzing implementation of the Award, we reviewed the applicable provisions of the existing collective bargaining agreement between Washington Gas and Teamsters Local 96. Within the framework of the Arbitrator's Award, we carefully analyzed the actual harm and negative impact on the Company and, potentially, the employees themselves that would result from immediately reinstating approximately 26 employees to the job classification that had been eliminated. The analysis included discussions regarding how Inspector job duties have been historically shared with other employee groups, and how those duties are now being, or are capable of being, performed.

5. We also recognized that significant parts of the former Inspectors' work are

2

now being done through automation and outsourcing, and that such options were consistent with management's rights under the labor contract between Washington Gas and Teamsters Local 96. Article XXIII [Outside Contract Work] of the parties' labor contract provides, in pertinent part, that "…the Company has the right to have work done by outside contractors. However, work performed by employees covered by the Agreement, will not be contracted out if it will result in the layoff of full-time employees who normally perform such work." At no time did the Company lay off any Local 96-eligible employee in connection with decisions to outsource the work of the former Inspectors. Additionally, we considered Article V [Functions of Management] of the parties' collective bargaining agreement which recognizes that "the supervision and control of all operations of the Company and the direction of all working forces…shall be vested solely in the Company." This broad management rights language enables Washington to automate any part of its operations where such automation, in the Company's sole discretion, can be done economically and can offer operating efficiencies. In this context, and given the reality of the Company's operations before and since December 2005, Washington Gas representatives identified and discussed the significant challenges we faced in complying with the Arbitrator's Award. Company representatives also discussed legal strategy and options, including appealing the June 29 Order, at these meetings.

6. The first meeting regarding the June 29 Order in which I was involved, took place on Tuesday, July 11, 2006, the first day after I returned from vacation. I was advised by Human Resources Personnel, however, that during my absence, the June 29 Order had been under discussion internally. The July 11 meeting took place at the

Company's Office of General Counsel in Washington, D.C. Beverly J. Burke, *Washington Gas General Counsel*, William Zeigler, *Vice President of Human Resources and Organization Development*, Mark Krusec, *Director of Human Resources*, Robert Clayton, *outside counsel*, Andrea Adams, *outside labor consultant*, and I participated in the meeting.

7. On July 12, 2006, the next day, Mr. Krusec requested that a subsequent meeting be scheduled for the following week with representatives from the Company's Construction Department. Specifically, Mr. Krusec wanted to include Tracy Townsend, *Director of Construction,* and Douglas Staebler, *Division Head – Construction*, in discussions regarding the implementation of the June 29 Order. We planned to continue the discussion of the June 29 Order while obtaining the necessary input from these department representatives. Later that day, Mr. Krusec and I then departed for Frederick, Maryland to attend labor contract negotiations in Frederick County, MD with the International Brotherhood of Electrical Workers, Local 1900 ("IBEW"). The labor contract with IBEW was set to expire on July 31, 2006. We ultimately met in separate bargaining sessions with IBEW on the following days in July, 2006: 12, 14, 17, 19, 24, 25, 26, 27.

8. Despite the fact that we were involved in complex labor negotiations with IBEW, Washington Gas stakeholders continued to meet to discuss the Arbitration Award and the District Court's June 29 Order. The next formal meeting to discuss implementation of the Order was scheduled for July 21, 2006.

9. However, between July 17, 2006 and July 19, 2006, William Gibson, President of Teamsters Local 96, left me voicemail messages, inquiring whether I had

received a certain letter from him. Because I was in negotiations, I was unable to return his call immediately. On or about July 18, 2006, I did see his letter for the first time and immediately forwarded a copy of the letter to the Company's Office of General Counsel, as well as to internal stakeholders in the Human Resources Department.

10. Between on or about July 19 and July 20, 2006, I returned Mr. Gibson's phone call and acknowledged receipt of his letter. I advised him that I had forwarded his letter to the Office of General Counsel for Washington Gas. During our brief telephone conversation, Mr. Gibson never sought to have any substantive conversation regarding the June 29 Order.

11. On July 21, 2006, I attended another meeting regarding the implementation of the June 29 Order. The July 21 meeting took place in Mr. Krusec's office at the Springfield, Virginia Operations Center (SOC) of Washington Gas. The purpose of this meeting was to continue discussions regarding the requirements of the June 29 Order and its impact on Washington Gas operations. In attendance at this meeting were: William Zeigler, Mark Krusec, Tracy Townsend, and Douglas Staebler. At the July 21 meeting, we discussed requirements of the Arbitrator's Award with particular focus on its impact on the Company's operations, a review of the current status of 28 former Inspectors and how tasks previously performed by Inspectors are now being done.

