IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEAMSTERS LOCAL UNION
NUMBER 96, affiliated with the
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
2120 Bladensburg Rd., N.E., # 106
Washington, D.C. 20018

                Plaintiff,

v.                              Case No. 1:06-cv-928 (ESH)

WASHINGTON GAS LIGHT COMPANY,
6801 Industrial Rd.
Springfield, VA 22151

                Defendant.

## SUPPLEMENTAL AFFIDAVIT OF TRACY L. TOWNSEND

    I, Tracy L. Townsend, being first duly sworn upon my oath, hereby state as follows:

    1.    I am over the age of 18, a citizen of the United States, and am competent to testify to the matters contained herein.

    2.    I am currently the Director of Construction for Washington Gas Light Company ("Washington Gas" or the "Company"), located at 6801 Industrial Road, Springfield, VA 22151. As the Director of Construction, my responsibilities include the management and oversight of the New Business and Replacement Construction departments for Washington Gas, Frederick Gas and Shenandoah Gas as well as the Construction Support Services department for Washington Gas. These departments are responsible for the sales, construction planning and engineering/design, project

management, construction oversight, contractor management/administration and back-end reporting in conjunction or support of the New Business and Replacement Construction activities performed by Washington Gas. I have also been involved in the Company's response to the June 29, 2006, Order issued by U.S. District Court Judge Ellen Segal Huvelle in the U.S. District Court for the District of Columbia Civil Action No 1:06-cv-928 (ESH), granting Teamsters Local Union No. 96's ("Teamsters Local 96") application to conform and enforce the December 31, 2005, Arbitration Award issued by Arbitrator Salvatore Arrigo.

3. Beginning in late 2003 and ending in the Fall of 2005, the Company's operational Gas Transportation Business Unit went through a series of reorganizations in support of its strategic business initiatives. The Company's goal was to close the then existing gap between it and peer companies as it related to the cost/hook-up. Essentially, Washington Gas wanted to reduce the "cost per hook-up" (or the cost associated each time a new service is installed), by refining construction processes and implementing other process improvement initiatives focused on reducing costs of the overall construction process.

4. One of the key initiatives in accomplishing this goal was the introduction of a Work Management Solution replacing many stand-alone legacy systems and automating manual processes. The Work Management Solution initiative further refined and automated the construction paperwork/workflow. As part of the Work Management Solution initiative, Washington Gas implemented a software system called the Work Management Information System ("WMIS"). WMIS allows users of the system to manage various tasks in the construction process. In addition, WMIS "manages" the

workflow of construction projects and helps ensure that the process continues in a timely manner from step-to-step until completion.

5. Next, aided by the functionality of the system known through its functional specifications and product review, the "to-be" process was created. With the "to-be" process mapped out, management then began to plan for the requisite organizational changes. One of these changes included the restructuring of the construction area of the Business Unit from its organization around geographical areas to reorganizing the Unit to revolve around work type. Subsequently, Washington Gas created the New Business and Replacement Construction departments. On information and belief, in conjunction with this re-organization, 23 management positions were eliminated by the Business Unit in the Centralized Administration, Business Analysis, Construction, Corporate Engineering, Field Operations and Operations Support departments. Anticipating and knowing the functionality of WMIS through testing and implementation-readiness workshops, management next set about refining processes, taking into consideration the streamlining and elimination of certain activities due to automation/new technology and preparing the parallel staffing profile needed for the new "to-be" work environment.

6. On information and belief, the WMIS implementation was also being planned to be in full compliance with the Company's Internal Audit guidelines and the Company's need to comply with Section 404 of the Sarbanes-Oxley Act of 2002, which mandates that corporations have appropriate controls in place to mitigate risk as it relates to financial transactions.

7. The resulting process changes gave rise to the ability to change the role of the field manager, Section Leader Construction, a position previously in the System

Expansion Department. On information and belief, management revised this position to include more direct and enhanced responsibilities around the fiscal aspects of the construction projects with input into the business case evaluation through cost estimating, authorization of design and field changes, and pay item approval. On information and belief, after careful review and consideration of the safety and quality of the Company's outside construction contractors' work, the fact that the contractors' work was monitored through multiple layers of oversight both internal to Washington Gas as well as through jurisdictional oversight, and the continued evolvement of Washington Gas's outsourcing of tasks to the same contractors, Washington Gas determined that the Inspector – Contractor Work and Inspector Pre-Installation positions were surplus to the Company's business needs. On information and belief, as part of this overall restructuring, twenty-eight (28) positions were eliminated in the Inspector-Contractor Work and Inspector Pre-Installation classifications.

