## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **TEAMSTERS LOCAL UNION NO. 96 ,**<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br><br>**WASHINGTON GAS LIGHT COMPANY,**<br><br>                    **Defendant.** |

Case No. 06-CV-0928 (ESH)

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A CONTEMPT FINDING AGAINST DEFENDANT AND REQUEST FOR REMEDIES FOR FAILURE TO COMPLY WITH ARBITRATION AWARD

Pursuant to the Court's September 7, 2006 Order, Plaintiff Teamsters Local Union No. 96 ("Local 96" or "Union") hereby submits its memorandum of law in support of its request for a finding of civil contempt against Defendant Washington Gas Light Company ("Washington Gas" or "Company") for its failure to comply with the terms of a December, 2005 Arbitration Award. The Union also sets forth below the remedies to which it is entitled as a result of the Company's failure to comply with the Arbitration Award and this Court's June 29, 2006 Order enforcing that Award.

### INTRODUCTION

This case involves the Union's effort to obtain compliance from the Company concerning an Arbitration Award that is now more than nine months old. From the beginning, the Company has consistently taken an obstructionist stance, while demonstrating a degree of corporate arrogance that has now culminated in its most recent submission to this Court in which

Washington Gas suggests that it should not be held in contempt of the Court's June 29th Order because that Order - confirming and enforcing the nine month old Arbitration Award - did not tell the Company when it needed to comply or what it needed to do in order to comply.

Such feeble excuses are more likely to be offered as a half-hearted, offhand defense to a missed homework assignment. That the Company raises them in federal court to defend against a finding of contempt should, nevertheless, come as little surprise given the Company's past conduct in this case. Such conduct began - approximately one week before the scheduled Arbitration hearing - with the Company's attempt to fire the jointly appointed Arbitrator. The Company then refused to attend the Arbitration hearing and remained intractably defiant until the Union filed its enforcement action. Even then, after this Court issued its June 29th enforcement Order, the Company chose to embrace evasive tactics by twice seeking - and failing - to obtain a stay of the June 29th Order.

The Company now suggests that this Court should not issue a finding of contempt based upon its abrupt, eleventh hour response to the Arbitration Award issued on December 31, 2005. Such a response, occurring one day prior to this Court's scheduled contempt hearing, falls well short of satisfying the clear terms of the Arbitration Award. Moreover, the Company's claim that its last minute action constitutes compliance strains credulity based upon its repeated assertions to both this Court and the Court of Appeals that compliance with the terms of the Arbitration Award - and this Court's June 29th Order enforcing the Arbitration Award - was exceedingly difficult and complex and would impact its operations to such a degree that it would suffer irreparable harm if it were required to comply with the terms of the Award and the June 29th Order.

2

The Arbitration Opinion and Award issued in December, 2005 set forth in concise terms the obligations of the Company.  One crucial aspect of this Award involved an affirmative command by the Arbitrator directing the Company to "cease diverting traditional bargaining unit work to supervisory positions and return the traditional Inspector work to Inspectors."  See Arbitration Award, at 22.  (A copy of the Arbitration Award can be found at Exhibit A of the Union's Application to Confirm and Enforce Arbitration Award.)  In his Opinion, Arbitrator Arrigo explicitly set forth what he considered to be the work that the Company should cease diverting and return to the bargaining unit.  The Company has unquestionably failed to comply with this aspect of the Arbitration Award.

As a result of the Company's failure to return the bargaining unit work, the Company should be held in contempt.  Based upon this finding of contempt, the Union is entitled to a monetary award that adequately compensates it for the losses it has suffered as a result of the Company's contumacious conduct.  In this case, the losses suffered by the Union involve the lost wages attributable to the Inspector work that Arbitrator Arrigo directed the Company to return to the Union's bargaining unit.  Until the Company returns the bargaining unit work as directed by the Arbitrator, the Union is entitled to a monetary award equal to the amount of wages that would have been earned by members of its bargaining unit who would have performed the work.  Simply put, because the Company has failed to return the bargaining unit work as directed by the Arbitrator, a monetary award necessarily becomes an aspect of this Court's enforcement of the Arbitration Award in order to properly compensate the Union and its bargaining unit.

The Company's recent shift in litigation strategy in an effort to demonstrate that the bargaining unit work to be returned amounts to a solitary task and not the two and one half pages

of job duties and responsibilities referenced by Arbitrator Arrigo in his Opinion and Award is

nothing more than a desperate and improper attempt to relitigate issues that have already been

addressed at the Arbitration hearing, in the parties' post-hearing briefs and by the Arbitrator in

his Opinion and Award. Now is not the time, nor is this Court the proper forum for the Company

to raise the contractual issues it seeks to raise with respect to its decision to eliminate the

Inspector classifications.

An Arbitrator has already concluded that the Company could not eliminate these

classifications because the elimination resulted in a diversion of bargaining unit work. The

Arbitrator made clear what he considered to be the improperly diverted work. In so ruling, the

arguments advanced by the Company were rejected by the Arbitrator. This Court is not charged

with the task of conducting a de novo review of the Arbitration Award which is what the

Company seeks. Rather, the Court must simply determined what was required of the Company

and whether it complied with these requirements.

