IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEAMSTERS LOCAL UNION
NUMBER 96, affiliated with the
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
2120 Bladensburg Rd., N.E., # 106
Washington, D.C. 20018

        Plaintiff,

v.                    Case No. 1:06-cv-928 (ESH)

WASHINGTON GAS LIGHT COMPANY,
6801 Industrial Rd.
Springfield, VA 22151

        Defendant.

## WASHINGTON GAS RESPONSE TO NOTICE REGARDING REMAND PROCEEDINGS

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On September 25, 2006, this Court remanded the instant matter to Arbitrator Salvatore Arrigo with instructions to determine whether Washington Gas Light Company ("Washington Gas" or "Company") has complied with a December 2005 Arbitration Award. On October 19, 2006, Arbitrator Arrigo issued a Supplemental Decision indicating that Washington Gas was not in full compliance with his Award as it had not re-established the 28 Inspector positions as required by the original award.[1] Teamsters Local Union No. 96 ("Plaintiff, ""Local No. 96" or "Union") subsequently filed a Notice Regarding Remand Proceedings reiterating its request that Washington Gas be held in contempt and requesting that it be allowed to submit an application

---

[1] Significantly, Arbitrator Arrigo conceded that any future Washington Gas actions, including the elimination of Inspector classification positions after the 28 positions are restored pursuant to his Award, fall outside of his purview.

1

for additional costs and fees. As explained in detail below and as previously argued in other submissions[2], Washington Gas should not be held in contempt and the Union is not entitled to any fees or costs.

## II.     ARGUMENT

### A.     Washington Gas Should Not Be Held In Contempt

1. Washington Gas Made Good Faith Efforts to Comply with Arbitrator Arrigo's Award And Intends to Reinstate the 28 Inspector Positions Pursuant to the Arbitrator's Supplemental Decision

As explained in greater detail in prior submissions, Washington Gas made good faith efforts to comply with Arbitrator Arrigo's award and this Court's June 29 Order. Upon receipt of the June 29 Order, Washington Gas immediately began a series of meetings involving intensive review of the Arbitrator's Award and an analysis of how the Award could be practically and legally implemented. (See Contempt Response at 5-8). After considering the relevant legal and practical concerns, Washington Gas developed and proceeded with an Implementation Plan whereby it would reinstate one (1) Inspector-Contractor Work position and subsequently issued reinstatement offers to displaced persons. (See Contempt Response at 8-9).

Additionally, pursuant to Arbitrator Arrigo's directive, Washington Gas ceased diverting traditional Inspector work to supervisors. (See Contempt Response at 9-10). In further compliance with the Arbitrator's recent Supplemental Decision, Washington Gas will now re-establish all of the eliminated Inspector positions, and both the Inspector-Contractor Work and the Inspector-Pre-Installation classifications, with traditional Inspector work. Washington Gas will issue additional offers of reinstatement to the persons previously effected by the reorganization. Thus, Washington Gas made good faith efforts to comply with and has

---

[2] Washington Gas incorporates by reference arguments made in its Memorandum of Law In Response to Court Order to Show Cause (September 14, 2006) ("Contempt Response") and its Memorandum of Law in Support of Motion for Reconsideration and to Clarify September 25 Order (September 29, 2006).

substantially complied with the June 29 Order.

        2.        Because The Court Has Acknowledged That The June 29 Order Was Ambiguous, The Court Should Find Washington Gas Not In Contempt

In the September 25 Order, this Court agreed that its Order failed to specify a date certain for compliance. (See September 25 Order, n.1). A party may only be in contempt if that party fails to comply with an order that is *clear and reasonably specific*. See Broderick v. Donaldson, 338 F. Supp. 2d, 30, 46 (D.D.C. 2004); Joshi v. Professional Health Services, Inc., 606 F. Supp. 302, *aff'd* 260 U.S. App. D.C. 154, 817 F.2d 877 (D.C. Cir. 1987) (holding that defendant *could not* be in contempt of an order for a two month delay in compliance where the order in question provided *no timeframe for compliance*).

Similar to the order in Joshi, the June 29 Order does not contain a specific date for compliance. (See September 25 Order, n.1). As a matter of law, then, a finding of contempt *cannot* issue. See Joshi, 606 F. Supp. at 305-06. Indeed, even assuming that this Court finds that Company's actions after June 29, 2006 do not constitute complete compliance, the Union cannot meet its burden to demonstrate *by clear and convincing evidence* that Washington Gas knew or should have known that compliance with the June 29 Order was demanded by the Court *by July 20, 2006*, the date on which it filed its Motion for Show Cause Order.[3]

Therefore, as a matter of law, Washington Gas should not be held in contempt for failure to comply with the June 29 Order, as the Order was ambiguous.