12. Immediately after that July 21 meeting, I received word that my mother had been hospitalized and I left to go to the hospital. My mother passed away on July 29, 2006, and I was involved in making funeral arrangements and resolving other issues regarding my mother's estate. I returned to work briefly on August 3 and 4, but was out of the office on bereavement leave with my family from August 8 through August 14,

2006.

13.  On or about August 16, 2006, Mr. Krusec scheduled a meeting for Tuesday, August 22 to continue discussions regarding the June 29 Order. On August 22, 2005, a meeting was held at the SOC to further develop a strategy to implement the June 29 Order.  Thomas Bonner, Vice President - Engineering and Construction, Ralph Fisher, Division Head, Operations, William Zeigler, Mark Krusec, Tracy Townsend, Douglas Staebler, Andrea Adams, and I all attended the meeting.  During the meeting, the various stakeholders continued to discuss the impact of the Arbitrator's decision and the June 29 Order.  We also discussed and explored the possibility of resolution of this matter, in accordance with the direction of the District Court.  The parties were directed by the Court to engage in resolution discussions before the contempt hearing then scheduled for September 7, 2006.

14.  On August 24, 2006, I met with Mark Krusec,  Tracy Townsend, Chuck Whitley, *Manager of New Business Construction*, and Jack Morrow, *Manager of New Business Construction*.  During this meeting, we performed a line-by-line review of the former Inspector job descriptions.  This led to the formatting of a draft of color-coded job descriptions.  We completed a draft of the color-coded job descriptions on or about August 28, 2006.  We understood that the Arbitrator directed Washington Gas to stop "diverting" work of the former Inspectors to Washington Gas supervisors.  In an attempt to resolve this matter as well as to prepare to implement the Arbitrator's Award, we needed to know what could be "stopped" by carefully examining how, and by whom, former Inspectors' work is presently being done.  Tracy Townsend and I completed a draft of the color-coded job descriptions on or about August 28, 2006. As a result of our

analysis of the relevant job descriptions, we determined that only a small piece of the former Inspectors' job duties and responsibilities was now being performed by management employees. That one task was the "random check of patches (one year old) to see how the area is holding up." We determined that such limited amount of work would support only one position in the Inspector classification.

15. On September 5 and 6, 2006, Tracy Townsend and I met again with outside counsel for two purposes: 1) to prepare for the contempt hearing, and 2) to finalize and implement the Company's implementation plan for the Arbitrator's Award, and thus the June 29 Order.

16. Consistent with these implementation efforts, on September 5, 2006, Washington Gas sent Teamsters Local 96 a copy of the "Washington Gas Light Company Implementation Plan for Compliance with the Award in Grievance No. 2005-10" (Implementation Plan), signed by me. We also attached to the Implementation Plan an election form offering each former Inspector the opportunity to be reinstated to the former Inspector classification(s). (Copies of the Implementation Plan and cover letter to Inspectors are attached as Exhibits 1 and 2 to this Affidavit). Furthermore, I know that there have been additional communications between the Union, Washington Gas Counsel and outside counsel regarding the Implementation Plan. (See copies of correspondence between Local 96 and counsel from September 6, 2006 through September 11, 2006, attached as Exhibit 3 to this Affidavit). Additionally, on September 6, 2006, Washington Gas prepared mailings to 26 of the former Inspectors. Those mailings, which included the aforementioned Implementation Plan and the accompanying election form, were, to the best of my knowledge, mailed on the morning of September 7, 2006 through inter-

office mail for existing employees and via regular first-class mail for retired former Inspectors. Two (2) former Inspectors did not receive the mailings. One was deceased and one had previously been discharged for cause.

17. The Implementation Plan / Election Form requests that former Inspectors respond to Washington Gas by September 22, 2006. As provided in the Implementation Plan, "WG will select the one candidate for the available *Inspector-Contractor Work* position based upon the seniority ranking of all of the former Inspectors who accept the offer of reinstatement to their former classification." In the event that no former Inspector accepts the offer of reinstatement, Washington Gas will post for one vacancy in the *Inspector-Contractor Work* classification and will fill such position, in accordance with applicable provisions of the labor contract, on or about September 22, 2006.

I certify, under the pains and penalties of perjury, that the above statements are true and correct to the best of my knowledge and information.

_____
Stephen Savage

Subscribed and sworn to this 14th day of September, 2006, before a Notary Public for the County of Fairfax, Va.

_____
Notary Public

My Commission Expires:

August 31, 2009

8

WDC 390296v.1