8. On July 18, 2006, I received notice from Mark Krusec, *Director of Human Resources,* that a meeting was being convened on July 21, 2006, to discuss the District Court's June 29 decision enforcing Arbitrator Arrigo's Award. (See Lotus Notes meeting Invitation attached as Exhibit 1 to this Affidavit).

9. On July 21, 2006, I attended a meeting regarding the implementation of the June 29 Order. The July 21 meeting took place in Mr. Krusec's office at the Company's Springfield, Virginia Operations Center (SOC). The purpose of this meeting was to continue discussions regarding the requirements of the June 29 Order and its impact on Washington Gas, specifically its Engineering and Construction Business Unit. In attendance at this meeting were: William Zeigler, *Vice President of Human Resources*

*and Organization Development*, Mark Krusec, Stephen Savage, *Manager of Labor Relations and Human Resources Compliance*, and Douglas Staebler, *Division Head of Engineering and Construction*. At this meeting, we discussed requirements of the Arbitrator's Award with particular focus on the impact of the June 29 Order on the Business Unit's operations.

10. On August 17, 2006, I received another notice from Mark Krusec that a meeting was being convened on August 22, 2006, to further discuss the District Court's June 29 decision enforcing Arbitrator Arrigo's Award. (See Exhibit 1).

11. On August 22, 2006, a meeting was held at SOC to further develop a strategy to implement the June 29 Order. Thomas Bonner, *Vice President of Engineering and Construction*, Ralph Fisher, *Division Head of Operations*, William Zeigler, Mark Krusec, Stephen Savage, Douglas Staebler, Andrea Adams, *labor relations consultant,* and I all attended the meeting. During the meeting, the various stakeholders continued to discuss the impact of the June 29 Order.

12. On August 24, 2006, I met with Mark Krusec, Stephen Savage, Chuck Whitley, *Manager of New Business Construction*, and Jack Morrow, *Manager of New Business Construction*. During this meeting, we performed a line-by-line review of the former Inspector job descriptions. This led to the formatting of color-coded job descriptions by Steve Savage as 1st draft. We completed a draft of the color-coded job descriptions on or about August 28, 2006.

13. Attached to this Affidavit as Exhibits 2 and 3 are the final color-coded job task reviews of the former Inspector Pre-Installation and Inspector-Contractor Work classifications prepared by me, in conjunction with the other previously referenced

5

Construction Managers and Human Resources/Labor Relations management. This review was completed based on institutional knowledge and the understanding of both historical and current work practices known to construction management, including myself, and Human Resources and Labor Relations in the ordinary course of the Company's business.

14. The review demonstrates that, since the original decision to eliminate the Inspector classifications, the work previously performed by the Inspector classifications is divided among: (1) those tasks that have been and continue to be outsourced to contractors; (2) those tasks that were historically shared by multiple parties, including management, other union-eligible employees, and contractors, and continue to be performed by those parties, and (3) the tasks that were automated as part of the Company's implementation of WMIS. The chart below summarizes the analysis of how the responsibilities of the Inspector-Contractor Work and Inspector Pre-Installation have been performed.

| Job Position | Outsourced Tasks | Shared Tasks | Tasks Via Automation |
|---|---|---|---|
| Inspector-Contractor Work Position Responsibilities | • Pre-release & Release including: job site readiness inspection, grade certificate obtainment, releasing of job, producing special instructions for job packet for crew foreman;<br>• Pre-installation including: scheduling, coordination with builders/developers customers and other utilities, installing services per Company standard, dealing with | • Pre-Release and Release including: communicating regarding ownership and limits of property and reconciling against code requirements and Company standards and previously obtained Company records, determining needs for crossings, vents, easements, PUEs/CSEs, records determination, coordinating with Company personnel on design and permit process, resolving pre-design issues, conferring with multiple parties regarding service needs, documenting Company facilities if needed; | • Up-front processing of jobs including receipt of site plans, road plans, etc.;<br>• Releasing of the job;<br>• Handing off of the job packet to the contractor including special conditions of services;<br>• Scheduling of work;<br>• Paving process including: communicates via design cut size from installation contractor, allows reconciliation such that construction contractor's cut backs are kept to minimum, |