The Company's suggestion that this matter must be referred back to the parties'

grievance/arbitration process is wrong for a number of reasons. First, and foremost, on June 29,

2006, this Court issued an Order directing the Company to comply with an Arbitration Award.

Nearly two and one half months later, it is this Order that the Union is still seeking to enforce. It

is well settled that courts have both an inherent and a statutory power to enforce compliance with

their orders through civil contempt proceedings. See Securities and Exchange Commission v.

Bilzerian, 112 F. Supp.2d 12, 16 (D.D.C. 2000) citing Shillitani v. United States, 384 U.S. 364,

370 (1966), Petties v. District of Columbia, 897 F. Supp. 626, 629 (D.D.C. 1995); SEC v.

Current Fin. Servs., Inc., 798 F. Supp. 802, 806 (D.D.C. 1992); and 18 U.S.C. § 401. As such, a

private labor arbitrator should not be charged with the task of ensuring the Company complies with a judicial order. The Company should be required to answer to this Court for its failure to comply.

Finally, the Company's request for a remand to Arbitrator Arrigo represents the height of hypocrisy given the Company's well documented efforts to entirely ignore the parties' grievance/arbitration process, including its refusal to participate in the underlying arbitration hearing before Arbitrator Arrigo. If this Court were to direct the Union back to the grievance/arbitration process, it would effectively reward the Company's previous efforts to avoid this process by allowing it a second chance to present arguments and open the door to a full blown relitigation over the merits of its decision to eliminate the Inspector classifications.

## BACKGROUND AND PROCEDURAL HISTORY

On December 31, 2005, the Union received a favorable Arbitration Award which upheld a grievance the Union had filed challenging the propriety of a decision by Washington Gas to eliminate two bargaining unit classifications. See Arbitration Award, attached as Tab A to the Union's Application to Confirm and Enforce Arbitration Award. In his decision, Arbitrator Salvatore Arrigo determined, among other things, that the Company's decision to eliminate the two bargaining unit classifications was improper because such an elimination resulted in the diversion of bargaining unit work to supervisors. Id. at 19-20.

As a result of the Company's unlawful conduct, the Arbitrator directed the Company to take certain affirmative action. Specifically, the Arbitrator directed the Company to:

1.    "[R]everse its decision eliminating Inspector classifications";

2.    "[O]ffer to all employees removed from the Inspector classifications the

5

opportunity to accept reinstatement to their previous Inspector positions without

loss of seniority or any other employee benefit and be made whole";

3.     "Cease diverting traditional Inspector work to supervisory positions";  and

4.     "[R]eturn the traditional Inspector work to Inspectors."

Id. at 22.

In his Opinion, Arbitrator Arrigo explained that the work done by individuals employed

in the Inspector classifications entailed "approximately two and one-half pages of specific tasks

under such captions as Pre-Release and Release, Pre-Installation, Installation, Post Construction,

Paving/Restoring, Other Duties, Authorization, and Documentation." Id. at 15. He also noted

that based upon testimony of one former Inspector that employees in these classifications

functioned as "the eyes and ears of the Company" and were the "first line of inspection for

anything that a contractor does during the day." Id.

As the Court is aware, the Company failed to comply with the Arbitration Award. This

noncompliance led to the Union's filing of an Application to Confirm and Enforce the

Arbitration Award. The Court granted the Union's Application in its June 29, 2006 Order.

Thereafter, the Company took no action to comply with the Arbitration Award. Consequently,

the Union filed a motion for an order to show cause why Washington Gas should not be held in

contempt of the Court's June 29th Order.

The Court granted the Union's motion and issued a show cause order on July 21, 2006.

In response to this Order the Company set forth its theory as to why a finding of contempt was

not appropriate. The Company claimed that compliance with the June 29th Order and, in turn, the

Arbitration Award would require it to "essentially restructure the Washington Gas workforce and

operation system in the relevant business unit."  <u>See</u> Washington Gas Light Company's Response to Order to Show Cause, at 5.  In fact, the Company defended its failure to comply with the Arbitration Award and the June 29th Order by suggesting that because compliance would impact structural changes that had been undertaken over the course of two years, the Company simply could not be expected to comply in only a period of weeks.  <u>Id</u>.

Given this alleged structural and operational impact, the Company claimed that compliance with the Arbitration Award and this Court's June 29th Order would cause it to suffer irreparable harm.  Accordingly, the Company petitioned both this Court and the Court of Appeals for a stay of the June 29th Order pending appeal.

In these motions, the Company repeated the same position it took in response to the Order to Show Cause.  It claimed that "by enforcing Arbitrator Arrigo's award, the Court has mandated that Washington Gas reorganize its workforce, modify its job classifications, redistribute duties and responsibilities and make offers of reinstatement to former employees who have since retired, or moved on to other positions when their previous positions were eliminated."  <u>See</u> Defendant's Motion to Stay Execution of Order Pending Appeal, at 15.