---

[3] Here, because the Court's June 29 Order lacked a deadline for compliance, it follows that the Company had a reasonable time within which to comply. The Union filed its Motion for Order to Show Cause just *three weeks* after the issuance of the June 29 Order. Given the substantial steps taken by Washington Gas and the circumstances facing it following the issuance of the June 29 Order, described in detail in its September 14 filing at pp. 6-8, and supporting affidavits, Washington Gas simply cannot be said to be in contempt. Cf. Joshi, 606 F. Supp. at 306 (failure to comply within two months of court's order not contemptuous).

3. The Union Is Not Entitled To Any Additional Compensatory/Monetary Relief

In its initial Contempt Motion, the Union requested hundreds of thousands of dollars in compensatory sanctions for Washington Gas's alleged failure to comply with the June 29 Order. (Union's Memorandum of Law in Support of Contempt Finding at 21-24). Then in its Notice Regarding Remand Proceedings, the Union reiterated its demand for compensatory sanctions and now seeks an additional $177,676, notwithstanding the fact that none of the former Inspectors suffered any loss of pay, benefits or seniority rights as a result of the decision to eliminate the Inspector classifications. (Union's Remand Notice at n.2 at 2)  In fact, Arbitrator Arrigo in his Supplemental Decision restated the conclusion in his Award that "[t]he Union's request for monetary damages is **denied."**  (Arrigo's Supplemental Decision at 2).

As previously stated, Washington Gas should not be held in contempt, and thus the Union is not entitled to any such remedy. Moreover, the Union has not cited any relevant arbitrational or judicial precedent supporting such extraordinary relief. The Union has cited two lone cases to support its position that it is entitled to compensatory sanctions,[4] International Union, United Mine Workers v. Bagwell, 512 U.S. 821 (1994)[5] and In re Magwood v. Pearlstein, 785 F.2d 1077 (D.C. Cir. 1986). However, neither one of the cases cited by the Union involved awards of backpay in contempt proceedings. In fact, in In re Magwood, the appellate court reversed the lower court's decision to impose compensatory sanctions because the alleged injuries being compensated were not related to the contempt violation. Id. at 1083. In the case at bar, pursuant to the June 29 Order, the Union has already received monetary relief for bringing an action to enforce Arbitrator Arrigo's award. The Union's new request to submit an application for

---

[4] Union's Memorandum of Law in Support of Contempt Finding at 22-23.
[5] This case is cited only to support the notion that civil contempt sanctions can be compensatory in nature.

additional backpay relief is wholly unrelated to the contempt proceedings and should be rejected as without merit.

      **B.**      **The Union Is Not Entitled To Fees And Costs**

As explained above and in prior submissions, Washington Gas should not be held in contempt because it made good faith efforts to comply with and has substantially complied with the June 29 Order. Moreover, because the Order was ambiguous, Washington Gas cannot be held in contempt as a matter of law. Because a finding of contempt is a prerequisite to an award of fees in contempt proceedings, the Union is not entitled to any fees incurred regarding enforcement of the June 29 Order. See e.g. Kipserman v. Steinberg, 234 A.D.2d 518, 519 (N.Y. 1996) (reversing award of attorneys' fees in contempt case because, "[O]n a motion to punish for civil contempt, a finding of civil contempt is the prerequisite for imposing attorneys' fees."). Furthermore, even if Washington Gas were to be found in contempt, an award of attorneys' fees in contempt proceedings is discretionary, not mandatory. See National Organization For Women v. Operation Rescue, 929 F. Supp. 461, 463 (D.D.C. 1996). Given that the June 29 Order did not contain a time deadline, the Union filed a Motion for Contempt on July 20, 2006, a mere three (3) weeks after the Order was rendered, and the complexities facing Washington Gas in implementing the Arbitrator's Award, it would be improper for the Court to now penalize Washington Gas with an attorneys' fees sanction.

**III.**      **CONCLUSION**

Based on the foregoing, Washington Gas submits that it should not be held in contempt for failing to comply with this Court's June 29, 2006 Order and the Union is not entitled to any monetary relief, fees or costs.

        Respectfully submitted,

        Robert L. Clayton (D.C. Bar No. 961474)
        Karen L. Vossler (D.C. Bar No. 476522)
        Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, LLC
        701 Pennsylvania Ave, N.W.
        Washington, D.C. 20004
        Tel: 202-434-7300
        Fax: 202-434-7400

        *Counsel for Washington Gas Light Company*

Date:   October 30, 2006