| Job Position | Outsourced Tasks | Shared Tasks | Tasks Via Automation |
|---|---|---|---|
| | private utilities, dealing with customers/other property owners regarding protection of their property during build;<br>• Installation including: inspecting pipe at installation, pressure testing pipe for installation, job site housekeeping;<br>• Post Construction including: hanging gas installed tags, removal of materials and jobsite clean-up;<br>• Paving/construction including: restoration, inspection of restoration, documentation, temporary patch installation, pavement breakage and restoration per Company standards, materials quality inspection;<br>• Other Duties including: Tie-in coordination;<br>• Authorizations including: backfilling per Company standards, paving of needed surfaces, materials quality inspection; and<br>• Documentation including return slips, MSRs, DPRs, Change Orders and as-built documentation. | • Pre-Installation including: coordinating joint trench opportunities, interacting with plumbing contractors for extended meter supply lines/meterbank applications, coordinating design changes;<br>• Installation including: inspecting work for compliance with jurisdictional requirements and Company standards, observing installation/ replacement abandonment/ maintenance of Company facilities, inspecting/directing repairs for broken lines including required documentation, working with Auditors and Contractors to ensure compliance and issuing resolution, field training new inspectors;<br>• Post Construction including: investigates and resolved complaints, performs Builder Surveys (obsolete);<br>• Paving/Restoration including: knowledge of restoration requirements, pre-inspections, customer meetings, post inspections, random core bore inspections, restoration compliance inspections<br>• Other Duties including: coordinating welding support and tie-in support, problem solving for field issues, performing relights, confirming abandonment status, locating gas facilities, being onsite when house piping is being altered;<br>• Authorizations including: stopping unsafe work, directing removal/repair of faulty work, approving quantities on pay sheets;<br>• Documentation including: completing inspection checklists, reviewing invoices, | provides reconciliation such that only WG patches are being done, measure finished patches when possible, provides reconciliation such that variance between design and finish patches when billed are known, allows reconciliation to ensure cut backs were kept to a minimum, checks design vs. as-built to ensure billed quantities are accurate, records minor changes in Contractor's paving order such as increase extent of cut back, documents quantities on pay sheets;<br>• Set-up orders for meter installations; and<br>• Documentation responsibilities including: stock slips for materials issued, cut tickets for paving repairs, Field Orders, Change Orders, Pay Sheets, and invoices. |

| Job Position | Outsourced Tasks | Shared Tasks | Tasks Via Automation |
|---|---|---|---|
| | | completing various forms around construction activities. | |
| **Inspector Pre-Installation Position Responsibilities** | • Job site readiness inspection;<br>• Grade certificate obtainment;<br>• Releasing of job;<br>• Producing special instructions for job packet for crew foreman;<br>• Scheduling of jobs and being responsive to calls on schedule dates; and<br>• Coordination of meter location with builder/customer | • Conferring with customer regarding meter location and reconciling against jurisdictional requirements and Company standards and making any changes needed;<br>• Documenting Company facilities if needed;<br>• Preparing job estimates<br>• Conferring with multiple parties regarding service needs;<br>• Coordinating work around other utility installations, grading needed, crossings/sleeves installed, and other obstructions removal;<br>• Reporting service line footage as it relates to sizing;<br>• Communicating regarding ownership and limits of property;<br>• Problem solving for field issues;<br>• Coordinating with Company personnel on permit process;<br>• Confirming abandonment status;<br>• Locating gas facilities;<br>• Checking facilities for damage/exposure; and<br>• Obtaining Company records. | • Releasing of the job;<br>• Handing off of the job packet to the contractor including special conditions of services;<br>• Set-up orders for meter installations; and<br>• Provides information required for permit process. |

15. Washington Gas has had outsourcing agreements with the following contractors since on or before January 2005: (1) NPL Construction Company; (2) Lineal Industries; (3) Cable and Conduit Construction, Inc.; (4) D.A. Foster Trenching Company, Inc.; (5) Flippo Construction Company, Inc.; (6) Eastern Contracting Corporation; and (7) Fort Myer Construction Company.

16. Because the work previously performed by persons in the Inspector-Contractor Work and Inspector Pre-Installation classifications has either been replaced by new automated processes or outsourced to contractors further aided by the automation, outsourced to contractors, or is work that has historically been performed by other union-eligible positions in Local 96, other unions, contractors and/or management positions, on information and belief, the Company determined that it is impossible and impractical to return all twenty-eight 28 persons to the eliminated classifications.

17. On August 30, 2006, I had a meeting via teleconference with Beverly Burke, Thomas Fryer, *Director of Replacement Construction,* and Douglas Staebler to discuss Teamsters Local 96's demands with respect to resolution of the matter.

18. On September 5 and 6, 2006, Stephen Savage and I met with outside counsel for two purposes: 1) to prepare for the contempt hearing, and 2) to review, finalize and implement the Company's Implementation Plan for the Arbitrator's Award, and thus the June 29 Order.

      I certify, under the pains and penalties of perjury, that the above statements are true and correct to the best of my knowledge and information.

_____
Tracy L. Townsend

Subscribed and sworn to this 14th day of September, 2006, before a Notary Public for the County of Fairfax, Va.

_____
Notary Public

My Commission Expires:

August 31, 2009
_____

WDC 390610v.2