The Company made precisely the same argument in its motion to stay filed with the Circuit Court.  <u>See</u> Appellant's Motion to Stay Execution of District Court's Order Pending Appeal, at 15.  The Company also argued that "if the June 29 Order is not stayed, the Company will be forced to recreate jobs, displace current employees and restructure its organization."  <u>Id</u>. at 16.

After its request for a stay was twice denied - and only on the day before this Court had set a contempt hearing -  the Company reversed course and sought to implement a plan (over the

Union's objection) that it now asks this Court to recognize as representing full compliance with the Arbitration Award and the June 29th Order.   The Company's plan does not involve any of the structural or organizational changes it had suggested would be necessary to comply with the June 29th Order.

Instead, the plan essentially contemplates nothing more than a reinstatement of the twenty eight bargaining unit positions within the two Inspector classifications and then a re-elimination of these positions, while maintaining a solitary Inspector position to perform one task.   The Company also contemplates providing a de minimus financial payment to the 28 individuals formerly employed in the re-eliminated Inspector classifications if these individuals waive their right to be reinstated to their former positions.

Apparently, the Company would justify its decision to re-eliminate the Inspector classifications on a recently completed analysis that it performed.   See Contempt Brief, at 5-10. According to the Company, this color-coded analysis - which was only recently performed and not previously shared with the Court in the course of this litigation - leads to the conclusion that there is presently only one isolated task that would be covered by Arbitrator Arrigo's direction to return the traditional Inspector work to the bargaining unit.

On September 6, 2006 - the day before the scheduled contempt hearing - the Company provided the Union with a copy of what it now characterizes as its  "Implementation Plan for Compliance" with the Arbitration Award.  The Union rejected the Company's "Implementation Plan."   Despite the Union's rejection, the Company informed the Union that it intended to provide a copy of its "Implementation Plan" to the individuals who previously worked as Inspectors.

The Company also indicated that it planned to solicit from the former Inspectors a waiver of their right to be placed back in their previous positions in exchange for a nominal monetary payment of between $500 and $1,250. In response, the Union restated its rejection of the settlement proposal and warned the Company that if it communicated with bargaining unit members and sought to bargain individually with the former Inspectors such conduct would constitute direct dealing and trigger the filing of an unfair labor practice by the Union.

Consistent with the manner in which it has proceeded throughout this case, the Company disregarded the Union's admonition and contacted individuals who had previously worked as Inspectors. The Company bypassed the Union and sought to obtain the agreement of these individuals to the purported "Implementation Plan" that had been previously rejected by the Union.

## ARGUMENT

On August 15, 2006 this Court denied the Company's request for a stay of enforcement of the June 29th Order. In so doing, the Court noted that such relief was not appropriate "given defendant's historical refusal to recognize the December 2005 arbitrator's award ." See August 15, 2006 Order. In its August 15th Order, the Court also rejected the Company's claim that enforcement of the Arbitration Award would cause it to suffer irreparable harm. The Court stated that "[i]f anything, the Union has suffered greater harm than the Company since it has been unable to benefit from the relief it was awarded by the arbitrator in December 2005." Id.

It is now more than one month later, and the Union is no closer to obtaining the relief it was granted in December, 2005 by Arbitrator Arrigo. Instead, it has been forced to expend significant additional resources to respond to the Company's recently concocted and wholly

9

spurious claim that compliance with the June 29th enforcement Order and the underlying

Arbitration Award has been fully accomplished.  The last minute undertakings by the Company

do not constitute compliance.  Rather, the Company's latest action amounts to nothing more than

an attempt to relitigate an arbitration hearing that the Company chose not to attend.

 The Company essentially asks this Court to step into the shoes of the arbitrator and

provide a <u>de novo</u> review of the Arbitration Award and the underlying facts relied on by

Arbitrator Arrigo - including a reconsideration by this Court of contractual arguments that were

considered by the Arbitrator and rejected.  Such an extensive role by the Court is directly

contrary to well established federal labor law which affords "an extraordinary level of deference"

to the decision of an arbitrator.  <u>See</u> <u>e.g.</u> <u>Keebler Co. v. Milk Drivers & Dairy Employees Union,</u>

<u>Local No. 471</u>, 80 F.3d 284, 287 (8th Cir. 1996).  <u>See</u> <u>generally</u> <u>Major League Baseball Players</u>

<u>Ass'n. v. Garvey</u>, 532 U.S. 504, 509 (2001); <u>United Paperworkers Int'l. Union v. Misco, Inc.</u>,

484 U.S. 29, 38 (1987).

 The Union submits that, in order to fully and completely conclude this matter, the Court

need only engage in a simple three step analysis.  First, as a threshold matter, the Court must

determine what the Arbitration Award required the Company to do.  This determination can be

made by reference to Arbitrator Arrigo's Opinion and Award.  As explained below, the

requirements set forth in the Opinion and Award are clear and leave no doubt as to what is

expected from the Company.

 The second prong of the Court's analysis involves determining whether the Company

satisfied the requirements of the Arbitration Award and, by extension, the terms of the Court's

June 29th enforcement Order.  Finally, if compliance has not been obtained, the third analytical

prong requires the Court to determine what remedy the Union is entitled to as a result of the Company's failure to comply. In other words, what must the Court order to ensure that its June 29th Order and the underlying Arbitration Award is fully enforced.

The Union addresses each of these three analytical prongs below and submits that the Company has not complied with the requirements of the Arbitration Award. As a result of this non-compliance, the Union details the specific monetary remedy to which it is entitled.

I.    **THE ARBITRATION OPINION AND AWARD SETS FORTH PRECISELY WHAT THE COMPANY MUST DO AS A RESULT OF ITS CONTRACTUAL VIOLATION**

The Court need not look beyond Arbitrator Arrigo's twenty-two page Opinion and the evidentiary record developed over the course of the one day hearing to conclusively determine what was required to be done by the Company in order to rectify its violation of the collective bargaining agreement. Because the Company's decision to eliminate the Inspector classifications resulted in a transfer of bargaining unit work to supervisory personnel, Arbitrator Arrigo specifically directed the Company to "reverse its decision eliminating Inspector classifications." See Arbitration Opinion and Award, at 22. Arbitrator Arrigo further directed the Company to "offer to all employees removed from the Inspector classifications the opportunity to accept reinstatement to their previous Inspector positions without loss of seniority or any other employee benefit." Id.

The relief directed by Arbitrator Arrigo also included an affirmative direction that the Company "cease diverting traditional Inspector work to supervisory positions." Finally, Arbitrator Arrigo ordered the Company to "return the traditional Inspector work to Inspectors."

The dispute in this case focuses on the Company's recent effort to suggest that the work to be returned to Inspectors amounts to nothing more than a solitary task. <u>See</u> Company's Memorandum of Law in Response to Court Order to Show Cause ("Company's Contempt Brief"), at 7-10. Once the Court determines the actual scope and amount of work that was required to be returned to the bargaining unit by Arbitrator Arrigo, the remaining questions with respect to the Company's compliance and appropriate monetary remedies are easily resolved.

The Union submits that the Arbitration Award clearly provides what work was to be returned to the bargaining unit Inspector classifications. The Company's newly articulated position seeking to reduce this work to only one task is inconsistent with the scope of the work intended by Arbitrator Arrigo to be place back into the bargaining unit. Moreover, the Company's recently formulated argument over the scope of work covered by the Arbitration Award is also directly contrary to its previous position - when it repeatedly claimed that compliance was difficult and complex because it would require the Company to "reorganize its workforce, modify its job classifications, [and] redistribute duties and responsibilities."

Arbitrator Arrigo did not leave any ambiguity in his Opinion and Award as to what was meant by his reference to "traditional Inspector work" that the Company was directed to return to the bargaining unit. As previously explained, Arbitrator Arrigo noted that the Company's Job Description for Inspector Contractors listed "approximately two and one-half pages of specific tasks under such captions as Pre-Release and Release, Pre-Installation, Installation, Post Construction, Paving/Restoring, Other Duties, Authorization, and Documentation." <u>See</u> Arbitration Opinion and Award, at 15. Arbitrator Arrigo further noted that based upon the Company's own Job Description the role of the Inspectors was to "[p]erform pre-release

inspection and inspect work of Company contractors engaged in the construction, replacement and maintenance of natural gas mains, services, extended meter supply lines and appurtenances, including inspection of paving and final restoration." Id.

Based upon the above description, the Union submits that when Arbitrator Arrigo directed that the traditional Inspector work be returned to the bargaining unit he meant the work outlined in the Arbitration Opinion and Award - which was the work being performed by the Inspectors immediately prior to the Company's elimination decision.  There is no doubt that the Arbitrator intended to restore to the Union, and its bargaining unit, work that it was performing prior to the Company's unlawful conduct.  The Arbitration Award represents a status quo ante remedy.

The Arbitration Opinion and Award provides no support for the Company's new argument that the only work that must be returned to the bargaining unit involves the task of performing "a random check of patches (one year old) to see how the area is holding up."  See Company's Contempt Brief, at 7,9.  At the time of the Award, Arbitrator Arrigo obviously determined that there was enough Inspector work to be returned to the bargaining unit that would allow 28 individuals to work in Inspector positions, otherwise directing the Company to offer the positions back to the former Inspectors would have been pointless.

If the Arbitration Award only required the Company to return one task to the bargaining unit - as the it now claims - how would such a meager obligation require it to "reorganize its workforce, modify its job classifications, [and] redistribute duties and responsibilities," and result in the Company suffering irreparable harm if forced to immediately comply?  The answer to this question is, of course, that when the Company made these claims it did not believe compliance

with the Arbitration Award required so little.  Rather, it correctly determined that the Arbitration

Award required it to return to the bargaining unit the Inspector work that was being performed

prior to the Company's decision to eliminate the Inspector classifications.

      Only after this Court and the Court of Appeals both determined that a stay of the June 29th

Order was not appropriate, did the Company reconsider its position.  Now, the Company would

have this Court believe its current interpretation of the Arbitration Award - in which compliance

has gone from nearly impossible to a <u>fait</u> <u>accompli</u>.  The Company's effort to minimize the scope

of the work that should have been returned to the bargaining unit after the Arbitration Award was

issued is nothing more than a transparent shift in legal strategy in order to lessen its financial

exposure based upon its ongoing failure to return this work.

      The reams of paper attached to the Company's Contempt Brief to demonstrate its efforts

to reduce the covered bargaining unit work and support its claim that presently only one random

task is left for the Union represented employees misses the point entirely.  The relevant time

frame to determine what work must be returned to the bargaining unit is the time period

immediately before the Company's decision to eliminate the Inspector classifications.  That is the

time period that Arbitrator Arrigo considered when he made reference to the two and one-half

pages of job duties and responsibilities that were included as part of the Inspector Job

Descriptions.  <u>See</u> Arbitration Award at, 15.

      The steps the Company took over the last nine months in what was obviously a concerted

effort to reduce the scope of the work to be returned to the bargaining unit should not be

considered by this Court.  To do so would transform the parties' grievance/arbitration process

into a mockery.  This Court should give no weight or consideration to the color-coded analysis

and after-the-fact consultations performed by the Company.  Washington Gas should not be allowed to disregard an Arbitration Award and this Court's June 29th enforcement Order, while simultaneously taking internal corporate actions aimed at minimizing the impact of the Award and Order when they are eventually enforced.

The Company also seeks to minimize the scope of the work to be returned to the bargaining unit pursuant to the Arbitration Award by claiming that a portion of that work has been properly contracted out.  See Company's Contempt Brief, 9-10, n.8.  This same argument, however, was raised by the Company in the post-hearing brief it submitted to Arbitrator Arrigo. See Special Appearance and Company's Brief, at 13-14. (A copy of the Company's post-hearing arbitration brief was attached as Exhibit E of the Union's Application to Confirm and Enforce the Arbitration Award.)  There the Company argued that the contractual provision that allowed it to contract out work supported its position that the bargaining unit was not entitled to specific work.  Thus, the Company argued that the Union "can not establish an exclusive right to the [Inspector] work."  Id. at 13.

In his decision, Arbitrator Arrigo states that "[i]n reaching my decision herein I have fully considered the entire record **including the briefs of the Union and the Employer**."  See Arbitration Award, at 2 (emphasis supplied).  Thus, by directing the Company to return the Inspector work to the bargaining unit, Arbitrator Arrigo rejected the Company's argument that Union was not entitled to this work based upon the subcontracting provision in the collective bargaining agreement.[1]

_____

[1]During the June 29, 2006 hearing, the Court recognized that the post-hearing brief filed by the Company presented arguments on the merits of the arbitration case and that the Arbitrator rejected these arguments.  The Court stated that "defendant ultimately did file a pleading with the

By repeating this argument to the Court, the Company is seeking to relitigate that issue and asking the Court to substitute its judgment for the judgment of Arbitrator Arrigo. As previously explained, however, federal labor law affords "an extraordinary level of deference" to the decision of an arbitrator. Thus, in Major League Baseball Players Ass'n. v. Garvey, 532 U.S. 504, 509 (2001), the Supreme Court explained that "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." See also United Paperworkers Int'l. Union v. Misco, Inc., 484 U.S. 29, 38 (1987)(explaining that courts are not to hear claims of factual or legal error by an arbitrator nor should courts reject an award on the grounds the arbitrator misread the contract.).[2]

Here, Arbitrator Arrigo made a ruling as set forth in the December 31, 2005 Opinion and Award. One aspect of that ruling clearly involved a direction that the Company return Inspector work to the bargaining unit. If the Company disagreed with this ruling, the proper course was to seek to vacate the Award in the statutorily proscribed time. As this Court has already ruled, the Company chose not to do this. That choice, as the Court noted during its June 29th hearing, was "ill-advised and very risky." See June 29, 2006 Hearing Transcript at 13. The Court further stated that the Company "had the obligation under the law to move to vacate [the] award within

---

arbitrator regarding both his jurisdiction to proceed . . . and they also addressed the merits. The arbitrator obviously ruled against the employer on the merits after having a hearing that the defendant chose not to attend." See June 29, 2006 Hearing Transcript, at 9-10.

   [2]This Court recognized the high deference afforded to an arbitration decision when discussing the question of the Arbitrator's jurisdiction. The Court noted that "whether it would come out the same way is not the issue. [The Arbitrator] issued a well reasoned opinion." See June 29, 2006 Hearing Transcript, at 11.

16

90 days" and that this was not done. Id. Therefore, the Court reasoned that based upon the Company's failure to timely act "it proceeded at its own risk and pays the consequence."

In this case, the consequence for the Company is that it must abide by the clear terms of the Arbitration Award issued December 31, 2005. The Company is precluded from mounting an after-the-fact attack on the Arbitration Award, and asking this Court to redefine the scope of the Inspector work to be return to the bargaining unit based upon recently prepared, self-serving analysis. See Supplemental Affidavit of Tracy L. Townsend and the documents attached thereto.

## II.    THE COMPANY HAS NOT COMPLIED WITH THE REQUIREMENTS SET FORTH IN THE ARBITRATION OPINION AND AWARD

In its August 15th Order denying the Company's motion for a stay, the Court directed the parties to attempt to resolve the matter so as to avoid a contempt hearing. Prior to this time, the Company had taken no steps to comply with either the Arbitration Award or the Court's June 29th Order, nor had the Company approached the Union to discuss a resolution of this case. Instead, as previously discussed, the Company repeatedly claimed that compliance would be so difficult and complex that it would suffer irreparable harm if it were forced to comply.

After the August 15th Order, the Company approached the Union with an offer to settle this case for a small lump sum settlement amount, based upon its newly devised theory that there was only one isolated Inspector task to be returned to the bargaining unit. The Company's offer did not contemplate a reversal of its decision to eliminate the Inspector classifications. Likewise, at no point prior to September 6, 2006 did the Company acknowledge its obligation to provide the former Inspectors with an opportunity to be reinstated to their eliminated positions.

17

The Company suggests that it has fully complied with the June 29th Order based on the "Implementation Plan" that it unilaterally imposed the day before the September 7th contempt hearing. See Company's Contempt Brief, at 14-19. The Company is wrong. The last minute steps taken by the Company do not satisfy the requirements of the Arbitration Award previously discussed by the Union. See supra at 11-14.

Initially, only a brief response is warranted to the Company's remarkable claim that contempt is not appropriate because the Court failed to set a firm deadline in its June 29, 2006 Order, or provide the Company with precise direction as to what it was required to do. The Union notes that after the Court issued its June 29, 2006 Order, the Company filed no less than three additional submissions to this Court - including a Response to Order to Show Cause (filed July 28, 2006); a Motion to Stay Execution of Order Pending Appeal (filed July 28, 2006) and a Reply in Support of Motion to Stay (filed August 8, 2006). The Company also made two submissions with the Court of Appeals: a Motion to Stay Execution of District Court's Order (filed August 21, 2006) and Reply in support of its Motion to Stay (filed August 28, 2006) with the Court of Appeals.

At no point in any of these submissions, did the Company suggest that it could not comply with the June 29, 2006 Order because it did not contain a firm deadline or was ambiguous. To the contrary, in each of these submissions it was apparent that the Company appreciated the urgency of its situation and suggested that it understood what needed to be done to achieve compliance - but that such an undertaking was, according to the Company, simply too difficult and complex to achieve at the present time. See e.g. Washington Gas Light Company's Response to Order to Show Cause, at 6 ("due to the complexity of the Order's impact and the

18

difficulties in arranging compliance, [Washington Gas] has been unable to fully comply with the Order to date."); Defendant's Motion to Stay Execution of Order Pending Appeal, at 17 ("if the June 29 Order is not stayed, the Company will be forced to recreate jobs, displace current employees and restructure its organization.  The impact of immediate execution of the June 29 Order will completely destroy the status quo, and as a result, Washington Gas will suffer irreparable harm."); Appellant's Motion to Stay Execution of District Court's Order Pending Appeal, at 16 (same).

In light of the above, it is clear that the Company's sudden challenge to the clarity of the June 29th Order represents nothing more than a convenient shift in litigation strategy.  Indeed, it is not unlike the Company's abrupt position change with respect to its ability to comply with the terms of the Arbitration Award - changing on the eve of the contempt hearing from practically impossible to completely accomplished.  Accordingly, the Company's effort to blame its failure to comply on the terms of the Court's June 29th Order should be rejected.

What is contemplated by the Company through its September 6th "Implementation Plan" amounts to nothing more than an effort to negotiate its way out of full compliance with the Court's June 29th Order.  Essentially, the Company asks the Court to determine that what it did one day before the scheduled contempt hearing is "good enough" and, therefore, a finding of contempt should not be made.

The Implementation Plan imposed by the Company is significantly flawed for a number of reasons.  First, it is based upon the Company's selective and erroneous interpretation of Arbitrator Arrigo's Award.  The Award did not "**unequivocally affirm**[ ] the Company's unilateral right to eliminate [Inspector] job classifications 'in whole or in part.'" See Company's

Contempt Brief, at 16 (emphasis in original).  Rather, the Arbitrator determined that the Company's ability to eliminate bargaining unit classifications would only be acceptable if the elimination did not result in an improper diversion of work.  See Arbitration Award, at 19.

Here, the Arbitrator affirmatively ruled that the Company could not eliminate the Inspector classifications because such an elimination was really a disguised transfer of bargaining unit work.  Id. at 19-20.  As previously explained, Arbitrator Arrigo went on to rule that the work being performed by the Inspector classifications prior to the Company's improper elimination decision must be returned to the bargaining unit.  Id.  at 22.

Based upon the Company's strained interpretation of the Award, its Implementation Plan does not contemplate any legitimate offers of reinstatement to the former Inspectors.  Indeed, its hasty determination to re-establish the two bargaining unit classifications and make offers of reinstatement to the former Inspectors is entirely illusory given its stated position that it will exercise what it claims to be its "exclusive and unrestricted right" to eliminate the Inspector classifications in the future.  See Implementation Plan at ¶ 1 (attached as Exhibit 1 to Supplemental Affidavit of Stephan Savage).

A plain reading of the Arbitration Award simply does not lead to the conclusion that the Company's current plan can be viewed as being in compliance with the terms of the Arbitration Award.  Based upon the Arbitration Award, the Inspector work to be returned to the bargaining unit was meant to be that work which was being performed by the Inspectors prior to the Company's decision to eliminate the two bargaining unit classifications - not a solitary task that the Company now claims.  See Arbitration Decision at 15-18 and supra at 12-15.   As previously discussed, the Company's claim that former Inspector work has been reduced to this one task

20

based upon permissible subcontracting was rejected by Arbitrator Arrigo. See supra at 15-16.

Moreover, whatever efforts the Company apparently undertook over the last nine months to

minimize the Inspector bargaining unit work (while refusing to comply with the Arbitration

Award) should not be considered by this Court when it determines whether the Company has

complied with the Arbitration Award and the June 29th Order.[3]

      For the reasons discussed above, a finding of contempt should issue from this Court. The

Company has: 1) failed to re-establish the eliminated bargaining unit classifications; 2) failed to

make a meaningful offer of reinstatement to the former Inspectors and - most importantly 3)

failed to return the Inspector work that Arbitrator Arrigo directed should be returned to the

bargaining unit.

### III.    BASED UPON THE COMPANY'S ONGOING REFUSAL TO COMPLY WITH THE ARBITRATION AWARD, THE COURT SHOULD IMPOSE BOTH COERCIVE AND COMPENSATORY SANCTIONS

      It is well established that a federal court "has both an inherent and statutory power to

enforce compliance with its orders and may exercise that authority through a civil contempt

proceeding." See Pigford v. Veneman, 307 F.Supp.2d 51, 55 (D.D.C. 2004) citing Shillitani v.

United States, 384 US. 364, 370 (1966); United States v. United Mine Workers of America, 330

---

[3]Contrary to the current position of the Company, Arbitrator Arrigo did not condition the return of the Inspector work to the bargaining unit only if the 28 individuals who had previously been performing that work accepted reinstatement into Inspector positions. Rather, Arbitrator Arrigo effectively provided these individuals with a right of first refusal. It does not logically follow that the Inspector work would only return to the bargaining unit if a specific individual agreed to perform that work. Arbitrator Arrigo directed that the Company "return the traditional Inspector work to Inspectors." That work remains bargaining unit work even if none of the 28 individuals who had previously performed the work choose to return to their former positions. The available bargaining unit work would then be open for bid to other qualified members of the bargaining unit.

U.S. 258, 330-32 (1947); <u>Petties v. District of Columbia</u>, 897 F. Supp. 626, 629 (D.D.C. 1995); <u>Securities and Exchange Commission v. Bankers Alliance Corp</u>., 881 F. Supp. 673, 678 (D.D.C. 1995).  Furthermore, "civil contempt is a remedial device intended to achieve **full compliance** with a court's order."  <u>International Union, UMW v. Bagwell</u>, 512 U.S. 821, 826 (1994) (emphasis supplied).  Towards that end, a court-imposed civil contempt sanction may be either coercive or compensatory in nature - or in some circumstances a combination of both.  <u>Id</u>. at 829.

Here, the Court should impose sanctions on the Company substantial enough to coerce its compliance with the June 29th Order.  The Court should also impose a compensatory award against the Company to compensate the Union for the losses sustained by its bargaining unit as a direct result of the Company's failure to return the Inspector work to the bargaining unit.  Finally, the Union is entitled to a supplemental attorney's fee award for the fees and costs it has incurred to obtain compliance since this Court's August 15, 2006 Order.

As established above, the most crucial aspect of the December, 2005 Arbitration Award involved an affirmative direction that the Company return Inspector work to the bargaining unit. That directive has not been followed.  The Union and its bargaining unit are entitled to be placed back in the position they were in prior to the Company's unlawful decision to eliminate the Inspector classifications.  Prior to the elimination decision, a portion of the Union's work consisted of Inspector work that provided employment for 28 full time bargaining unit positions. Thus, until the Inspector work that was being performed by the Union's bargaining unit members is fully returned to the bargaining unit the Company should be assessed a daily fine in an amount equal to the amount of daily wages that the 28 Inspector positions would generate.  Each

Inspector position would pay at a rate of $26.44 per hour.[4]  Thus, for an eight hour day, the

Inspector position would generate wages of $211.52.   That amount generated for 28 positions

would equal daily wages of $5922.56.

The above coercive fine does not address the damage inflicted upon the Union and its

bargaining unit as a result of the Company's failure to return the Inspector work that Arbitrator

Arrigo clearly determined had been wrongly diverted.  See Arbitration Award 15-20.  As this

Circuit has recognized, "[c]ompensatory civil contempt reimburses the injured party for losses

and expenses incurred because of the contemptuous conduct.  This includes losses attributable to

the violation and expenses reasonably and necessarily incurred in the attempt to enforce

compliance."  See In Re: Magwood v. Pearlstein, 785 F.2d 1077, 1082-83 (D.C. Cir. 1986).

In its June 29th Order, the Court confirmed and enforced the December, 2005 Arbitration

Award in which Arbitrator Arrigo determined that: 1) the Company had improperly eliminated

two bargaining unit classifications and 2) the Company must return the Inspector work to the

bargaining unit.  Because the Company failed to return the bargaining unit work to the bargaining

unit, the Court should order the Company to compensate the Union for the wages that members

of its bargaining unit would have earned for the intervening time period from the date of the

Court's Order to the present.   This represents a period of approximately 12 weeks.  During that

time period, 28 full time Inspector positions would each have generated approximately 480 man

---

[4]The eliminated Inspector positions were classified by the parties collective bargaining
agreement as Grade 6A positions.  See Collective Bargaining Agreement, at 130 (A copy of the
parties' collective bargaining agreement can be found at Exhibit B of the Union's Application to
Confirm and Enforce Arbitration Award.).  The wage rate for these Grade 6A positions is set
forth in Annex W-2 of the parties' collective bargaining agreement.  See Collective Bargaining
Agreement, at 125.

hours (40 hours per week x 12 weeks), or a total of approximately 13,440 man hours. Therefore, at an hourly rate of $26.44, the diverted bargaining unit work can be valued at approximately $355,353.60. Because the Company did not restore the 28 Inspector positions, the improperly diverted work would have been paid at an overtime rate to the existing members of the Union's diminished bargaining unit, which would increase the amount owed by the Company to approximately $533,030.40.[5]

The Company's suggestion that this Court should remand the matter back to Arbitrator Arrigo is without merit. As an initial matter, the Union submits that the Company's request for a remand is yet another example of a shift in litigation strategy, rather than a legitimately held position. As previously stated, until very recently, the Company raised no issue with respect to its requirements under the Award. Because its request for a remand comes only after these requirements did not provide it with a basis to obtain a stay pending appeal, the Company's request should be viewed by the Court as disingenuous.

Moreover, given the fact that the Company has steadfastly refused to recognize or submit to the jurisdiction of Arbitrator Arrigo, the Company's request for a remand to this same Arbitrator is highly hypocritical and should not be seriously considered by the Court. Contrary to the Company's claim, Arbitrator Arrigo did not retain jurisdiction of this matter. Thus, this case is easily distinguished from Case-Hoyt Corp. v. Graphic Communications International Union, No. 503, 5 F. Supp.2d 154 (W.D. N.Y. 1998) - the case relied on by the Company in support of

---

[5]The Company did not reinstate the 28 Inspector positions. Thus, the Inspector work that Arbitrator Arrigo directed to be returned to the bargaining unit would have had to have been done by the remaining bargaining unit members on an overtime basis - which pays at a rate of one and one half times the regular hourly rate.

its remand request.

In Case-Hoyt, the court determined that a remand was appropriate because in the Award the Arbitrator made multiple references to the fact that he was specifically retaining jurisdiction. Id. at 156. Here, Arbitrator Arrigo made no such references, thus a remand is not appropriate and is simply the latest example of what this Court has characterized as the Company's "historical refusal" to recognize the December, 2005 Arbitration Award.

Unless an award is ambiguous or indefinite, courts are reluctant to grant a party's remand request because to do so would "unjustifiably undermine the speed and thrift sought to be obtained by the 'federal policy favoring arbitration.'" See Sargent v. Paine Webber Jackson & Curtis, Inc., 882 F.2d 529, 532 (D.C. Cir. 1989) quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). As detailed above, Arbitrator Arrigo's award is neither ambiguous or indefinite. Accordingly, granting the Company's remand request would only serve to create a further unnecessary delay to the Union's nine month effort to obtain compliance with the Arbitration Award. To avoid such a delay, the Union respectfully requests that the Court deny the Company's remand request.[6]

Finally, the Union submits that since the issuance of the Court's August 15, 2006 Order granting the Union's application for attorney's fees, the Union has expended additional amounts in fees and costs to obtain compliance with the Arbitration Award. Therefore the Union requests that this Court's contempt award allow the Union to submit a supplemental application for fees

---

[6]The Union's recent filing of an unfair labor practice charge with the National Labor Relations Board has no effect on the outcome of this case. It is preposterous for the Company to suggest that an Employer could extinguish the jurisdiction of a federal court to enforce its Order simply by committing a subsequent unfair labor practice in response to that Order.

and costs to document the amounts to which it is entitled in its ongoing effort to obtain compliance with the Arbitration Award.

## IV.    CONCLUSION

For the reasons set forth above, the Union respectfully requests that the Company be found in contempt of the Court's June 29, 2006 Order.  This contempt finding is based upon the Company's continuing failure to abide by the clear terms of the Arbitration Award issued in December, 2005.  As a result of this contempt, the Court should impose a daily fine upon the Company equal to the daily wages attributable to 28 Inspector positions to be paid until compliance is achieved.  The Union and its bargaining unit members are also entitled to a compensatory award in the amount set forth above, including a supplement award of attorney's fees for the Union's ongoing efforts to obtain compliance with the Arbitration Award.

Respectfully submitted,


_____/s/_____
Mark J. Murphy, Bar No. 453060
Marc L. Wilhite
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, DC 20036
(202) 783-0010
(202) 783-6088 - fax

Counsel for Teamsters Local Union Number 96


Date:   September 19, 2006